ROB BONTA
Attorney General of California
GARY E. TAVETIAN (SBN 117135)
MYUNG J. PARK (SBN 210866)
Supervising Deputy Attorneys General
M. ELAINE MECKENSTOCK (SBN 268861)
CAITLAN MCLOON (SBN 302798)
EMILY HAJARIZADEH (SBN 325246)
DYLAN REDOR (SBN 338136)
Deputy Attorneys General
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013-1230
  Telephone:  (213) 269-6438
  Fax:  (916) 731-2128
  E-mail:  Caitlan.McLoon@doj.ca.gov
*Attorneys for Defendants Liane M. Randolph,
Steven S. Cliff, and Robert A. Bonta*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, CALIFORNIA CHAMBER OF COMMERCE, AMERICAN FARM BUREAU FEDERATION, LOS ANGELES COUNTY BUSINESS FEDERATION, CENTRAL VALLEY BUSINESS FEDERATION, and WESTERN GROWERS ASSOCIATION,** <br><br> Plaintiffs, <br><br> v. <br><br> **LIANE M. RANDOLPH, in her official capacity as Chair of the California Air Resources Board, and STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board, and ROBERT A. BONTA, in his official capacity as Attorney General of California,** <br><br> Defendants. | 2:24-cv-00801-FMO-PVCx <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br> Date: June 20, 2024 <br> Time: 10:00 a.m. <br> Courtroom: 6D <br> Judge: The Honorable Fernando M. Olguin <br> Trial Date: Not Set <br> Action Filed: 1/30/2024 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................... 1

STATEMENT OF FACTS ......................................................................................... 2

   I.    Senate Bills 253 and 261 ............................................................................. 2

       A.    California Enacts New Measures That Build on Existing Climate-Related Reporting and Disclosure Frameworks .......... 2

       B.    Senate Bill 253 Requires Companies with Over a Billion Dollars in Revenue Doing Business in California to Report GHG Emissions in Accordance with Existing Industry Protocols ................................................................................. 3

       C.    Senate Bill 261 Requires Companies with Over $500 Million Dollars in Revenue Doing Business in California to Report Material Climate-Related Financial Risk in Accordance with Existing Industry Protocols ........................... 5

   II.    Procedural History ......................................................................................... 6

LEGAL STANDARD ................................................................................................ 6

ARGUMENT .............................................................................................................. 7

   I.    Plaintiffs' Supremacy Clause and Extraterritoriality Claims Should Be Dismissed Under Rule 12(b)(1) on Ripeness and Standing Grounds .......................................................................................... 7

       A.    In the Absence of Implementing Regulations, Plaintiffs' Supremacy Clause and Extraterritoriality Claims Challenging Senate Bill 253 Are Not Ripe for Adjudication ................................................................................. 8

       B.    Plaintiffs Lack Standing to Bring their Supremacy Clause and Extraterritoriality Claims as to Senate Bill 261 and Scope 1 and 2 of Senate Bill 253 Where They Have Not Alleged an Injury-in-Fact ........................................................... 10

           1.    Plaintiffs' alleged injury from Senate Bill 261 is conclusory and insufficient to establish standing .......... 11

           2.    Plaintiffs do not allege any injury arising from the Scope 1 and Scope 2 reporting requirements under Senate Bill 253 ...................................................................... 12

   II.    Plaintiffs' Supremacy Clause Claim Should Be Dismissed Under Rule 12(b)(6) for Failure to State A Claim .............................. 12

       A.    Plaintiffs Do Not State a Claim Under the Supremacy Clause Because these State Statutes Regulate Informational Disclosures, Not Emissions ............................... 13

       B.    Plaintiffs Fail to Identify a Cognizable Legal Theory for the Alleged Supremacy Clause Violation ................................. 14

   III.    Plaintiffs' Extraterritoriality Claim Should Be Dismissed Under Rule 12(b)(6) for Failure to State A Claim ......................................... 16

i

# TABLE OF CONTENTS
## (continued)

                                                                    **Page**

A.    There is No Freestanding "Extraterritorial Regulation" Claim under the Dormant Commerce Clause................................16

B.    Plaintiffs Fail to State a Discrimination Claim under the Dormant Commerce Clause................................................18

C.    Plaintiffs Fail to State a Claim under the Clause's Pike Test................................................................................19

IV.    Sovereign Immunity Bars All of Plaintiffs' Claims Against Attorney General Bonta ................................................21

CERTIFICATE OF COMPLIANCE..........................................................24

ii

# TABLE OF AUTHORITIES

**Page**

CASES

7 *Bland v. Fessler*
   88 F.3d 729 (9th Cir. 1996) .................................................................. 10

*All. of Nonprofits for Ins., Risk Retention Grp. v. Kipper*
   712 F.3d 1316 (9th Cir. 2013) ......................................................... 14, 18

*Am. Fuel & Petrochem. Mfrs. v. O'Keeffe*
   903 F.3d 903 (9th Cir. 2018) ................................................................ 16

*Ammex, Inc. v. Cox*
   351 F.3d 697 (6th Cir. 2003) .................................................................. 9

*Arizona v. Yellen*
   34 F.4th 841 (9th Cir. 2022) .................................................................. 8

*Armstrong v. Exceptional Child Ctr., Inc.*
   575 U.S. 320 (2015) ............................................................................. 14

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*
   729 F.3d 937 (9th Cir. 2013) ................................................................ 22

*Assoc. of Am. R.R. v. Cal. Office of Spill Prevention and Response*
   113 F. Supp. 3d 1052 (E.D. Cal. 2015) .............................................. 9, 11

*Associated Builders & Contractors of S. Cal., Inc. v. Nunn*
   356 F.3d 979 (9th Cir. 2004) ................................................................ 13

*Atascadero State Hosp. v. Scanlon*
   473 U.S. 234 (1985) ............................................................................. 21

*Babbitt v. United Farm Workers Nat'l Union*
   442 U.S. 289 (1979) ............................................................................. 10

*Bell Atlantic v. Twombly*
   550 U.S. 544 (2007) ............................................................................. 19

*Boating Indus. Ass'ns v. Marshall*
   601 F.2d 1376 (9th Cir. 1979) ............................................................... 8

1

**TABLE OF AUTHORITIES**
**(continued)**

2

Page

3
*Bolbol v. Brown*

4
    120 F. Supp. 3d 1010 (N.D. Cal. 2015)................................................................22

5
*Chamber of Commerce v. Whiting*
    563 U.S. 582 (2011) ...........................................................................14, 16

6

7
*Chandler v. State Farm Mut. Auto. Ins. Co.*
    598 F.3d 1115 (9th Cir. 2010)...............................................................6, 7

8

9
*Clapper v. Amnesty Int'l USA*
    568 U.S. 398 (2013) ...................................................................................10

10

11
*Dep't of Revenue of Ky. v. Davis*
    553 U.S. 328 (2008) ...................................................................................18

12

13
*Exxon Corp. v. Governor of Maryland*
    437 U.S. 117 (1978) ............................................................................20, 21

14

15
*Exxon Corp. v. Heinze*
    32 F.3d 1399 (9th Cir. 1994) ......................................................................8

16

17
*General Motors Corp. v. Tracy*
    519 U.S. 278 (1997) ...................................................................................19

18

19
*Goodyear Atomic Corp. v. Miller*
    486 U.S. 174 (1988) ...................................................................................13

20
*In re Gilead Sci. Sec. Litig.*
    536 F.3d. 1049 (9th Cir. 2008).....................................................................7

21

22
*L.A. County Bar Ass'n v. Eu*
    979 F.2d 697 (9th Cir. 1992)......................................................................21

23

24
*Los Angeles Branch NAACP v. Los Angeles Unified School Dist.*
    714 F.2d 946 (9th Cir. 1983)......................................................................21

25

26
*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992) ...................................................................................11

27
*Nat'l Ass'n of Optometrists & Opticians v. Harris*
    682 F.3d 1144 (9th Cir. 2012).....................................................................20

28

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Nat'l Pork Producers Council v. Ross*
  6 F.4th 1021 (9th Cir. 2021) .................................................................. 20

*Nat'l Pork Producers Council v. Ross (NPPC)*
  598 U.S. 356 (2023) ....................................................................... *passim*

*Oregon Waste Sys., Inc. v. Dep't of Env't Quality of State of Or.*
  511 U.S. 93 (1994) ............................................................................. 18

*Pharm. Research & Mfrs. of Am. v. Walsh*
  538 U.S. 644 (2003) ........................................................................... 13

*Pharm. Rsch. & Mfrs. of Am. v. Cnty. of Alameda* (*PhRMA*)
  768 F.3d 1037 (9th Cir. 2014) .............................................................. 19

*Pike v. Bruce Church, Inc.*
  397 U.S. 137 (1970) ..............................................................2, 19, 20, 21

*Quern v. Jordan*
  440 U.S. 332 (1979) ........................................................................... 21

*Rattlesnake Coal. v. U.S. EPA*
  509 F.3d 1095 (9th Cir. 2007) .............................................................. 10

*Rhoades v. Avon Products, Inc.*
  504 F.3d 1151 (9th Cir. 2007) ................................................................ 7

*Rocky Mountain Farmers Union v. Corey*
  730 F.3d 1070 (9th Cir. 2013) .............................................................. 13

*Rosenblatt v. City of Santa Monica*
  940 F.3d 439 (9th Cir. 2019) .......................................................... 16, 18

*Safe Air for Everyone v. Meyer*
  373 F.3d 1035 (9th Cir. 2004) ........................................................ 6, 7, 12

*State of Iowa, et al. v. SEC*
  24-1522 (8th Cir. 2024) ........................................................................ 3

*Thomas v. Anchorage Equal Rights Com'n*
  220 F.3d 1134 (9th Cir. 2000) ......................................................8, 9, 10, 11

**TABLE OF AUTHORITIES**
(continued)

Page

*Tohono O'odham Nation v. Ducey*
   130 F. Supp. 3d 1301 (D. Ariz. 2015) .................................................................. 22

*United States v. Power Co., Inc.*
   2008 WL 2626989 (D. Nev. 2008) ........................................................................ 9

*United States v. Salerno*
   481 U.S. 739 (1987) ............................................................................................ 16

*Va. Uranium, Inc. v. Warren*
   139 S. Ct. 1894 (2019) (lead opinion of Gorsuch, J.) .................................. 15, 16

*Valeria G. v. Wilson*
   12 F. Supp. 2d 1007 (N.D. Cal. 1998) ................................................................ 9

*VIZIO, Inc. v. Klee*
   886 F.3d 249 (2d Cir. 2018) ............................................................................... 15

*Ward v. United Airlines, Inc.*
   986 F.3d 1234 (9th Cir. 2021) ............................................................................ 21

*Watison v. Carter*
   668 F.3d 1108 (9th Cir. 2012) .............................................................................. 7

*Whole Woman's Health v. Jackson*
   595 U.S. 30 (2021) ............................................................................................. 22

*Woods v. U.S. Bank N.A.*
   831 F.3d 1159 (9th Cir. 2016) .............................................................................. 7

*Ex parte Young*
   209 U.S. 123 (1908) ........................................................................................... 21

**STATUTES**

42 United States Code
   § 1983 .................................................................................................................. 21
   § 7416 .................................................................................................................. 15
   § 7602(k) ............................................................................................................. 14

1

# TABLE OF AUTHORITIES
## (continued)

2

Page

3    2023 Cal. Stats., ch. 382, § 1 ................................................................... 3

4    2023 Cal. Stats., ch. 383, § 1 ................................................................... 3

5    California Health and Safety Code

6        § 38532(b)(2) ........................................................................... 4, 18

7        § 38532(b)(3) .................................................................................. 4
         § 38532(b)(3)–(5) .......................................................................... 4

8        § 38532(b)(4) .................................................................................. 4

9        § 38532(b)(5) .................................................................................. 4
         § 38532(c)(1) .................................................................................. 3

10       § 38532(c)(1)(A)(i) ........................................................................ 5

11       § 38532(c)(1)(A)(ii) ....................................................................... 4
         § 38532(c)(1)(D) ............................................................................ 9

12       § 38532(c)(1)(D)(i) ........................................................................ 4

13       § 38532(c)(1)(F) ............................................................................ 4

         § 38532(c)(3) ................................................................................ 22

14       § 38532(d)(1) .................................................................................. 4

15       § 38532(e)(1) .................................................................................. 4
         § 38532(f)(2) ............................................................................. 5, 9

16       § 38532(f)(2)(A) ............................................................................. 5

17       § 38533(a)(2) .................................................................................. 5
         § 38533(a)(4) ............................................................................ 5, 18

18       § 38533(a)(4)–(b)(1)(A) .................................................................. 5

19       § 38533(b)(1)(A) ............................................................................ 5
         § 38533(b)(1)(A)(i) ........................................................................ 5

20       § 38533(b)(4) .................................................................................. 6

21       § 38533(c)(1)–(2) ........................................................................... 6
         § 38533(c)(2) ................................................................................ 22

22       § 38533(e)(2) .................................................................................. 6

23   **CONSTITUTIONAL PROVISIONS**

24   U.S. Constitution, First Amendment ................................................. *passim*

25   U.S. Constitution, Eleventh Amendment ....................................... 21, 22

26

27   U.S. Constitution, Article III, § 2, cl. 1 ............................................... 7

28

# TABLE OF AUTHORITIES
## (continued)

Page

**COURT RULES**

Federal Rules of Civil Procedure,
    Rule 12(b)(1) ................................................................ 6, 7
    Rule 12(b)(6) ........................................................ 7, 12, 16

# INTRODUCTION

On October 7, 2023, California's Governor signed into law Senate Bills 253 and 261—two laws seeking to increase transparency and improve access to information about the greenhouse gas (GHG) emissions and climate-related financial risks of the largest companies doing business in California.  Both laws reference existing climate change reporting protocols that provide metrics for determining the required information.  And both laws are complementary additions to an expanding suite of climate reporting regimes.  The disclosures required by these two laws are intended to help California residents, consumers, companies, and investors make decisions informed by greater understanding of the sources and volumes of GHG emissions produced by major companies doing business in California and the climate-related financial risks those companies face.

Plaintiffs Chamber of Commerce of the United States of America, California Chamber of Commerce, American Farm Bureau Federation, Los Angeles County Business Federation, Central Valley Business Federal, and Western Growers Association (Plaintiffs) claim that Senate Bills 253 and 261 violate the First Amendment of the U.S. Constitution, are "precluded" by federal law under the Supremacy Clause, and are invalid "under the Constitution's limitations on extraterritorial regulation."  However, Plaintiffs' claims arising under the Supremacy Clause and the limits on extraterritorial regulation are not justiciable, as the California Air Resources Board (CARB)—the agency tasked with enforcement of the laws—has not yet proposed regulations governing their enforcement, and Plaintiffs have not pled an injury-in-fact.  Moreover, Plaintiffs have not stated a claim under the Supremacy Clause, as they failed to identify any federal law that preempts these state disclosure laws.  The only law they do identify—the Clean Air Act—is inapplicable to these reporting frameworks, and in any event, preserves state authority in the field of air pollution.  Similarly, Plaintiffs fail to state a claim for "extraterritorial regulation" or any other purported violation of the dormant

Commerce Clause.  Neither law is driven by economic protectionism, *see Nat'l Pork Producers Council v. Ross (NPPC)*, 598 U.S. 356, 369, 371 (2023), nor imposes a cognizably significant burden on interstate commerce.  *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).  The Court should dismiss these claims.[1]

Moreover, Defendant Attorney General Bonta must be dismissed as to all claims.  Neither statute provides an enforcement role for Attorney General Bonta that a federal court could enjoin him from exercising.

## STATEMENT OF FACTS

### I.    SENATE BILLS 253 AND 261

#### A.    California Enacts New Measures That Build on Existing Climate-Related Reporting and Disclosure Frameworks

In late 2023, the California Legislature passed and Governor Newsom signed the Climate Corporate Data Accountability Act (Senate Bill 253) and the Climate-Related Financial Risk Act (Senate Bill 261).  Both climate-related disclosure bills were enacted against the backdrop of other reporting frameworks under which many of Plaintiffs' member companies already operate.  Multinational companies, including those based in the United States, that have securities listed on a regulated market in the European Union (EU) or annual revenue in the EU of more than $163 million are subject to the EU's Corporate Sustainability Reporting Directive requiring GHG and climate-related financial risk disclosures.  Directive (EU) 2022/2464, 2022 O.J. (L 322) 15.  U.S.-based companies with international subsidiaries may also be subject to the International Sustainability Standards Board's IFRS Sustainability Disclosure Standards, which similarly provide for GHG emission and climate-risk reporting.  Request for Judicial Notice (RJN), Ex. 1, at 6 (IFRS Sustainability Disclosure Standards, Project Summary).  Moreover, the U.S. Securities and Exchange Commission (SEC) recently finalized a rule

---

[1] While Plaintiffs' First Amendment challenge is also legally flawed, Defendants do not seek dismissal of that claim here, except as to Attorney General Bonta as a Defendant.

governing the reporting of Scope 1 and Scope 2 GHG emissions and climate-related risks for publicly traded companies.  RJN, Ex. 2 (The Enhancement and Standardization of Climate-Related Disclosures for Investors, SEC).[2]  And thousands of companies have for years publicly reported their climate risks and other climate metrics under voluntary frameworks including the Task Force on Climate-Related Disclosure protocols.  RJN, Ex. 3, at 50 (Assembly Comm. on Appropriations Rep. on SB 261, Aug. 16, 2023).

In passing Senate Bills 253 and 261, the Legislature noted that the current reporting initiatives "lack[] the full transparency and consistency" needed by California residents, consumers, and investors "to fully understand []climate risks." 2023 Cal. Stats., ch. 382 § 1 (SB 253); *see also* 2023 Cal. Stats., ch. 383 § 1 (SB 261).  The Legislature sought to resolve the problem of inconsistent reporting among companies doing business in the State by crafting laws that comprehensively serve to "inform investors, empower consumers, and activate companies to improve risk management in order to move towards a net-zero carbon economy," 2023 Cal. Stats., ch. 382 § 1, and "set mandatory and comprehensive risk disclosure requirements for public and private entities to ensure a sustainable, resilient, and prosperous future."  2023 Cal. Stats., ch. 383 § 1.

### B.    Senate Bill 253 Requires Companies with Over a Billion Dollars in Revenue Doing Business in California to Report GHG Emissions in Accordance with Existing Industry Protocols

Senate Bill 253 directs CARB to "develop and adopt regulations" that will require the covered "reporting entit[ies]" to report their direct and indirect GHG emissions.  Cal. Health & Saf. Code § 38532(c)(1).  "Reporting entit[ies]" that must comply with the law are very large U.S. companies—specifically, U.S. entities "that do[] business in California" with total annual revenues in excess of one billion

_____

[2] Petitions for review challenging the SEC's final rule are currently pending in the Eighth Circuit. *See State of Iowa, et al. v. SEC*, 24-1522 (8th Cir. 2024).

dollars. *Id.* § 38532(b)(2).  CARB has not, to date, initiated the rulemaking process to issue and adopt the implementing regulations required by the statute.

Once these implementing regulations are in place, reporting entities will report three categories of GHG emissions: Scope 1, Scope 2, and Scope 3.  *Id.* § 38532(b)(3)–(5).  Scope 1 emissions are direct GHG gas emissions from a reporting company's owned or controlled sources.  *Id.* § 38532(b)(3).  Scope 2 emissions are the company's indirect emissions associated with the company's use of electricity, steam, heating, and cooling.  *Id.* § 38532(b)(4).  Scope 3 emissions include all other indirect emissions related to the company, for example, emissions from "purchased goods and services, business travel, employee commutes, and processing and use of sold products."  *Id.* § 38532(b)(5).  The law does not restrict reporting entities from providing additional data on metrics not listed in the statute.

The law provides that entities measure and report emissions "in conformance" with the "Greenhouse Gas Protocol standards and guidance" developed by the World Resources Institute and the World Business Council for Sustainable Development.  *Id.* § 38532(c)(1)(A)(ii).  This Protocol provides that Scope 3 emissions calculations can be determined through "both primary and secondary data sources," including "industry average data, proxy data, and other generic data."  *Id.*  And the law "minimizes duplication of effort" by allowing reporting entities to submit emissions data prepared to meet other national and international reporting requirements.  *Id.* § 38532(c)(1)(D)(i).

The law requires third-party assurances regarding the quality and accuracy of the information in their public disclosures, starting at a "limited assurance level" by 2026 for Scope 1 and Scope 2 emissions, and 2030 for Scope 3 emissions.  *Id.* § 38532(c)(1)(F).  To ensure public access, Senate Bill 253 directs the emissions reporting organization to create and publish a publicly accessible digital platform featuring the emissions data of reporting companies, *id.* § 38532(e)(1), and provides for the preparation of a report arising from the collected data.  *Id.* § 38532(d)(1).

Senate Bill 253 provides general deadlines for compliance with the reporting requirements, beginning in 2026 for Scope 1 and 2 emissions, and 2027 for Scope 3 emissions. *Id.* § 38532(c)(1)(A)(i). The law provides that CARB must "adopt regulations that authorize it to seek administrative penalties for nonfiling, late filing, or other failure to meet the requirements" of the statute. *Id.* § 38532(f)(2)(A). Reporting companies that do not comply with these regulations will be subject to administrative penalties determined by CARB, not to exceed $500,000 in a reporting year, following an administrative hearing conducted by CARB. *Id*. § 38532(f)(2). As with the implementing regulations, CARB has not yet initiated the rulemaking process to issue the enforcing regulations required by the statute.

### C.   Senate Bill 261 Requires Companies with Over $500 Million Dollars in Revenue Doing Business in California to Report Material Climate-Related Financial Risk in Accordance with Existing Industry Protocols

Senate Bill 261 requires U.S. entities with total annual revenues in excess of $500 million dollars that do business in California to prepare a climate-related financial risk report biennially.[3] Cal. Health & Saf. Code § 38533(a)(4)–(b)(1)(A). The bill requires covered entities to disclose both their climate-related financial risk and any measures adopted to reduce and/or adapt to that risk. *Id*. § 38533(b)(1)(A). The bill defines "[c]limate-related financial risk" as the "material risk of harm to immediate and long-term financial outcomes due to physical and transition risks … ," such as disruptions to operations, the provision of goods and services, and employee health and safety. *Id*. § 38533(a)(2). The law provides that such risk can be reported in accordance with the framework contained in "the Final Report of Recommendations of the Task Force on Climate-related Financial Disclosures." *Id*. § 38533(b)(1)(A)(i). A covered entity fulfills the requirements of the law if

---

[3] The law exempts business entities subject to regulation by the California Department of Insurance. *Id*. § 38533(a)(4).

1  reporting climate risks under another disclosure framework with consistent

2  requirements.  *Id*. § 38533(b)(4).

3       Senate Bill 261 requires each reporting company, on or before January 1,

4  2026, to publish a copy of the report "on its own internet website." *Id*. at

5  § 38533(c)(1)–(2).  The law provides that CARB must "adopt regulations that

6  authorize it to seek administrative penalties" from a covered entity that fails to

7  make the required report or publishes an inadequate report.  *Id*. § 38533(e)(2).

8  These administrative penalties are not to exceed $50,000 per reporting year, and

9  can be imposed only after an administrative hearing.  *Id*.  As of the date of this

10  filing, CARB has not initiated the rulemaking process to issue the regulations

11  required by the statute.

12  ## II.   PROCEDURAL HISTORY

13       Plaintiffs filed the operative Amended Complaint for Declaratory and

14  Injunctive Relief (FAC) on February 22, 2024 (ECF No. 28).  Plaintiffs allege that

15  both Senate Bills 253 and 261 violate the First Amendment, FAC ¶¶ 92–99, are

16  preempted under the "federal Constitution's Supremacy Clause," FAC ¶¶ 100–106,

17  and violate the "Constitution's limitations on extraterritorial regulations, including

18  the dormant commerce clause."  FAC ¶¶ 107–112.  They sued CARB's chair and

19  executive officer, as well as the Attorney General.

20       Defendants now move to dismiss the Supremacy Clause and extraterritoriality

21  causes of action on jurisdictional grounds and for failure to state a claim.

22  ## LEGAL STANDARD

23       "The party asserting federal subject matter jurisdiction bears the burden of

24  proving its existence." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115,

25  1122 (9th Cir. 2010).  "In a facial attack" under Rule 12(b)(1), "the challenger

26  asserts that the allegations contained in a complaint are insufficient on their face to

27  invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039

28  (9th Cir. 2004).  In a "factual attack" on jurisdiction, "the district court may review

evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment," and "[t]he court need not presume the truthfulness of the plaintiff's allegations." *Id.*

On a motion to dismiss under Rule 12(b)(6), the Court "determines whether Plaintiffs pled enough facts to state a claim to relief that is plausible on its face." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016) (cleaned up). "A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Id.* While the Court must generally "accept the plaintiffs' allegations as true and construe them in the light most favorable to plaintiffs," the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sci. Sec. Litig.*, 536 F.3d. 1049, 1055 (9th Cir. 2008) (cleaned up).

Dismissal without leave to amend is appropriate when deficiencies in the complaint could not possibly be cured by amendment. *See Watison v. Carter*, 668 F.3d 1108, 1117 (9th Cir. 2012).

## ARGUMENT

**I.    PLAINTIFFS' SUPREMACY CLAUSE AND EXTRATERRITORIALITY CLAIMS SHOULD BE DISMISSED UNDER RULE 12(B)(1) ON RIPENESS AND STANDING GROUNDS**

Federal courts may adjudicate only cases or controversies; they may not issue advisory opinions. U.S. Const. art. III, § 2, cl. 1; *Rhoades v. Avon Products, Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007). "The Article III case or controversy requirement limits federal courts' subject matter jurisdiction by requiring, inter alia, that plaintiffs have standing and that claims be "ripe" for adjudication. […] Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss." *Chandler*, 598 F.3d at 1121.

**A.    In the Absence of Implementing Regulations, Plaintiffs' Supremacy Clause and Extraterritoriality Claims Challenging Senate Bill 253 Are Not Ripe for Adjudication**

The "ripeness" doctrine prevents premature adjudication of claims that do not yet have a concrete impact on the parties. *Exxon Corp. v. Heinze*, 32 F.3d 1399, 1404 (9th Cir. 1994). Ripeness is "'peculiarly a question of timing,' designed to 'prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Anchorage Equal Rights Com'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (citations omitted). There is both a constitutional component to the ripeness doctrine and a prudential component. *Id.*

Under the constitutional component, the focus is on the immediacy of enforcement. The mere existence of a statute is not sufficient. *Id.*; *see also Boating Indus. Ass'ns v. Marshall*, 601 F.2d 1376, 1384 (9th Cir. 1979). A federal court may only issue a declaratory judgment where "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Boating Industry Ass'ns*, 601 F.2d at 1384 (cleaned up). For a pre-enforcement challenge, a substantial controversy can be established by showing both that the plaintiffs have articulated a "concrete plan" to violate the law in question, and that the prosecuting authorities have communicated a specific warning or threat to initiate proceedings.[4] *Thomas*, 220 F.3d at 1139.

Plaintiffs cannot establish either element here. When Senate Bill 253 took effect on January 1, 2024, the statute itself did not impose any affirmative obligations on Plaintiffs or any other entity subject to the new reporting requirements. Nor does it now. Rather, Senate Bill 253 expressly provides that CARB must adopt regulations implementing the statute before any entity has any responsibility under the law. But CARB has not yet done so. Enforcement under

---

[4] While courts also look to the history of past prosecution or enforcement under the challenged statute, when a "statute is new the history of past enforcement carries little, if any weight." *Arizona v. Yellen*, 34 F.4th 841, 850 (9th Cir. 2022).

1   Senate Bill 253 cannot take place until after CARB adopts regulations establishing
2   the procedures under which reporting entities must act, and by which the agency
3   may seek administrative penalties.  Cal. Health & Saf. Code
4   §§ 38532(f)(2), 38533(e)(2).  Moreover, Plaintiffs cannot articulate a "concrete
5   plan" to violate the law under which they have no existing obligations.  *Cf. Assoc.*
6   *of Am. R.R. v. Cal. Office of Spill Prevention and Response*, 113 F. Supp. 3d 1052,
7   1059 (E.D. Cal. 2015) (concluding case not ripe when agency had not issued
8   implementing regulations on challenged law).

9        But even if the minimum constitutional requirements were met here, the Court
10  should decline to exercise jurisdiction on prudential grounds.  The prudential
11  analysis includes a two-pronged inquiry: (1) the "fitness of the issues for judicial
12  decision" and (2) "the hardship to the parties of withholding court consideration."
13  *Thomas*, 220 F.3d at 1141 (citations omitted).

14       This Court should avoid deciding a pre-enforcement challenge that does not
15  permit CARB to first propose and finalize its regulations.  *Cf. Ammex, Inc. v. Cox*,
16  351 F.3d 697, 708 (6th Cir. 2003); *see also United States v. Power Co., Inc.*, 2008
17  WL 2626989, *4 (D. Nev. 2008) ("That the City of Las Vegas, as the primary
18  governmental entity charged with construing the challenged law, has not yet had an
19  opportunity to construe the ordinances at issue weighs against exercising
20  jurisdiction.").  The law requires that the Board develop its regulations in
21  consultation with "experts in climate science and corporate carbon emissions
22  accounting and reporting," "[i]nvestors," and "[r]eporting entities that have
23  demonstrated leadership in full-scope greenhouse gas emissions accounting and
24  public disclosure," among others.  Cal. Health & Saf. Code § 38532(c)(1)(D).  It is
25  thus reasonable to conclude that the final regulations may be responsive to at least
26  some of Plaintiffs' current concerns, such as the alleged impact of Scope 3
27  reporting on upstream and downstream entities.  *See Valeria G. v. Wilson*, 12 F.
28  Supp. 2d 1007, 1026 (N.D. Cal. 1998) ("Courts regularly deny anticipatory review

9

1    when further development by state officials may reduce or avoid constitutional

2    problems, or change the nature of the issues presented.").  Plaintiffs' allegations are

3    based on speculation about how the disclosure requirements will be applied and

4    enforced.  For example, they do not explain how this law will operate in light of

5    federal and other reporting requirements, and they propose hypothetical scenarios

6    regarding the scope and nature of the reporting obligation, especially under Scope

7    3.  These allegations are insufficient to carry plaintiffs' burden of establishing the

8    court's jurisdiction. *Rattlesnake Coal. v. U.S. EPA*, 509 F.3d 1095, 1102 n.1 (9th

9    Cir. 2007)

10       The absence of regulations also means Plaintiffs will not suffer any substantial

11   hardship if the Court withholds consideration of this matter.  *Thomas*, 220 F.3d at

12   1142 ("[T]he absence of any real or imminent threat of enforcement … seriously

13   undermines any claim of hardship.").  There is no threat of any immediate

14   enforcement here.  Accordingly, it is appropriate for the Court to withhold

15   consideration at this time.

16   **B.    Plaintiffs Lack Standing to Bring their Supremacy Clause and
         Extraterritoriality Claims as to Senate Bill 261 and Scope 1 and
17       2 of Senate Bill 253 Where They Have Not Alleged an Injury-in-
         Fact**
18

19       Plaintiffs who seek to establish standing to challenge a law or regulation that

20   is not presently enforced against them, must demonstrate "a realistic danger of

21   sustaining a direct injury as a result of the statute's operation or enforcement."

22   *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979); *7 Bland v.*

23   *Fessler*, 88 F.3d 729, 736–37 (9th Cir. 1996).  The injury must be "concrete,

24   particularized, and actual or imminent," as opposed to conjectural or hypothetical.

25   *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).  While Plaintiffs plead a

26   purported injury for their First Amendment claim, they fail to plead a sufficient

27   injury to support standing with respect to their preemption and extraterritoriality

28   challenges.  Because injury-in-fact is one of three "irreducible constitutional

minimum" showings of Article III standing, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992), this failure is fatal to establishing the Court's jurisdiction.

### 1.  Plaintiffs' alleged injury from Senate Bill 261 is conclusory and insufficient to establish standing

Plaintiffs claim that "[w]hile the bills were pending business-organization representatives noted the significant costs of the bills and the difficulties associated with compliance." FAC ¶ 29.  They suggest that the Governor expressed "concern[s] about the overall financial impact of this bill on business." FAC ¶ 32. And they claim a vague "risk" that companies will feel pressured to conform their risk assessment disclosures to speculative policy preferences of the State sometime in the future, FAC ¶ 83, and the possibility of "stigma[]" from unnamed entities concerned about the purely speculative contents of their disclosures.  FAC ¶¶ 83, 89.  Notably absent from these allegations is the identification of even a single entity subject to the reporting requirements that claims an actual injury from planning to comply with the law's requirements.  Nor does any entity claim that it would incur costs associated with Senate Bill 261 that it would not incur as part of obligations under other reporting regimes.

Moreover, as discussed above, any claimed injury from enforcement of the statute is premature.  Whether this issue "is viewed as one of standing or ripeness," Plaintiffs' failure to allege "when, … where, or under what circumstances" their members would violate the challenged law, and the current absence of regulations under which the agency would enforce, leaves this Court without a case or controversy.  *Thomas*, 220 F.3d at 1139; *see also Ass'n of Am. R.R.*, 113 F. Supp. 3d at 1058.

Thus, setting aside the First Amendment claim,[5] Plaintiffs' pleadings alleging injury arising from Senate Bill 261 are "insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039.

### 2. Plaintiffs do not allege any injury arising from the Scope 1 and Scope 2 reporting requirements under Senate Bill 253

Other than a purported First Amendment injury—which Defendants dispute, but do not address for purposes of this motion—Plaintiffs' amended complaint is bereft of allegations pertaining to any injury arising out of compliance with the Scope 1 and Scope 2 requirements of Senate Bill 253. Plaintiffs do not claim that any member entity has incurred costs in connection with compliance with the Scope 1 or Scope 2 requirements, or is likely to do so. *See, e.g.*, FAC ¶¶ 11 (addressing Scope 3's "burdensome compliance costs"), 52 (estimating cost of complying with the Scope 3 requirements). The absence of such allegations is notable in light of the existing voluntary and mandatory climate change reporting regimes under which many companies may already be preparing this data. *See* Statement of Facts, section I(A), *supra*. Plaintiffs' conclusory claims pertaining to "significant costs" generally associated with compliance with both bills are insufficient to establish injury-in-fact. *Safe Air for Everyone*, 373 F.3d at 1039.

## II. PLAINTIFFS' SUPREMACY CLAUSE CLAIM SHOULD BE DISMISSED UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM

Should this Court find it has jurisdiction, Plaintiffs' second claim—which alleges a violation of the Supremacy Clause—should nevertheless be dismissed because it relies on an erroneous factual premise and because it lacks a cognizable legal theory.

---

[5] As to the First Amendment claim, Plaintiffs allege a purported injury from compelled speech. Defendants do not address those allegations for purposes of this motion.

**A.    Plaintiffs Do Not State a Claim Under the Supremacy Clause Because these State Statutes Regulate Informational Disclosures, Not Emissions**

Plaintiffs' second claim rests on an incorrect premise: that these statutes "regulate greenhouse-gas emissions outside of [California's] own borders." FAC ¶ 105. These statutes require informational disclosures; they are not laws regulating the emissions themselves. Plaintiffs admit that "the laws do not directly require reductions in greenhouse-gas emissions." FAC ¶ 88. In fact, the entire basis of Plaintiffs' First Amendment claim is that these statutes regulate *speech*, not emissions. *E.g.*, FAC ¶¶ 93–94 (alleging compelled speech).

Plaintiffs do allege that these statutes will "function[] to pressure companies to reduce their emissions of greenhouse gases." FAC ¶ 104. But on Plaintiffs' theory, any "pressure" companies feel would come *from third parties*—investors, customers, and the like—not *from the State itself*. And courts routinely distinguish between pressure created by state laws and actual regulation by the State, and recognize only the latter as an actionable injury. For example, the Supreme Court rejected the argument that Maine was regulating wholesale pharmaceutical prices when it pressured manufacturers into negotiating rebate agreements. *Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 669 (2003) (rejecting "regulation" characterization); *id.* at 649 (describing pressure applied to obtain rebate agreements). And the Ninth Circuit easily distinguished between "regulat[ion]" and "incentives" created by state law. *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1101 (9th Cir. 2013); *see also Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 176 (1988) (distinguishing "incidental regulatory pressure" from "direct regulatory authority"); *Associated Builders & Contractors of S. Cal., Inc. v. Nunn*, 356 F.3d 979, 985 (9th Cir. 2004), *amended* 2004 WL 292128 (9th Cir. Feb. 17, 2004) (concluding state law "[a]t most, … alters the incentives" where it does not "bind [regulated entities] to anything") (cleaned up).

As these cases demonstrate, States regulate when they require or prohibit conduct.  Congress understands this, particularly in the context of emission regulation.  In fact, under the Clean Air Act, the terms "emission limitation" and "emission standard" are defined to "mean a *requirement* established by the State or the Administrator which limits the quantity, rate, or concentration of emissions of air pollutants on a continuous basis, including any *requirement* relating to the operation or maintenance of a source to assure continuous emission reduction, and any design, equipment, work practice or operational standard promulgated under this chapter."  42 U.S.C. § 7602(k) (emphasis added).  Here, as Plaintiffs concede, the statutes require *disclosure of information*; they do not regulate *emissions*.  FAC ¶ 105 (State "requiring extensive disclosure of information about out-of-state emissions").

Accordingly, even if the Supremacy Clause prohibited states from regulating out-of-state emissions, Plaintiffs cannot plausibly allege these statutes do so.

### B. Plaintiffs Fail to Identify a Cognizable Legal Theory for the Alleged Supremacy Clause Violation

Plaintiffs' Supremacy Clause claim also fails because no source of federal law "preclude[s]" States from requiring these kinds of disclosures.

The Supremacy Clause "creates a rule of decision" by which courts decline to "give effect to state laws that conflict with federal laws."  *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324 (2015).  That Clause is not, however, "the source of any federal rights, and certainly does not create a cause of action."  *Id.* (quotation marks and citations omitted); *see also All. of Nonprofits for Ins., Risk Retention Grp. v. Kipper*, 712 F.3d 1316, 1325 (9th Cir. 2013) ("[T]he Supremacy Clause, of its own force, does not create rights enforceable under § 1983.") (cleaned up).  To state this claim, Plaintiffs must identify *substantive* federal law with which these state statutes allegedly conflict—*i.e.*, a statutory or constitutional provision that preempts these California statutes.  *See Chamber of Commerce v. Whiting*, 563

1    U.S. 582, 607 (2011) (preemption cannot be based on "a freewheeling judicial

2    inquiry into whether a state statute is in tension with federal objectives") (quotation

3    marks and citation omitted); *see also Va. Uranium, Inc. v. Warren*, 139 S. Ct. 1894,

4    1901 (2019) (lead opinion of Gorsuch, J.) ("[A] litigant must point specifically to 'a

5    constitutional text or a federal statute' that does the displacing or conflicts with

6    state law." (citation omitted)).  Plaintiffs feint at two such sources:  "the Clean Air

7    Act and principles of federalism inherent in the structure of our federal

8    Constitution."  FAC ¶ 105.  But neither can support the weight of Plaintiffs' claim.

9        First, Congress could not have been more clear that only a very few provisions

10    of the Clean Air Act have preemptive force:  "Except as otherwise provided in [*four*

11    enumerated] sections … nothing in this chapter shall preclude or deny the right of

12    any State or political subdivision thereof to adopt or enforce (1) any standard or

13    limitation respecting emissions of air pollutants or (2) any requirement respecting

14    control or abatement of air pollution."  42 U.S.C. § 7416.  Plaintiffs have not

15    alleged that these state laws run afoul of the four sections of the Clean Air Act that

16    can preempt state law.  Nor could Plaintiffs do so, as those sections concern

17    "certain" state emission standards for "moving sources," which has no bearing on

18    these disclosure requirements.  *Id.*  Plaintiffs fail to identify any provision of the

19    Clean Air Act that even arguably conflicts with these state statutes because there is

20    no such provision.

21        Second, Plaintiffs fail to identify any provision of the Constitution—or any

22    specific "principle of federalism"—that conflicts with the challenged state statutes.

23    Courts have rejected arguments that the Constitution precludes States from

24    obtaining information about corporations' out-of-state activities.  *E.g.*, *VIZIO, Inc.*

25    *v. Klee*, 886 F.3d 249, 256 (2d Cir. 2018) (rejecting constitutional challenge to state

26    law that "*considers* out-of-state activity"); *see also* Argument section III(A), *infra*.[6]

27        ⁶ Plaintiffs nowhere explain the distinction between this claim and their
28    "extraterritorial regulation" claim.  FAC ¶ 112.  Plaintiffs fail to state a claim under

Plaintiffs' vague invocation of unspecified constitutional principles is exactly the sort of "freewheeling" appeal, *Whiting*, 563 U.S. at 607, to "brooding federal interest[s]" upon which the Supreme Court has warned a claim for preemption cannot successfully rely, *Va. Uranium*, 139 S. Ct. at 1901 (lead opinion of Gorsuch, J.).

## III. PLAINTIFFS' EXTRATERRITORIALITY CLAIM SHOULD BE DISMISSED UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM

Plaintiffs' third claim—for extraterritorial regulation—should also be dismissed for failure to state a claim. Plaintiffs identify only one source of authority for this claim: the dormant Commerce Clause. FAC ¶¶ 108, 109, 112. Plaintiffs bear the burden of proof to establish the alleged constitutional violation. *Rosenblatt v. City of Santa Monica*, 940 F.3d 439, 448 (9th Cir. 2019). Yet Plaintiffs have not alleged, and cannot allege, facts sufficient to state such a claim under any legal theory cognizable under the dormant Commerce Clause.[7]

### A. There is No Freestanding "Extraterritorial Regulation" Claim under the Dormant Commerce Clause

Plaintiffs primarily ground their dormant Commerce Clause claim in the purported "extraterritorial" effects of Senate Bill 253 and Senate Bill 261. FAC ¶ 112; *id.* at 27:20. But in *National Pork Producers Council v. Ross* (*NPPC*), 598 U.S. 356, 369, 371 (2023), the Supreme Court rejected the existence of such a

---

that Clause. *See infra* at III. And they cannot save that claim by cloaking it in different cloth here. *Am. Fuel & Petrochem. Mfrs. v. O'Keeffe*, 903 F.3d 903, 917 (9th Cir. 2018) (rejecting claim under "principles of interstate federalism" as indistinct from failed dormant Commerce Clause claim).

[7] Plaintiffs appear to allege a facial challenge because they seek to enjoin Senate Bill 253 and Senate Bill 261 in full and identify no particular applications of either statute that purportedly violate the dormant Commerce Clause. *E.g.*, FAC ¶ 116. At a minimum, this facial challenge must be dismissed because Plaintiffs cannot "establish '"that no set of circumstances exists under which the [statutes] would be valid."'" *Rosenblatt*, 940 F.3d at 444 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). In fact, Plaintiffs seem to suggest that some applications—i.e., to companies with significant revenues from California—would be unobjectionable. FAC ¶ 109.

freestanding claim under this Clause.  Specifically, the Court rejected the existence of an "'extraterritoriality doctrine'"—a purported "rule forbidding enforcement of state laws that have the practical effect of controlling commerce outside the State, even when those laws do not purposely discriminate against out-of-state economic interests." *NPPC*, 598 U.S. at 371.  Reaffirming the dormant Commerce Clause's anti-protectionism focus, *id.* at 364, the Court observed that the cases on which petitioners relied involved "*specific* impermissible 'extraterritorial effect[s]'"—*e.g.*, where the State "deliberately prevented out-of-state firms from undertaking competitive pricing or deprived businesses and consumers in other States of whatever competitive advantages they may possess." *Id.* at 374 (cleaned up).  In other words, the decisions in those cases manifested "the familiar concern with preventing purposeful discrimination against out-of-state economic interests" and did not establish an extraterritoriality doctrine. *Id.* at 371.

Underscoring the point, the Court recognized that "many (maybe most) state laws have the practical effect of controlling extraterritorial behavior," without raising constitutional concerns.  *NPPC*, 598 U.S. at 374 (cleaned up).  As examples, the Court pointed to state "libel laws, securities requirements, charitable registration requirements, franchise laws, [and] tort laws." *Id.* (cleaned up).  Plaintiffs do not allege that either Senate Bill 253 or 261 will have any particular extraterritorial effects, much less extraterritorial effects distinct from those of state libel and securities laws or charitable registration requirements.  To the extent Plaintiffs attempt to allege an "extraterritorial regulation" claim here, that claim should be dismissed, just as in *NPPC*.[8]

---

[8] Although the Court recognized that other constitutional provisions and principles are sometimes invoked to "resolve disputes about the reach of one State's power," *NPPC*, 598 U.S. at 376, Plaintiffs have not identified any provisions or principles upon which they rely other than the dormant Commerce Clause and have not alleged any facts that could sustain such a claim.  Nor could they cure the latter defect, given that Senate Bills 253 and 261 only apply to companies doing business in California.

**B.    Plaintiffs Fail to State a Discrimination Claim under the Dormant Commerce Clause**

As the Court recently reaffirmed in *NPPC*, the "very core of … dormant Commerce Clause jurisprudence" is its "antidiscrimination principle"—the prohibition against "state laws driven [] by economic protectionism." *NPPC*, 598 U.S. at 369 (cleaned up).  Plaintiffs cannot state a claim under this actual dormant Commerce Clause principle because they cannot allege any facts that, if proven, could establish that either Senate Bill 253 or 261 is "'designed to benefit in-state economic interests by burdening out-of-state competitors.'" *Id.* at 369 (quoting *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337–38 (2008)).

Both laws apply evenhandedly to *all* companies that meet their neutral criteria, regardless of location.  Senate Bill 261 applies to any "corporation, partnership, limited liability company, or other business entity" formed in the U.S. that (1) has "total annual revenues in excess of [$500 million]" and (2) "does business in California."  Cal. Health & Saf. Code § 38533(a)(4).  Senate Bill 253's criteria are similar except that it applies only to companies with total annual revenues over $1 billion.  *Id.* § 38532(b)(2).  Neither statute provides an exemption or other special treatment for California companies that meet the income qualifications.  This is simply not "'differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.'" *Rosenblatt*, 940 F.3d at 448 (quoting *Oregon Waste Sys., Inc. v. Dep't of Env't Quality of State of Or.*, 511 U.S. 93, 99 (1994)).

Plaintiffs nonetheless attempt to suggest this evenhanded treatment amounts to economic protectionism, alleging "out-of-state companies that do little business in California will be subject to the laws, even though in-state companies that have their entire business in California (but fall just below the revenue threshold) will not be." FAC ¶ 109.  Far from demonstrating discrimination, however, that allegation underscores its absence.  Plaintiffs concede that the statutes apply to all

companies with certain revenues, if the companies do business in California. That is no different than a non-discriminatory ordinance that "applies to all manufacturers *that make their drugs available in Alameda County*." *Pharm. Rsch. & Mfrs. of Am. v. Cnty. of Alameda* (*PhRMA*), 768 F.3d 1037, 1042 (9th Cir. 2014) (emphasis added). Neither distinguishes based on "the geographic location of the [business]." *Id*. Moreover, "any notion of discrimination assumes a comparison of substantially similar entities." *General Motors Corp. v. Tracy*, 519 U.S. 278, 298 (1997). And Plaintiffs concede what the statutes make plain: that companies with similar revenues will be treated equally. Thus, companies that "fall just below the revenue threshold" have no disclosure obligations—*regardless of their in-state or out-of-state location*. *See* FAC ¶ 109. If anything, the other criteria—whether a company does business in California—*disfavors* entities located in the State as they likely cannot avoid doing some business in the State.

Plaintiffs' conclusory allegation that "the laws 'offend the Commerce Clause' by 'build[ing] up … domestic commerce' through 'burdens upon the industry of other States'" does not cure the Complaint's fatal defects. FAC ¶ 109 (quoting *NPPC*, 598 U.S. at 369) (cleaned up); *see Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions."). Plaintiffs fail to explain how statutes that apply to in-state and out-of-state businesses in exactly the same way could burden the latter to the advantage of the former. Specifically, Plaintiffs do not identify a feature of either statute that "artificially encourag[es] in-state production even when the same goods could be produced at lower cost in other States" or otherwise "provide[s] distinct advantages to in-state entities over out-of-state entities." *PhRMA*, 768 F.3d at 1042 (cleaned up).

**C.    Plaintiffs Fail to State a Claim under the Clause's *Pike* Test**

Plaintiffs also fail to allege a violation of the dormant Commerce Clause's *Pike* test under which a state law "will be upheld unless the burden imposed on

[interstate] commerce is clearly excessive in relation to the putative local benefits." *Pike*, 397 U.S. at 142.  They have not alleged, and cannot allege, the "critical requirement" for a *Pike* claim:  that the application of these state statutes imposes a "substantial burden on interstate commerce." *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1148 (9th Cir. 2012) (emphasis omitted).  Thus, this Court need not even consider Plaintiffs' (unsupported) claims that these statutes provide little benefit. *See id.* at 1156 (declining to consider arguments about benefits "[i]n the absence of … [a] substantial burden on interstate commerce"); *see also Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 127–28 (1978) (same).

A burden on interstate commerce is most frequently cognizable under *Pike* when the nature of the burden suggests protectionism—*i.e.*, where the effects of the challenged law "may … disclose the presence of a discriminatory purpose." *NPPC*, 598 U.S. at 377.  In fact, many *Pike* cases have "turned in whole or in part on the discriminatory character of the challenged state regulations." *Id.* (internal quotation marks omitted).  Thus, "the *Pike* line [of cases] serves as an important reminder that a law's practical effects may also disclose the presence of a discriminatory purpose," and "no clear line separates the *Pike* line of cases from [the] core antidiscrimination precedents." *Id.* (cleaned up).  Plaintiffs have alleged no such burden.  And they cannot cure this defect through amendment because, as shown above, both statutes apply even-handedly without regard to the location of the business.

In the rarer case, a burden cognizable under *Pike* can arise "when a lack of national uniformity would impede *the flow* of interstate goods." *NPPC*, 598 at 380 n.2; *see also Nat'l Pork Producers Council v. Ross*, 6 F.4th 1021, 1032 (9th Cir. 2021), aff'd, 598 U.S. 356 (2023).  Plaintiffs do not and cannot allege that the disclosures required by Senate Bill 253 or 261 impede the flow of goods in interstate commerce.

To the contrary, Plaintiffs allege only that these laws will "require companies to spend significant time and money" in order to comply.  FAC ¶ 109.  But courts have consistently rejected mere compliance costs as substantial burdens on *interstate commerce*, even when the compliance costs are purportedly sizable: "[t]he mere fact that a firm engaged in interstate commerce will face increased costs as a result of complying with state regulations does not, on its own, suffice to establish a substantial burden on interstate commerce." *Ward v. United Airlines, Inc.*, 986 F.3d 1234, 1241–42 (9th Cir. 2021); *Exxon*, 437 U.S. at 127.  Indeed, the Supreme Court affirmed dismissal of a *Pike* claim despite allegations that "certain processing firms" would be required "to make substantial new capital investments." *NPPC*, 598 U.S. at 367.  This Court should do likewise here.

## IV. SOVEREIGN IMMUNITY BARS ALL OF PLAINTIFFS' CLAIMS AGAINST ATTORNEY GENERAL BONTA

The Eleventh Amendment bars a private party from suing a state and its agencies unless the state consents to the suit.  *Los Angeles Branch NAACP v. Los Angeles Unified School Dist.*, 714 F.2d 946, 952 (9th Cir. 1983).[9]  However, under *Ex parte Young*, 209 U.S. 123 (1908), sovereign immunity does not bar "actions seeking only prospective declaratory or injunctive relief against state officers in their official capacities" who are acting unconstitutionally.  *L.A. County Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992).  For this exception to apply, "the state officer sued must have some connection with the enforcement of the [allegedly unconstitutional] act." *Id.* (cleaned up).  This connection "must be fairly direct" and the state official must have more than "a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision." *L.A. County Bar Ass'n*, 979 F.2d at 704.

---

[9] Section 1983 did not abrogate a state's Eleventh Amendment immunity, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and California has not waived that immunity with respect to claims brought under § 1983 in federal court.  *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985).

Plaintiffs fail to allege that Attorney General Bonta has a plausible connection to enforcement of the laws at issue here.  They claim only that Attorney General Bonta is "the chief law officer of the State" and has a "duty … to see that the laws of [California] are uniformly and adequately enforced."  FAC ¶ 17 (alterations and ellipses in original).  But alleging that Attorney General Bonta has a "'general duty to enforce California law' is plainly insufficient to invoke the Ex parte Young exception to Eleventh Amendment immunity."  *Bolbol v. Brown*, 120 F. Supp. 3d 1010, 1018 (N.D. Cal. 2015) (quoting *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013)).  And while Plaintiffs also point out that Senate Bill 253 requires CARB to "consult with" Attorney General Bonta in developing its implementing regulations, FAC ¶ 17, this allegation does not establish a role in enforcement of the statute.  *See Tohono O'odham Nation v. Ducey*, 130 F. Supp. 3d 1301, 1311 (D. Ariz. 2015).[10]

Nor could Plaintiffs cure this deficiency.  Both laws expressly charge CARB with enforcement of their substantive provisions, and provide no enforcement authority to Attorney General Bonta.  Cal. Health & Saf. Code §§ 38532(c)(3), 38533(c)(2).  As he lacks "enforcement authority … in connection with" the laws "that a federal court might enjoin him from exercising," Plaintiffs' claims against him must be dismissed.  *Whole Woman's Health v. Jackson*, 595 U.S. 30, 43 (2021).

---

[10] In any event, this allegation pertains only to Senate Bill 253, and not Senate Bill 261.

Dated:  March 27, 2024

Respectfully submitted,

ROB BONTA
Attorney General of California
GARY E. TAVETIAN
MYUNG J. PARK
Supervising Deputy Attorney General
M. ELAINE MECKENSTOCK
EMILY HAJARIZADEH
DYLAN REDOR
Deputy Attorneys General


/s/ Caitlan McLoon

CAITLAN MCLOON
Deputy Attorney General
*Attorneys for Defendants Liane M.
Randolph, Steven S. Cliff, and Robert
A. Bonta*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Liane M. Randolph, Steven S. Cliff, and Robert A. Bonta, certifies that this brief contains 6,984 words, which complies with the word limit of L.R. 11-6.1.

Dated:  March 27, 2024                    Respectfully submitted,

                                          ROB BONTA
                                          Attorney General of California
                                          GARY E. TAVETIAN
                                          MYUNG J. PARK
                                          Supervising Deputy Attorney General
                                          M. ELAINE MECKENSTOCK
                                          EMILY HAJARIZADEH
                                          DYLAN REDOR
                                          Deputy Attorneys General


                                          /s/ Caitlan McLoon

                                          CAITLAN MCLOON
                                          Deputy Attorney General
                                          *Attorneys for Defendants Liane M. Randolph, Steven S. Cliff, and Robert A. Bonta*

SA2024300503
66681048.docx

24

## CERTIFICATE OF SERVICE

Case Name:    **Chamber of Commerce of the United States of America, et al. v. Liane M. Randolph, et al.**

Case No.:    **2:24-cv-00801-FMO-PVCx**

I hereby certify that on <u>March 27, 2024</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>March 27, 2024</u>, at Los Angeles, California.

| Beatriz Davalos | /s/ Beatriz Davalos |
|---|---|
| Declarant | Signature |

SA2024300503
66591334.docx

25