EUGENE SCALIA, SBN 151540
  escalia@gibsondunn.com
KATHERINE MORAN MEEKS
(*pro hac vice*)
  DC Bar No. 1028302
  kmeeks@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5306
Telephone:  202.955.8500
Facsimile:   202.467.0539

*Attorneys for Plaintiffs Chamber of
Commerce of the United States of
America, California Chamber of
Commerce, American Farm Bureau
Federation, Los Angeles County
Business Federation, Central Valley
Business Federation, and
Western Growers Association*

(*Additional counsel listed on next page*)

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA,

## WESTERN DIVISION

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, CALIFORNIA CHAMBER OF COMMERCE, AMERICAN FARM BUREAU FEDERATION, LOS ANGELES COUNTY BUSINESS FEDERATION, CENTRAL VALLEY BUSINESS FEDERATION, and WESTERN GROWERS ASSOCIATION, <br><br> Plaintiffs, <br><br> v. <br><br> LIANE M. RANDOLPH, in her official capacity as Chair of the California Air Resources Board, STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board, and ROBERT A. BONTA, in his official capacity as Attorney General of California. <br><br> Defendants. | CASE NO. 2:24-cv-00801-ODW-PVC <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON CLAIM I** [F.R.C.P. 56] <br><br> **HEARING:** <br> Date:       Sept. 9, 2024 <br> Time:       1:30 PM <br> Location:   Courtroom 5D <br> Judge:      Otis D. Wright II |

Gibson, Dunn &
Crutcher LLP

1   BRADLEY J. HAMBURGER,
2       SBN 266916
        bhamburger@gibsondunn.com
3   SAMUEL ECKMAN, SBN 308923
        seckman@gibsondunn.com
4   ELIZABETH STRASSNER,
5       SBN 342838
        estrassner@gibsondunn.com
6   GIBSON, DUNN & CRUTCHER LLP
    333 South Grand Ave.
7   Los Angeles, CA  90071-3197
    Telephone:  213.229.7000
8   Facsimile:   213.229.7520

9   BRIAN A. RICHMAN
    (*pro hac vice*)
10      DC Bar No. 230071
        brichman@gibsondunn.com
11  GIBSON, DUNN & CRUTCHER LLP
12  2001 Ross Ave., Suite 2100
    Dallas, TX  75201-2923
13  Telephone:  214.698.3100
    Facsimile:   214.571.2900
14

15  *Attorneys for Plaintiffs Chamber of Commerce of the United States of America,*
    *California Chamber of Commerce, American Farm Bureau Federation, Los Angeles*
    *County Business Federation, Central Valley Business Federation, and*
16  *Western Growers Association*

17  DARYL JOSEFFER
    (*pro hac vice*)
18      DC Bar No. 457185
        djoseffer@uschamber.com
19  TYLER S. BADGLEY
20  (*pro hac vice*)
        DC Bar No. 1047899
        tbadgley@uschamber.com
21  KEVIN PALMER
22  (*pro hac vice*)
        DC Bar No. 90014967
23      kpalmer@uschamber.com
    CHAMBER OF COMMERCE OF THE
24  UNITED STATES OF AMERICA
    1615 H Street, NW
25  Washington, D.C.  20062-2000
    Telephone:  202.659.6000
26  Facsimile:   202.463.5302

27  *Attorneys for Plaintiff Chamber of Commerce of the United States of America*
28

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................ 1

II. BACKGROUND .............................................................................................. 2

    A.    California Seeks to Hold Corporations Accountable for Climate Change Through Senate Bills 253 and 261 ................................................ 2

    B.    The New Laws Impose Substantial Costs on Business. ............................ 3

    C.    Plaintiffs Bring This Suit to Enjoin the Laws' Unconstitutional Mandates. ................................................................................................. 5

III. LEGAL STANDARD ...................................................................................... 6

IV. ARGUMENT ................................................................................................... 6

    A.    S.B. 253 and 261 Fail Strict Scrutiny ....................................................... 7

        1.    Strict Scrutiny Applies. .................................................................. 7

        2.    The State Cannot Show that the Laws Survive Strict Scrutiny. ........................................................................................ 9

    B.    Less Stringent First Amendment Standards Have No Application and Cannot Save the Laws Anyway. ...................................................... 14

        1.    S.B. 253 and 261 Do Not Fall into Either Exception to Strict Scrutiny. ................................................................................ 14

        2.    The Laws Fail Any Degree of First Amendment Scrutiny............ 19

    C.    The Court Should Enjoin Application, Implementation, or Enforcement of the Laws. ....................................................................... 20

V. CONCLUSION ............................................................................................... 21

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*303 Creative LLC v. Elenis*,
    600 U.S. 570 (2023)...................................................................................7

*Am. Beverage Ass'n v. City & Cnty. of San Francisco*,
    916 F.3d 749 (9th Cir. 2019) (en banc) ...................................8, 16, 20, 21

*Americans for Prosperity Found. v. Bonta*,
    141 S. Ct. 2373 (2021)............................................................................21

*AMI. v. USDA*,
    760 F.3d 18 (D.C. Cir. 2014)........................................................9, 13, 17

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..................................................................................6

*Ariix, LLC v. NutriSearch Corp.*,
    985 F.3d 1107 (9th Cir. 2021) ................................................................15

*Bolger v. Youngs Drug Prods. Corp.*,
    463 U.S. 60 (1983)..................................................................................15

*Book People, Inc. v. Wong*,
    91 F.4th 318 (5th Cir. 2024)...................................................................17

*Brown v. Entm't. Merchs. Ass'n*,
    564 U.S. 786 (2011)..................................................................11, 18, 21

*Cal. Chamber of Commerce v. Council for Educ. & Research on Toxics*,
    29 F.4th 468 (9th Cir. 2022) ..............................................................18, 19

*Canyon Ferry Road Baptist Church of East Helena, Inc. v. Unsworth*,
    556 F.3d 1021 (9th Cir. 2019) ................................................................14

*Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*,
    447 U.S. 557 (1980)................................................................................15

*Citizens United v. FEC*,
    558 U.S. 310 (2010)....................................................................8, 11, 15

# TABLE OF AUTHORITIES
(continued)

Page(s)

*CTIA - The Wireless, Ass'n v. City of Berkeley*,
 928 F.3d 832 (9th Cir. 2019) ........................................................................ 9, 15, 19

*Edenfield v. Fane*,
 507 U.S. 761 (1993) ............................................................................................. 9

*Elrod v. Burns*,
 427 U.S. 347 (1976) ........................................................................................... 20

*Entm't Software Ass'n v. Blagojevich*,
 469 F.3d 641 (7th Cir. 2006) ............................................................................. 17

*Fairbank v. Wunderman Cato Johnson*,
 212 F.3d 528 (9th Cir. 2000) ............................................................................... 6

*Fulton v. City of Philadelphia*,
 593 U.S. 522 (2021) ........................................................................................... 10

*Green v. Miss United States of Am., LLC*,
 52 F.4th 773 (9th Cir. 2022) ...................................................................... 8, 9, 10

*Hill v. Colorado*,
 530 U.S. 703 (2000) ........................................................................................... 14

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
 515 U.S. 557 (1995) ................................................................................... 7, 16, 17

*Ibanez v. Fla. Dep't of Bus. & Prof'l Reg.*,
 512 U.S. 136 (1994) ........................................................................................... 20

*IMDB.com, Inc. v. Becerra*,
 2018 WL 979031 (N.D. Cal. Feb. 20, 2018) ....................................................... 6

*Int'l Dairy Foods Ass'n v. Amestoy*,
 92 F.3d 67 (2d Cir. 1996) .................................................................................... 9

*Italian Colors Rest. v. Becerra*,
 878 F.3d 1165 (9th Cir. 2018) ...................................................................... 9, 10

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*,
 585 U.S. 878 (2018) ....................................................................................... 8, 18

iii

Gibson, Dunn & Crutcher LLP

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Junior Sports Magazines Inc. v. Bonta*,
    80 F.4th 1109 (9th Cir. 2023) ............................................................... 10, 19

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ..................................................................................... 6

*McIntyre v. Ohio Elections Comm'n*,
    514 U.S. 334 (1995) ..................................................................................... 9

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
    142 S. Ct. 2111 (2022) ............................................................................... 14

*NAM v. SEC*,
    748 F.3d 359 (D.C. Cir. 2014) ................................................................... 12

*NAM v. SEC*,
    800 F.3d 518 (D.C. Cir. 2015) ....................................... 10, 11, 13, 16, 19

*Nat'l Ass'n of Wheat Growers v. Bonta*,
    85 F.4th 1263 (9th Cir. 2023) ...................................... 7, 12, 18, 19, 21

*Nat'l Rifle Ass'n of Am. v. City of L.A.*,
    441 F. Supp. 3d 915 (C.D. Cal. 2019) ........................................................ 6

*NIFLA v. Becerra*,
    585 U.S. 755 (2018) ...........................7, 8, 9, 10, 11, 13, 15, 16, 17, 18, 19, 20, 21

*O'Brien v. Welty*,
    818 F.3d 920 (9th Cir. 2016) .................................................................... 13

*In re Oracle Corp. Sec. Litig.*,
    627 F.3d 376 (9th Cir. 2010) ...................................................................... 6

*Pac. Gas & Elec. Co. v. Pub. Utilities Comm'n*,
    475 U.S. 1 (1986) ........................................................................................ 7

*In re R.M.J.*,
    455 U.S. 191 (1982) .............................................................................. 19, 20

*Reed v. Town of Gilbert, Ariz.*,
    576 U.S. 155 (2015) ..................................................................................... 9

Gibson, Dunn &
Crutcher LLP

iv

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*,
    487 U.S. 781 (1988)................................................................................. 7, 8

*Small Bus. Fin. Ass'n v. Hewlett*,
    2023 WL 3551061 (C.D. Cal. Mar. 30, 2023) ......................................... 14

*Townsend Farms Inc. v. Göknur Gida Maddeleri Enerji Imalat Ithalat Ihracat Ticaret Ve Sanayi A.S.*,
    2016 WL 10570246 (C.D. Cal. Nov. 21, 2016) ...................................... 15

*Twitter, Inc. v. Garland*,
    61 F.4th 686 (9th Cir. 2023) ................................................................... 11

*United States v. Lopez*,
    514 U.S. 549 (1995).................................................................................. 10

*United States v. Playboy Entm't Grp., Inc.*,
    529 U.S. 803 (2000).................................................................................. 11

*United States v. Stevens*,
    559 U.S. 460 (2010).................................................................................... 6

*United States v. United Foods, Inc.*,
    533 U.S. 405 (2001).................................................................................. 15

*Video Software Dealers Ass'n v. Schwarzenegger*,
    556 F.3d 950 (9th Cir. 2009) ................................................................... 18

*Williams-Yulee v. Florida Bar*,
    575 U.S. 433 (2015).................................................................................... 9

*Wooley v. Maynard*,
    430 U.S. 705 (1977)................................................................................ 1, 7

*Ysursa v. Pocatello Education Ass'n*,
    555 U.S. 353 (2009).................................................................................... 1

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*,
    471 U.S. 626 (1985)............................................................................. 15, 16

# TABLE OF AUTHORITIES
(continued)

Page(s)

**STATUTES**

S.B. 253 ....................................................................................4, 10, 11, 16, 18, 19

S.B. 261 ....................................................................................3, 4, 8, 11, 12, 14, 17, 19

**RULES**

Federal Rule of Civil Procedure 56(a) ................................................................. 6

**REGULATIONS**

89 Fed. Reg. 21,698 (Mar. 28, 2024)................................................................. 2, 12

Gibson, Dunn &
Crutcher LLP

# I. INTRODUCTION

It is fundamental that "the right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977).  S.B. 253 and 261 violate this First Amendment protection by compelling thousands of companies doing even minimal business in California to make controversial, opinion-laden statements on the hotly contested and politically salient issue of climate change.  The laws will force every covered entity, as a consequence of merely entering the California market, to publicly state its opinions regarding the risks associated with climate change, post those opinions to its own website, and disclose an inexact, misleading calculation of the entity's greenhouse-gas emissions.  Worse still, the laws do so with the express purpose of advancing the State's preferred view on emissions.  The record makes clear that the State is attempting to force companies to make controversial disclosures that invite public opprobrium and thereby "encourage [companies] to take meaningful steps to reduce [greenhouse-gas] emissions."  Plaintiffs' Statement of Uncontroverted Facts ("UF") No. 17.

Plaintiffs support policies that reduce greenhouse-gas emissions as much and as quickly as reasonably possible, consistent with the pace of innovation and the feasibility of implementing large-scale technical change.  Nevertheless, the First Amendment does not permit California to impose speculative and—in the words of Governor Newsom—"likely infeasible" disclosures that burden speech rights and would have a substantial "financial impact," all in the hope that the scrutiny these disclosures invite will coerce companies to reduce their emissions.  UF 22-23.

California's chosen path—designed to spark a public pressure campaign through compelled speech—violates the First Amendment.  Because S.B. 253 and 261 compel the content of companies' speech, they "are 'presumptively invalid' and subject to strict scrutiny." *Ysursa v. Pocatello Education Ass'n*, 555 U.S. 353, 358 (2009).  The laws fail that scrutiny.  California cannot connect the required disclosures to any concrete,

1   direct, immediate, and legitimate interests, such as avoiding fraud.  And the disclosure

2   requirements are unusually burdensome, both in terms of cost and on free-speech rights.

3   In fact, the mandate to report certain emissions is likely to cost some companies more

4   than $1 million per year each, UF 29, which is why the SEC refused to adopt a similar

5   requirement, *see* 89 Fed. Reg. 21,698, 21,736 (Mar. 28, 2024).

6       The Court should grant Plaintiffs' motion for summary judgment on Claim I of

7   their Amended Complaint, declare S.B. 253 and 261 facially invalid under the First

8   Amendment, and enjoin Defendants from implementing, applying, or taking any action

9   whatsoever to enforce the laws.

10                              **II.  BACKGROUND**

11  **A.  California Seeks to Hold Corporations Accountable for Climate Change**

12      **Through Senate Bills 253 and 261.**

13      On October 7, 2023, Governor Newsom signed two bills, S.B. 253 and 261,

14  requiring thousands of companies doing business in California to engage in burdensome,

15  controversial, and opinion-laden speech regarding climate change—a hotly disputed

16  political issue.  The laws attempt, through compelled speech, to "create accountability

17  for those that aren't" "doing their part to tackle the climate crisis."  UF 1; *accord* UF 2,

18  4-6.  "Californians," one legislator wrote, "have a right to know who" is "destroying

19  [their] planet" by "causing" climate change.  UF 15.  And the laws, supporters have said,

20  will "check the climate crisis" by letting the public "hold [companies] accountable," UF

21  19, for "emitting greenhouse gasses," UF 20; *accord* UF 7, 9-11.

22      As supporters of the bills explained, the purpose of these speech compulsions is

23  to regulate conduct—to "encourage" companies to conform their behavior to the policy

24  preferences of the State.  UF 17.  As one legislator explained, the goal of S.B. 253 is to

25  compel companies to release information even though "they don't want to do the

26  disclosure" because (in the State's view) "they think they're going to be embarrassed by

27  it."  UF 3.

28

**B.     The New Laws Impose Substantial Costs on Business.**

Both laws compel a substantial amount of speech at significant expense, without a permissible compelling governmental interest.  By the Governor's own reckoning, the legislation will have a negative "financial impact" on the more than 10,000 businesses covered, will impose deadlines that are "likely infeasible," and will deluge the public with unhelpful, "inconsistent" information.  UF 22; *see also* UF 39-40.

**1.**     S.B. 261 is expected to apply to more than 10,000 businesses.  UF 48.  It reaches any company with revenues exceeding $500 million that does any business in California. S.B. 261 § 2(a).  Because there is no de minimis exception, if an entity exceeds the revenue threshold, it is subject to S.B. 261 even if it conducts an immaterial amount of business in the State and even if the business it conducts in California lacks any plausible connection to climate change.

The law requires any covered entity to publicly state its opinion regarding various "climate-related financial risk[s]" and to post that opinion to the entity's website. S.B. 261 § 2(b)(1)(A), (c)(1).  Under the law, companies must opine on any "material risk of harm to immediate and long-term financial outcomes due to physical and transition risks, including, but not limited to, risks to corporate operations, provision of goods and services, supply chains, employee health and safety, capital and financial investments, institutional investments, financial standing of loan recipients and borrowers, shareholder value, consumer demand, and financial markets and economic health." *Id.* § 2(a)(2).  Companies must then provide a report discussing any "measures adopted to reduce and adapt to" any of the above climate-related risks.  *Id.* § 2(b)(1)(A)(ii).  And unless a company certifies that it has prepared an "equivalent" report for other reasons (e.g., it was required by federal law or the law of another "government entity"), the law requires companies to conform their reports to the "recommended framework" contained in the "Final Report of Recommendations of the Task Force on Climate-Related Financial Disclosures (June 2017)."  *Id.* § 2(b)(1)(A), (4).  That framework provides detailed instructions on the "types of information that should be disclosed or

considered" and how such information "should be presented."  Hamburger Decl. Ex. 20 at 19, 51; *see also* UF 45.

**2.**   S.B. 253 likewise applies to any company exceeding a certain revenue threshold (in this case, $1 billion) that does any business in California.   S.B. 253 § 2(b)(2).   The law is expected to directly cover more than 5,300 companies, UF 27, although its impact will extend to many more companies that do business with the covered entities, including small businesses and businesses with no operations in California.

S.B. 253 requires each covered entity to publicly state the "entity's" greenhouse-gas emissions.   S.B. 253 § 2(c)(1).   Each entity must "measure and report" three categories of greenhouse-gas emissions—Scope 1, Scope 2, and Scope 3—"in conformance with the Greenhouse Gas Protocol standards and guidance."   *Id.* § 2(c)(1)(A)(ii).   And although the law purports to require each company to report "its emissions," *id.*, "Scope 2" and "Scope 3" emissions are defined to include the emissions of *others*, including emissions from utility providers, upstream suppliers, and downstream customers.   *Id.* § 2(c)(1).   Thus, S.B. 253 requires a company to misleadingly represent that the emissions of other entities are its own.   Moreover, by requiring reporting "in conformance with the Greenhouse Gas Protocol," the law requires companies to make reports that are misleadingly high, because the Greenhouse Gas Protocol does not factor in emissions that companies avoid or offset.

The reported emissions are not purely factual.   Besides forcing a company to report others' emissions as its own, the proper calculation of a company's emissions is subject to significant debate.   Even Governor Newsom expressed concerns about inconsistent reporting, stating "the reporting protocol specified" in S.B. 253 "could result in inconsistent reporting across businesses subject to the measure."   UF 22. Emissions calculations necessarily turn on subjective judgments concerning the "advantages and disadvantages" of various approaches to estimation.   UF 34.   Even more so, the subjective estimations an entity reports as its Scope 3 emissions are those

of other reporting entities altogether, both downstream and upstream in the supply chain. UF 32.

The emissions estimations S.B. 253 requires are enormously burdensome.  And S.B. 253's requirements go beyond what companies, including members of Plaintiffs, would otherwise do.  *See, e.g.*, UF 62-65.  The Scope-3 requirement alone could cost some companies more than $1 million per year. *See, e.g.*, UF 29.  And as even the SEC acknowledges, the estimate in many instances may be inaccurate.  *See* UF 30 (acknowledging that, "in many instances, direct measurement of [greenhouse-gas] emissions at the sources, which would provide the most accurate measurement, may not be possible").

The burden of estimating Scope 3 emissions flows up and down the supply chain. *See, e.g.*, UF 32.  Small businesses nationwide, including family farms far outside of California, UF 66-85, will incur significant costs monitoring and reporting emissions to suppliers and customers swept within the law's reach.

## C.    Plaintiffs Bring This Suit to Enjoin the Laws' Unconstitutional Mandates.

S.B. 253 and 261 forces thousands of companies, including Plaintiffs' members, to engage in controversial speech that they do not wish to make, untethered to any commercial purpose or transaction. *E.g.*, UF 50-85.  And they do all this for the explicit purpose of placing political and economic pressure on companies to "encourage" them to conform their behavior to the policy goals of the State.  This violates the First Amendment, as well as the Supremacy Clause and the Constitution's prohibition on extraterritorial regulation by the States.

Plaintiffs sued to enjoin the implementation or enforcement of the laws on these grounds.  Dkt. 28.  Defendants moved to dismiss Plaintiffs' complaint in part, but did not seek to dismiss the First Amendment claim.  Dkt. 38; *see also* Dkt. 43 (opposition).

Plaintiffs now move for summary judgment on their First Amendment claim (Claim I of the amended complaint).  Dkt. 46.

### III.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), the Court may grant summary judgment on a claim "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  "Once the moving party has met its initial burden, Rule 56[ ] requires the nonmoving party to go beyond the pleadings and identify facts which show a genuine issue for trial." *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000).  The State's burden here "is not a light one." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  In deciding whether something is a "genuine issue for trial," the Court looks to "the record taken as a whole." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In the First Amendment context, a party bringing a facial challenge need show only that "a substantial number of [a law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010).  Unlike facial challenges in other contexts, "facial attacks under the First Amendment are given more permissive consideration" because "the First Amendment needs breathing space." *Nat'l Rifle Ass'n of Am. v. City of L.A.*, 441 F. Supp. 3d 915, 927 (C.D. Cal. 2019); *see Stevens*, 559 U.S. at 473.  Facial challenges to state statutes are routinely resolved on motions for summary judgment.  *See, e.g.*, *IMDB.com, Inc. v. Becerra*, 2018 WL 979031 (N.D. Cal. Feb. 20, 2018), *aff'd*, 962 F.3d 1111 (9th Cir. 2020).

### IV.  ARGUMENT

The Court should permanently enjoin Defendants from enforcing or implementing S.B. 253 and 261, because they unconstitutionally compel speech.  The laws serve no compelling government interest, concern a controversial matter of

vehement public debate that is not purely factual, and are nothing like the government-required disclosures regarding health, safety, or other matters that courts have upheld in other contexts.

## A.    S.B. 253 and 261 Fail Strict Scrutiny.

The First Amendment prohibits "abridging the freedom of speech."  U.S. Const. amend. I.  This freedom "includes both the right to speak freely and the right to refrain from speaking at all," *Wooley*, 430 U.S. at 714, and it "applies not only to expressions of value, opinion, or endorsement, but equally to statements of fact the speaker would rather avoid," *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 573 (1995).  "For corporations as for individuals, the choice to speak includes within it the choice of what not to say." *Pac. Gas & Elec. Co. v. Pub. Utilities Comm'n*, 475 U.S. 1, 16 (1986) (plurality).   Laws compelling speech are thus "presumptively unconstitutional" and routinely trigger—and fail—strict scrutiny.  *NIFLA v. Becerra*, 585 U.S. 755, 766 (2018); *accord Nat'l Ass'n of Wheat Growers v. Bonta*, 85 F.4th 1263, 1283 (9th Cir. 2023) ("Although commandeering speech may seem expedient, it is seldom constitutionally permissible.").  S.B. 253 and 261 violate the First Amendment by compelling thousands of companies to make controversial, opinion-laden statements on the hotly contested, politically salient issue of climate change.

### 1.    Strict Scrutiny Applies.

By requiring companies to wade into a contentious political debate, S.B. 253 and 261 infringe on companies' freedom "to remain silent," triggering strict scrutiny twice over. *303 Creative LLC v. Elenis*, 600 U.S. 570, 586 (2023).

*First*, by "[m]andating speech that a speaker would not otherwise make," the laws "necessarily alter[ ] the content of the speech" and thus qualify as "content-based regulation[s]." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 795 (1988). The laws require companies to disclose an inexact, misleading calculation of greenhouse-gas emissions, and publicly pronounce subjective judgments about future risks—requiring, for example, determinations of which risks to their businesses are

"climate-related."  The laws thereby force companies into public discussions about why they do or do not have certain climate-related policies or expertise.  As "[c]ontent-based" rules, S.B. 253 and 261 "presumptively" trigger, and fail, "strict scrutiny."  *NIFLA*, 585 U.S. at 766.  As the Ninth Circuit has explained, a "government regulation compelling individuals to speak a particular message is a content-based regulation that is subject to strict scrutiny."  *Green v. Miss United States of Am., LLC*, 52 F.4th 773, 791 (9th Cir. 2022) (quoting *Am. Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 759 (9th Cir. 2019) (en banc) (Ikuta, J., concurring in the result)).

*Second*, by "compelling" opinion-based discussion of climate change, the laws unavoidably "burden" political speech.  *Riley*, 487 U.S. at 798.  "Laws that burden political speech" are independently "'subject to strict scrutiny.'"  *Citizens United v. FEC*, 558 U.S. 310, 340 (2010).  "[C]limate change" is a "sensitive political topic[ ]," and it is "undoubtedly [a] matter[ ] of profound 'value and concern to the public.'"  *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 585 U.S. 878, 913-14 (2018).  Such speech thus "'occupies the highest rung on the hierarchy of First Amendment values' and merits 'special protection.'"  *Id.* at 914.  The California Legislature itself recognizes that climate change is a high-profile political issue subject to robust debate among "[g]lobal economic and climate policy leaders," S.B. 261 § 1(b); UF 42, and that it raises many contested questions, including climate change's "long-term" consequences, *id.*, and corporations' responsibility to "plan for and adapt to" it, *id.* § 1(c); UF 43.  The laws' sponsors, moreover, admit that the speech compelled here not only will fuel the policy debate—"provid[ing] . . . policymakers with" information they want to use in support of their policy goals, UF 16, but also will necessarily address the efficacy of "public policies to address climate change," UF 39.  The First Amendment protects each person's right to speak, or not, on this crucial matter of public debate; the government can no more compel than prohibit speech on the subject of climate change or the government's response "to address" it.  *Id.*

For both reasons, S.B. 253 and 261 warrant strict scrutiny, and are "presumptively unconstitutional." *NIFLA*, 585 U.S. at 766.

### 2.    The State Cannot Show that the Laws Survive Strict Scrutiny.

**a.**    Strict scrutiny places the burden on the government, not the plaintiff, to show that the legislation survives review, *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 171 (2015)—and "it is the rare case" when the government can meet this burden, *Williams-Yulee v. Florida Bar*, 575 U.S. 433, 444 (2015).   S.B. 253 and 261 "may be justified only if the government proves that they are narrowly tailored to serve compelling state interests."    *NIFLA*, 585 U.S. at 766.    "These requirements are daunting," *Green*, 52 F.4th at 791, and the State here cannot meet the challenge.

*First*, the laws are not justified by a compelling state interest.   The government cannot rest on "mere speculation or conjecture." *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1176 (9th Cir. 2018).   It must prove that a compelling problem exists. *See, e.g.*, *Edenfield v. Fane*, 507 U.S. 761, 770-771 (1993).   But there is no evidence that the rule furthers *any* "compelling" government interest.   *NIFLA*, 585 U.S. at 766.

There is no compelling government interest "simply" in providing "information." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 348 (1995).   "[T]he interest at stake must be more than the satisfaction of mere consumer curiosity." *CTIA - The Wireless, Ass'n v. City of Berkeley*, 928 F.3d 832, 844 (9th Cir. 2019); *see also AMI v. USDA*, 760 F.3d 18, 31 (D.C. Cir. 2014) (Kavanaugh, J., concurring) ("[I]t is plainly not enough for the Government to say simply that is has a substantial interest in giving consumers information," because "[a]fter all, that would be true of any and all disclosure requirements."); *Int'l Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67, 73 (2d Cir. 1996) ("We are aware of no case in which consumer interest alone was sufficient[.]").   The State needs more than that—but, here, there is nothing more.   The State does not, and cannot, connect the required disclosures to any concrete, direct, and immediate interest that any court has recognized, such as avoiding fraud or undisclosed materials risks.   A "state may not restrict protected speech to prevent something that does not appear to occur."

*Junior Sports Magazines Inc. v. Bonta*, 80 F.4th 1109, 1117 (9th Cir. 2023).  Yet here, the State has not shown "a *single* instance," *id.*, of anyone having been harmed by a lack of climate-related disclosures—the *only* supposed problem these laws seek to remedy.  Thus, "California has not demonstrated any justification for . . . [the compelled speech] that is more than 'purely hypothetical.'"  *NIFLA*, 585 U.S. at 776; *see also Italian Colors*, 878 F.3d at 1177 (striking down speech restriction where California "pointed to no evidence" that the cited dangers "were in fact real").

The State has made vague, generalized assertions of interest, but the "'First Amendment demands a more precise analysis' than the 'high level of generality' offered here."  *Green*, 52 F.4th at 791 (quoting *Fulton v. City of Philadelphia*, 593 U.S. 522, 541 (2021)).  The State has asserted, for example, that "California investors, consumers, and other stakeholders deserve transparency from companies regarding their greenhouse gas (GHG) emissions to inform their decisionmaking," and that "people, communities, and other stakeholders in California . . . have a right to know about the sources of carbon pollution . . . in order to make informed decisions."  S.B. 253 § 1(e), (j); UF 24-25, 44.  But the State cannot explain what decisionmaking the required disclosures will better inform, or how the *disclosures* would do that.  Why, for example, would a consumer purchasing a pack of gum at a convenience store in California need to know the precise level of "sulphur hexafluoride," UF 33, emitted by employees of the same convenience store chain "commut[ing]" to work in Rhode Island, S.B. 253 § 2(b)(5)?  Or whether the chain's future financial performance may "be affected by changes in water availability" in Vermont?  UF 45.

At most, the State seems to believe that consumers could boycott companies with significant greenhouse-gas emissions, which could help the State "move towards a net-zero carbon economy" that would "protect the state and its residents," presumably by ending or mitigating climate change.  S.B. 253 § 1(*l*); UF 26.  But to credit such a claim would require "pil[ing] inference upon inference."  *United States v. Lopez*, 514 U.S. 549, 567 (1995).  In *NAM v. SEC*, the SEC had similarly, and unsuccessfully, argued that a

compelled "conflict free" disclosure might cause consumers to "boycott mineral suppliers having any connection to [a specific] region of Africa," which would "decrease the revenue of armed groups in the DRC and their loss of revenue [would] end or at least diminish the humanitarian crisis there." 800 F.3d 518, 525 (D.C. Cir. 2015) ("*NAM II*"). But there, as here, the "major problem with this idea" is that it "is entirely unproven and rests on pure speculation." *Id.* The State cites no evidence that consumers would change their purchasing habits based on a company's greenhouse-gas emissions, that any such consumer sentiment would result in material changes in companies' emissions, or that any such changes would have a material impact on climate change. As the State admits, climate change is a "global" phenomenon, UF 14, 37, and combatting it requires a "*global* reduction of [greenhouse-gas emissions]," UF 18 (emphasis added). There is no evidence that S.B. 253 and 261 would make any discernable difference in global emissions, and thus to global climate change.

*Second*, even if the State were able to show some justification for these requirements, it has made no attempt to tailor them to that justification. "To be narrowly drawn, a 'curtailment of free speech must be actually necessary to the solution.'" *Twitter, Inc. v. Garland*, 61 F.4th 686, 698 (9th Cir. 2023) (quoting *Brown v. Entm't. Merchs. Ass'n*, 564 U.S. 786, 799 (2011)). And "[i]f a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative." *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000).

The disclosures here fail tailoring because they are far "broader than reasonably necessary." *NIFLA*, 585 U.S. at 776. For example, even if California were able to show that "investors" or "consumers" need certain climate-related information, *see* S.B. 261 § 1(c); S.B. 253 § 1(e); UF 43, 24, the disclosure requirements apply far beyond that supposed justification—to *any* "business entity" satisfying the revenue threshold, *e.g.*, S.B. 261 § 2(a)(4), whether it has outside investors or not, *see* UF 28, 49, or whether the compelled climate-related speech bears any relation to a product or service sold within the State. *Cf. Citizens United*, 558 U.S. at 362 (statute to protect dissenting shareholders

was overinclusive where it applied to nonprofit corporations and corporations with only single shareholders).  The laws are overbroad, too, in that they require companies to speak about climate change even if they have low [greenhouse-gas]emissions, or face negligible financial risk from climate change.

California could try numerous alternative approaches that burden less speech.  For instance, rather than compel individual companies to discuss subjective climate-related financial risks themselves, California could compile its own reports disclosing the "physical and transition risks," S.B. 261 § 2(a)(2), that companies in various industries face.  *Cf. NAM v. SEC*, 748 F.3d 359, 372 (D.C. Cir. 2014) ("*NAM I*") (finding the SEC's compelled conflict-mineral disclosures to be unduly burdensome because "the government could compile its own list of products that it believes are affiliated with the Congo war"), *overruled on other grounds by AMI*, 760 F.3d 18.  California could similarly provide its own estimates of companies' greenhouse gas emissions.  Studies show that 90% of a company's greenhouse-gas emissions could be estimated with readily available information, such as industry, size, and earnings growth.  *See, e.g.*, UF 35.  "California could . . . post [such] information . . . on its own website," without "co-opt[ing]" the speech of anyone else.  *Wheat Growers*, 85 F.4th at 1283.  To survive a First Amendment challenge, California must "provide evidence" that these and other "intuitive alternatives to regulating speech would be . . . less effective" than its current approach.  *NAM I*, 748 F.3d at 373.  California has not made, and cannot make, that showing.

S.B. 253 and 261 also fail tailoring because they are incongruously burdensome.  S.B. 253's requirement to report Scope 3 emissions alone will cost some companies more than $1 million per year, *see, e.g.*, UF 29; *see also* UF 62, which is so burdensome that the SEC refused to adopt a similar requirement, *see* 89 Fed. Reg. at 21,736.  And given the fundamentally speculative nature of emissions reporting and climate risks, the laws, which require companies to go far beyond current practices, *see, e.g.*, UF 63-65, do nothing to better inform consumers or investors.  The laws also reach far beyond

California's borders, burdening speech and threatening small businesses even when they have no direct business in California but merely deal with other companies that do, including thousands of family-farm members of AFBF and WGA.   UF 66-85. Estimating emissions for these entities is unjustifiably burdensome.

**b.**   Both laws also share characteristics that courts have recognized push "public disclosure" laws over the line into unconstitutional compelled speech.

*First*, there is no historical pedigree for disclosures of this type.  *See NIFLA*, 585 U.S. at 767 (explaining that the government may not "impose content-based restrictions on speech without 'persuasive evidence . . . of a long (if heretofore unrecognized) tradition to that effect'"); *AMI*, 760 F.3d at 23 (explaining that determining whether an interest is "substantial" turns on the "historical pedigree" of that interest); *id.* at 31 (Kavanaugh, J., concurring) ("history and tradition are reliable guides" for "what interests qualify as sufficiently substantial to justify the infringement on the speaker's First Amendment autonomy").

*Second*, the laws by design will empower participants in the climate debate to use companies' disclosures about emissions, and about their plans to address them, as a basis to criticize the companies or to call for increased regulation or other concerted action, whether by regulators or by the companies themselves.  *E.g.*, UF 1-5, 7, 9, 11, 13. Similar concerns underlaid the invalidation of the conflict mineral disclosure on First Amendment grounds, where the D.C. Circuit perceived that SEC disclosures would be used to "stigmatize" companies and attempt to "shape [their] behavior."  *NAM II*, 800 F.3d at 530.  By compelling companies to speak on California's terms, the government-mandated speech would likewise force companies into politically charged discussions about how they address certain climate-related risks, thereby "skew[ing] [the] public debate." *Id.*  These effects "make[ ] the requirement[s] more constitutionally offensive." *Id.*

*Third*, vagueness concerns make the laws even more problematic.  Vague laws "allow arbitrary and discriminatory enforcement," *O'Brien v. Welty*, 818 F.3d 920, 930

13

(9th Cir. 2016), and thus may have a significant chilling effect on speech.  The definition of "climate-related financial risk," in particular, is so broad and vague—any "material risk of harm to immediate and long-term financial outcomes due to physical and transition risks, including, but not limited to, risks to corporate operations, provision of goods and services, supply chains, employee health and safety, capital and financial investments, institutional investments, financial standing of loan recipients and borrowers, shareholder value, consumer demand, and financial markets and economic health," S.B. 261 § 2(a)(2)—that California could almost certainly find something to fault in the disclosure (or lack of disclosure) of *any* company the State disfavors.  This creates a substantial risk that, among other things, companies whose climate-related practices do not conform to California's policy preferences will be subject to "arbitrary and discriminatory enforcement."  *Hill v. Colorado*, 530 U.S. 703, 732 (2000); *see also Canyon Ferry Road Baptist Church of East Helena, Inc. v. Unsworth*, 556 F.3d 1021, 1029 (9th Cir. 2019) (striking down "reporting requirements" that were "triggered by *any* in-kind expenditure").

**B.    Less Stringent First Amendment Standards Have No Application and Cannot Save the Laws Anyway.**

To avoid strict scrutiny, the State must carry "the burden of proving" that the expression compelled "falls outside of the category of [fully] protected speech."  *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2130 (2022); *accord Small Bus. Fin. Ass'n v. Hewlett*, 2023 WL 3551061, at *3 (C.D. Cal. Mar. 30, 2023).  The State cannot make that showing and even if it could, there is no genuine dispute that S.B. 253 and 261 fail intermediate scrutiny anyway.

**1.    S.B. 253 and 261 Do Not Fall into Either Exception to Strict Scrutiny.**

**a.**    To start, the general test for commercial speech set forth in *Central Hudson* does not apply.  "Under *Central Hudson*, the government may restrict or prohibit commercial speech that is neither misleading nor connected to unlawful activity, as long as the governmental interest in regulating the speech is substantial" and the regulation

"directly advance[s] the governmental interest asserted" without "be[ing] more extensive than is necessary to serve that interest." *CTIA*, 928 F.3d at 842 (citing *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980)). But as the Ninth Circuit has explained, "*Central Hudson*'s intermediate scrutiny test does not apply to *compelled*, as distinct from restricted or prohibited, commercial speech." *Id.* (emphasis added) (citing *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 631 (1985)). Because S.B. 253 and 261 compel speech, rather than restrict or prohibit it, *Central Hudson* is inapplicable.

S.B. 253 and 261 also do not regulate *commercial* speech. "Commercial speech is 'usually defined as speech that does no more than propose a commercial transaction.'" *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1115 (9th Cir. 2021) (quoting *United States v. United Foods, Inc.*, 533 U.S. 405, 409 (2001)); *see also Central Hudson*, 447 U.S. at 562 ("[O]ur decisions have recognized 'the commonsense distinction between speech proposing a commercial transaction . . . and other varieties of speech.""). But the speech compelled by S.B. 253 and 261 does not concern or relate to a commercial transaction. In fact, unlike every example of commercial speech of which Plaintiffs are aware, the speech here is not about any product or service a company offers at all. *Cf., e.g.*, *Central Hudson*, 447 U.S. at 561; *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983); *see also NIFLA*, 585 U.S. at 768 (explaining that a rule applicable to commercial speech concerns "the terms under which . . . services will be available"). Like other non-commercial speech, it does "not discuss the pricing, availability, or quality of any . . . product." *Townsend Farms Inc. v. Göknur Gida Maddeleri Enerji Imalat Ithalat Ihracat Ticaret Ve Sanayi A.S.*, 2016 WL 10570246, at *3 (C.D. Cal. Nov. 21, 2016). Instead, the compelled speech here addresses a company's greenhouse-gas emissions and climate-related financial risks *regardless* of whether those emissions or risks relate to a good or service provided in California. And while the disclosures are limited to businesses, not all speech that a business engages in constitutes commercial

speech.  *See, e.g.*, *NIFLA*, 585 U.S. at 771; *Citizens United*, 558 U.S. at 340; *Townsend Farms*, 2016 WL 10570246, at *3.

**b.**     For similar reasons, the limited exception to strict scrutiny recognized in *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626 (1985), does not apply, either.  In *Zauderer*, the Supreme Court held that the government could compel the disclosure of certain "information" where "the disclosure requirement governed only 'commercial advertising' and required the disclosure of 'purely factual and uncontroversial information.'" *NIFLA*, 585 U.S. at 768 (quoting *Zauderer*, 471 U.S. at 651); *see Am. Beverage*, 916 F.3d at 756 ("*Zauderer* provides the appropriate framework to analyze a First Amendment claim involving compelled commercial speech," and calls for an inquiry of whether the compelled speech is "purely factual" and "noncontroversial").  The speech at issue here, however, fails both of *Zauderer*'s prerequisites:  It has no nexus to commercial advertising, nor is it purely factual and uncontroversial.

The lack of a nexus to commercial advertising is by itself sufficient to distinguish *Zauderer*, as "the Supreme Court has refused to apply *Zauderer* when the case before it did not involve voluntary commercial *advertising*." *NAM II*, 800 F.3d at 523 (emphasis added) (collecting cases).  In *Hurley*, for example, the Court treated *Zauderer* as a decision that "at times" permits the government to "prescribe what shall be orthodox in commercial advertising."  515 U.S. at 573.  But "*outside* that context," the Court stressed, "the speaker has the right to tailor [its] speech." *Id.* (emphasis added); *see also NIFLA*, 585 U.S. at 769 (declining application of *Zauderer* to a California compelled disclosure requirement that "in no way relate[d] to the services" provided); *Am. Beverage*, 916 F.3d at 755 ("*Zauderer* provides the proper analytical framework for considering required warnings on commercial products.").  Here, the disclosure requirements have no connection to commercial advertising—or even, as discussed, to commercial speech more generally.  The compelled disclosures apply to any company of a certain size that "does business in California," *e.g.*, S.B. 253 § 2(b)(2), whether that

company advertises goods or services in the State or not.  In these circumstances, the State cannot reasonably argue that the legislation applies "[in]side [the] context" of "commercial advertising." *Hurley*, 515 U.S. at 573.

Even if the legislation were somehow limited to "commercial advertising," these government-mandated disclosures would be unconstitutional because they are not "purely factual and uncontroversial." *NIFLA*, 585 U.S. at 768-69.  *Zauderer* applies only to mundane factual matters not subject to reasonable dispute, such as "country-of-origin labels" on imports, *AMI*, 760 F.3d at 20, or "whether a particular chemical is within any given product," *Entm't Software Ass'n v. Blagojevich*, 469 F.3d 641, 652 (7th Cir. 2006).  The disclosure requirements here are much different.  A discussion of a company's "climate-related financial risk[s]," S.B. 261 § 2(b)(1)(A)(i), is not the reporting of a rote, "pure" fact; it represents a company's compelled assessment of the "risk of harm to immediate and long-term financial outcomes" from a variety of events whose connection to climate change, if any, is subject to reasonable debate, *id.* § 2(a)(2).  This exercise "inherently involve[s]" the company's subjective "judgment" about unverifiable "future-oriented" events, Hamburger Decl. Ex. 20 at 53; *see* UF 47, including future policy responses ("transition risks") and effects on global "financial markets," S.B. 261 § 2(a)(2), and requires the weighing and balancing of numerous "factors that may be indicative of potential financial implications for climate-related risks and opportunities," Hamburger Decl. Ex. 20 at 35; *see id.* (there is "high degree of uncertainty around the timing and magnitude of climate-related risks"); UF 46. "[U]ndertak[ing] [such] contextual analyses," and "weighing and balancing many factors," is "anything but the mere disclosure of factual information." *Book People, Inc. v. Wong*, 91 F.4th 318, 340 (5th Cir. 2024).

Even emissions disclosures are also more conjecture than fact, particularly with respect to Scope 3 emissions.  Because the "gaps in emissions measurement methodologies . . . make reliable and accurate [emissions] estimates difficult," Hamburger Decl. Ex. 20 at 36; *see* UF 36, and require reporting entities to make many

different judgment calls, with competing "advantages and disadvantages," *e.g.*, UF 34, the resulting calculation is anything but "purely factual," *NIFLA*, 585 U.S. at 768. Governor Newsom himself has recognized that the laws may "result in inconsistent reporting across businesses." UF 22.

The compelled disclosures here will be misleading, which is the opposite of purely "factual." *Cal. Chamber of Commerce v. Council for Educ. & Research on Toxics*, 29 F.4th 468, 479 n.12 (9th Cir. 2022). S.B. 253 requires companies to report "*their* greenhouse gas (GHG) emissions" (or "*their* contributions to global GHG emissions"), § 1(e), (f) (emphases added); UF 24, but the law actually requires companies to claim as "their" own the emissions of *others*, including the emissions of "electricity" providers (Scope 2) and other "upstream and downstream" suppliers and customers who "the reporting entity does not own or directly control" (Scope 3), § 2(b)(4), (b)(5). It is not accurate—and certainly not "uncontroversial"—to saddle companies with "responsibility" (S.B. 253 § 1(f)) for emissions they did not make. And by forcing companies to speak "in conformance with the Greenhouse Gas Protocol standards and guidance," S.B. 253 § 2(c)(1)(A)(ii), the law further misleads by requiring them to report emissions numbers that do not factor in "avoided emissions or [greenhouse-gas] reductions from actions taken to compensate for or offset emissions," UF 31; *see also* UF 59. The State has no legitimate interest in misleadingly slanting the debate on this contested policy issue. *See Cal. Chamber*, 29 F.4th at 479; *Video Software Dealers Ass'n v. Schwarzenegger*, 556 F.3d 950, 967 (9th Cir. 2009), *aff'd sub nom. Brown*, 564 U.S. 786.

In all events, climate change is undisputedly a "'[ ]controversial' topic," *NIFLA*, 585 U.S. at 769—independently taking the compelled disclosures here out of *Zauderer*'s reach. *See Janus*, 585 U.S. at 913 ("climate change" is a "controversial subject[ ]"); *Wheat Growers*, 85 F.4th at 1278 (refusing to apply *Zauderer* when assessing "a compelled statement of a hotly disputed scientific finding"). Activist groups will use information from the disclosures to (in the words of one climate-change activist)

"embarrass" companies and try to "hold them to account." UF 21; *accord* UF 3-4. The entire purpose of the laws is to peg companies with responsibility for climate change, to assign blame for "increas[ing] the state's climate risk," S.B. 253 § 1(g), and to in effect "compel[ ]" them to "confess blood on [their] hands," an assignment of "moral responsibility" with which many "may disagree." *NAM II*, 800 F.3d at 530.

Climate-related financial disclosures are particularly "controversial." Whether a particular "wildfire[ ]," "sea level rise," "extreme weather event[ ]," or "extreme drought[ ]," S.B. 261 § 1(a), for example, has anything to do with climate change, or to what extent, is a matter of significant debate and controversy. "Given [the] robust disagreement by reputable scientific sources" on the degree to which climate change affects these events, the compelled disclosures on these issues are "controversial." *Cal. Chamber*, 29 F.4th at 478. The *Zauderer* exception to standard First Amendment scrutiny does not apply.

### 2. The Laws Fail Any Degree of First Amendment Scrutiny.

The laws would fail under *Central Hudson* or *Zauderer* even if those cases applied. As noted, *Central Hudson* "applies intermediate scrutiny, which requires the government to 'directly advance' a 'substantial' governmental interest.'" *Wheat Growers*, 85 F.4th at 1275. "To satisfy its burden, California must provide evidence establishing that the harms it recites are real and that its speech will *significantly* alleviate those harms." *Junior Sports Magazines*, 80 F.4th at 1117. And the "[r]estrictions must be narrowly drawn." *In re R.M.J.*, 455 U.S. 191, 203 (1982).

The Ninth Circuit has interpreted *Zauderer* to apply a standard similar to *Central Hudson*: "*Zauderer* requires that the compelled disclosure further some substantial— that is, more than trivial—governmental interest." *CTIA*, 928 F.3d at 844. "[N]othing in *Zauderer* . . . would allow a lesser interest to justify compelled commercial speech" as compared to *Central Hudson*; rather, "the interest at stake must be more than the satisfaction of mere consumer curiosity." *Id.* And even if such an interest is shown, "a

disclosure requirement cannot be unjustified or unduly burdensome." *NIFLA*, 585 U.S. at 776.

S.B. 253 and 261 flunk these standards because the laws are "'unjustified,'" "'unduly burdensome,'" and "'broader than reasonably necessary.'" *NIFLA*, 585 U.S. at 776. As discussed, California has not shown, and cannot show, that "the harm" it seeks "to remedy" (an alleged lack of information) is "more than 'purely hypothetical,'" *id.*, or that the required disclosures "will in fact alleviate [that harm] to a material degree," *Ibanez v. Fla. Dep't of Bus. & Prof'l Reg.*, 512 U.S. 136, 146 (1994). Nor, as explained, has the State "narrowly drawn" either measure. *R.M.J.*, 455 U.S.at 203. The laws are incredibly broad. They apply to any company over a certain revenue threshold that does business in California, regardless of whether that company has investors or whether climate change is likely to have a material impact on any product or service sold within the State. The State has no evidence that the laws will materially curb climate change. And it cannot articulate a legitimate interest in forcing discussion of out-of-state, or even out-of-country, climate-related information merely because a company engages in a single transaction within the State, wholly unconnected to climate-related risks. The speech and financial burdens of the laws, moreover, are substantial, as even the Governor recognizes they will have a negative "financial impact" on covered businesses. UF 41. S.B. 253 and 261 fail any level of First Amendment scrutiny.

## C.   The Court Should Enjoin Application, Implementation, or Enforcement of the Laws.

Because S.B. 253 and 261 violate the First Amendment, the Court should enjoin Defendants from applying, enforcing, or otherwise implementing those laws. "[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Accordingly, Plaintiffs "will suffer irreparable harm if the [laws] take[ ] effect." *Am. Beverage*, 916 F.3d at 758. Further, "[t]he fact that [Plaintiffs] have raised serious First Amendment

questions compels a finding that . . . the balance of hardships tips sharply in [Plaintiffs'] favor." *Id.*

The Ninth Circuit has "consistently recognized the significant public interest in upholding First Amendment principles." *Id.* "Indeed, 'it is *always* in the public interest to prevent the violation of a party's constitutional rights.'" *Id.* (emphasis added). For these reasons, the Court should enjoin implementation, application, or enforcement of S.B. 253 or 261. *See, e.g., Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2389 (2021); *NIFLA*, 585 U.S. at 779; *Brown*, 564 U.S. at 790, 805; *Wheat Growers*, 85 F.4th at 1283; *Am. Beverage*, 916 F.3d at 758.

## V.  CONCLUSION

The Court should grant summary judgment on Count I of Plaintiffs' Amended Complaint, declare that both S.B. 253 and 261 violate the First Amendment to the U.S. Constitution, and enjoin Defendants from implementing, applying, or taking any action whatsoever to enforce the laws.

Gibson, Dunn & Crutcher LLP

21

DATED: May 24, 2024                    Respectfully submitted,

                                       GIBSON, DUNN & CRUTCHER LLP


                                       By:  /s/ Bradley J. Hamburger
                                       Eugene Scalia, SBN 151540
                                       Bradley J. Hamburger, SBN 266916
                                       Katherine Moran Meeks
                                       (*pro hac vice*)
                                       Samuel Eckman, SBN 308923
                                       Brian A. Richman (*pro hac vice*)
                                       Elizabeth Strassner, SBN 342838

                                       *Attorneys for Plaintiffs Chamber of Commerce*
                                       *of the United States of America, California*
                                       *Chamber of Commerce, American Farm Bureau*
                                       *Federation, Los Angeles County Business*
                                       *Federation, Central Valley Business Federation*
                                       *and Western Growers Association*

                                       CHAMBER OF COMMERCE OF THE
                                       UNITED STATES OF AMERICA

                                       Daryl Joseffer (*pro hac vice*)
                                       Tyler S. Badgley (*pro hac vice*)
                                       Kevin Palmer (*pro hac vice*)

                                       *Attorneys for Plaintiff Chamber of Commerce*
                                       *of the United States of America*

1

## CERTIFICATE OF COMPLIANCE

2       The undersigned, counsel of record for Plaintiffs Chamber of Commerce of the

3  United States of America, California Chamber of Commerce, American Farm Bureau

4  Federation, Los Angeles County Business Federation, Central Valley Business

5  Federation and Western Growers Association, certifies that this brief contains 6,991

6  words, which complies with the word limit of L.R. 11-6.1.

7  DATED: May 24, 2024          Respectfully submitted,

8                                GIBSON, DUNN & CRUTCHER LLP

9
                               By:  */s/ Bradley J. Hamburger*
10                              Eugene Scalia, SBN 151540
                               Bradley J. Hamburger, SBN 266916
11                              Katherine Moran Meeks (*pro hac vice*)
                               Samuel Eckman, SBN 308923
12                              Brian A. Richman (*pro hac vice*)
                               Elizabeth Strassner, SBN 342838
13

14                              *Attorneys for Plaintiffs Chamber of Commerce*
                               *of the United States of America, California*
15                              *Chamber of Commerce, American Farm Bureau*
                               *Federation, Los Angeles County Business*
16                              *Federation, Central Valley Business Federation*
                               *and Western Growers Association*
17

18                              CHAMBER OF COMMERCE OF THE
                               UNITED STATES OF AMERICA
19

20                              Daryl Joseffer (*pro hac vice*)
                               Tyler S. Badgley (*pro hac vice*)
21                              Kevin Palmer (*pro hac vice*)

22                              *Attorneys for Plaintiff Chamber of Commerce*
                               *of the United States of America*
23

24

25

26

27

28