ROB BONTA
Attorney General of California
GARY E. TAVETIAN (SBN 117135)
MYUNG J. PARK (SBN 210866)
Supervising Deputy Attorneys General
M. ELAINE MECKENSTOCK (SBN 268861)
CAITLAN MCLOON (SBN 302798)
EMILY HAJARIZADEH (SBN 325246)
DYLAN REDOR (SBN 338136)
Deputy Attorneys General
 300 South Spring Street, Suite 1702
 Los Angeles, CA  90013-1230
 Telephone:  (213) 269-6438
 Fax:  (916) 731-2128
 E-mail:  Caitlan.McLoon@doj.ca.gov
*Attorneys for Defendants Liane M. Randolph,
Steven S. Cliff, and Robert A. Bonta*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, CALIFORNIA CHAMBER OF COMMERCE, AMERICAN FARM BUREAU FEDERATION, LOS ANGELES COUNTY BUSINESS FEDERATION, CENTRAL VALLEY BUSINESS FEDERATION, and WESTERN GROWERS ASSOCIATION,**<br><br>Plaintiffs,<br><br>v.<br><br>**CALIFORNIA AIR RESOURCES BOARD, LIANE M. RANDOLPH, in her official capacity as Chair of the California Air Resources Board, and STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board,**<br><br>Defendants. | 2:24-cv-00801-ODW-PVC<br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Date: September 9, 2024<br>Time: 1:30 p.m.<br>Courtroom: 5D<br>Judge: The Honorable Otis D. Wright, II<br>Trial Date: Not Set<br>Action Filed: 1/30/2024 |

**TABLE OF CONTENTS**

**Page**

ARGUMENT .................................................................................................................. 1

    I.     Plaintiffs' Supremacy Clause and Extraterritoriality Claims Challenging Senate Bill 253 Are Not Ripe ............................................. 1

    II.    Plaintiffs Fail to Allege an Injury-in-Fact Sufficient to Establish Standing to Bring their Supremacy Clause and Extraterritoriality Claims as to SB 261 and Scope 1 and 2 of Senate Bill 253 .................. 3

    III.   Plaintiffs Fail to State a Supremacy Clause Claim ............................... 4

         A.    The Constitution Provides No Basis for This Claim .................. 5

         B.    The Clean Air Act Does Not Preempt These Laws Either ......... 6

         C.    Senate Bills 253 and 261 Do Not Regulate Emissions .............. 6

    IV.   Plaintiffs Fail to State a Dormant Commerce Clause Claim ................ 8

CERTIFICATE OF COMPLIANCE ........................................................................ 12

# TABLE OF AUTHORITIES

Page

**CASES**

*Am. Auto. Mfrs. Ass'n v. Cahill*
  152 F.3d 196 (2d Cir. 1998) ............................................................................... 7

*American Electric Power Company, Inc. v. Connecticut* (*AEP*)
  564 U.S. 410 (2011) ........................................................................................... 5

*Ass'n of Am. Railroads v. Randolph*
  No. 22-3-CV-01154, 2024 WL 664359 (E.D. Cal. Feb. 16, 2024) ..................... 4

*Banco Nacional de Cuba v. Sabbatino*
  376 U.S. 398 (1964) ........................................................................................... 6

*Bohmker v. Oregon*
  903 F.3d 1029 (9th Cir. 2018) ............................................................................ 7

*California Sea Urchin Comm'n v. Bean*
  883 F.3d 1173 (9th Cir. 2018) ............................................................................ 4

*California Trucking Ass'n v. Bonta*
  996 F.3d 644 (9th Cir. 2021) .............................................................................. 3

*City of New York v. Chevron Corp.*
  993 F.3d 81 (2d Cir. 2021) ................................................................................. 7

*Clapper v. Amnesty Int'l USA*
  568 U.S. 398 (2013) ........................................................................................... 4

*Dep't of Revenue of Ky. v. Davis*
  553 U.S. 328 (2008) ........................................................................................... 9

*Energy & Env't Legal Inst. v. Epel*
  793 F.3d 1169 (10th Cir. 2015) .......................................................................... 5

*Exxon Corp. v. Maryland*
  437 U.S. 117 (1978) ........................................................................................... 9

*Gov't Suppliers Consolidating Servs., Inc. v. Bayh*
  975 F.2d 1267 (7th Cir. 1992) ............................................................................ 2

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Illinois v. City of Milwaukee*
    406 U.S. 91 (1972) ............................................................................................ 6

*International Paper Company v. Ouellette*
    479 U.S. 481 (1987) .......................................................................................... 5

*Italian Colors Rest. v. Becerra*
    878 F.3d 1165 (9th Cir. 2018) .......................................................................... 3

*Jensen Fam. Farms, Inc. v. Monterey Bay Unified Air Pollution*
    *Control Dist.*
    644 F.3d 934 (9th Cir. 2011) ..................................................................... 7, 10

*Kurns v. R.R. Friction Prod. Corp.*
    565 U.S. 625 (2012) .......................................................................................... 8

*L.A. Haven Hospice, Inc. v. Sebelius*
    638 F.3d 644 (9th Cir. 2011) ............................................................................ 4

*Los Altos Boots v. Bonta*
    562 F. Supp. 3d 1036 (E.D. Cal. 2021) ............................................................ 2

*Maine v. Taylor*
    477 U.S. 131 (1986) .......................................................................................... 9

*Metro. Taxicab Bd. of Trade v. City of New York*
    633 F. Supp. 2d 83 (S.D.N.Y. 2009) ................................................................ 7

*Nat'l Pork Producers Council v. Ross*
    598 U.S. 356 (2023) ........................................................................................ 10

*Neighborhood Mkt. Ass'n, Inc. v. Cnty. of San Diego*
    529 F. Supp. 3d 1123 (S.D. Cal. 2021) ............................................................ 7

*Puente Arizona v. Arpaio*
    821 F.3d 1098 (9th Cir. 2016) .......................................................................... 2

*Puerto Rico Dep't of Consumer Affs. v. Isla Petroleum Corp.*
    485 U.S. 495 (1988) .......................................................................................... 4

# TABLE OF AUTHORITIES
## (continued)

Page

*Retail Indus. Leaders Ass'n v. Fielder*
   475 F.3d 180 (4th Cir. 2007) ................................................................................ 2

*Rocky Mountain Farmers Union v. Corey*
   730 F.3d 1070 (9th Cir. 2013) ......................................................................... 5, 10

*Rosenblatt v. City of Santa Monica*
   940 F.3d 439 (9th Cir. 2019) ................................................................................ 9

*San Diego Bldg. Trades Council v. Garmon*
   359 U.S. 236 (1959) ............................................................................................. 8

*Union Pac. R. Co. v. California Pub. Utilities Comm'n*
   346 F.3d 851 (9th Cir. 2003) ................................................................................ 2

*United States v. California*
   444 F. Supp. 3d 1181 (E.D. Cal. 2020) ................................................................ 5

*Valeria G. v. Wilson*
   12 F. Supp. 2d 1007 (N.D. Cal. 1998) ................................................................. 1

*VIZIO, Inc. v. Klee*
   886 F.3d 249 (2d Cir. 2018) ........................................................................... 5, 10

*Ward v. United Airlines, Inc.*
   986 F.3d 1234 (9th Cir. 2021) .............................................................................. 9

*Zschernig v. Miller*
   389 U.S. 429 (1968) ............................................................................................. 6

**STATUTES**

California Health and Safety Code
   § 38532(b)(1)(B)(2) ............................................................................................. 1
   § 38532(c)(1) ....................................................................................................... 2
   § 38532(c)(1)(D)(i) .............................................................................................. 1
   § 38532(c)(1)(F)(ii) ............................................................................................. 2
   § 38532(c)(4) ....................................................................................................... 2
   § 38532(f)(2)(A) .................................................................................................. 8
   § 38533(e)(2) ....................................................................................................... 8

# TABLE OF AUTHORITIES
## (continued)

**Page**

**CONSTITUTIONAL PROVISIONS**

First Amendment ........................................................................................................ 3

**OTHER AUTHORITIES**

Senate Bill 253, 2022-2023 Reg. Sess. § 1(c) (2023) ................................................. 9

Senate Bill 261, 2022-2023 Reg. Sess. § 1(j) (2023) ................................................. 9

## ARGUMENT

Plaintiffs argue that Senate Bills 253 and 261 are both preempted by federal law and invalid "under the Constitution's limitations on extraterritorial regulation" because, Plaintiffs assert, those statutes regulate emissions and discriminate against out-of-state commerce in the process. But the laws do neither. Instead, they require the largest companies doing business in California to prepare factual disclosures regarding the sources and volumes of greenhouse gas emissions associated with their business operations and the climate-related financial risks those companies face. Plaintiffs' preemption and extraterritoriality claims have no basis in law. Additionally, Plaintiffs brought suit before these claims are ripe, and failed to plead the facts necessary to establish an injury-in-fact. Accordingly, Plaintiffs' second and third causes of action should be dismissed.[1]

### I. PLAINTIFFS' SUPREMACY CLAUSE AND EXTRATERRITORIALITY CLAIMS CHALLENGING SENATE BILL 253 ARE NOT RIPE

Because CARB has not yet adopted the regulations necessary to implement Senate Bill 253, challenges to that law are not yet ripe. Plaintiffs argue that "nothing CARB has the power to do" will impact resolution of the issues raised in this litigation. Opp. 9:22. To the contrary, "further development by [CARB] may . . . change the nature of the issues presented." *Valeria G. v. Wilson*, 12 F. Supp. 2d 1007, 1026 (N.D. Cal. 1998). For example, the statute does not define the term "does business in California," Cal. Health & Safety Code § 38532(b)(1)(B)(2), and CARB may decide to define it to exclude a company that does no more than sell "a pack of gum" in the State, removing one of Plaintiffs' concerns. Opp. 19:16-18. Through its regulations, CARB must also "minimize[] duplication of effort" in light of other emission reporting regimes. Cal. Health & Safety Code

---

[1] In the interest of the efficient adjudication of this case, Defendants are dropping the portion of their motion that sought to dismiss the Attorney General, in his official capacity, from this suit. In doing so, Defendants do not concede that any of Plaintiffs' arguments regarding sovereign immunity have merit.

§ 38532(c)(1)(D)(i). The ways in which CARB considers compliance with different reporting regimes may bear directly on Plaintiffs' facial challenges, which require Plaintiffs to show that *all* applications of the future regulations are preempted or violate the dormant Commerce Clause. *See* MTD 16 n.7; *Puente Arizona v. Arpaio*, 821 F.3d 1098, 1104 (9th Cir. 2016). Moreover, CARB must clarify reporting procedures in consultation with accounting experts, investors, and reporting entities, Cal. Health & Safety Code § 38532(c)(4), which could resolve alleged issues with inconsistent disclosures and alleviate the financial burdens Plaintiffs allege. *See* Opp. 4:24-27.

Moreover, examination of these laws is premature because Plaintiffs have not pleaded an immediate harm to any of their members' businesses, *cf. Gov't Suppliers Consolidating Servs., Inc. v. Bayh*, 975 F.2d 1267, 1275-76 (7th Cir. 1992) (finding challenge ripe before the adoption of implementing regulations when record demonstrated the statute's "immediate damaging effect on [plaintiffs'] businesses"), nor the need to make an immediate adjustment of internal business practices to comply with the law. *Cf. Retail Indus. Leaders Ass'n v. Fielder*, 475 F.3d 180, 186-88 (4th Cir. 2007) (plaintiff's member company "face[d] the imminent injury" of "alter[ing] its internal accounting procedures and [] spending *now* to comply with the Act"); *see also Los Altos Boots v. Bonta*, 562 F. Supp. 3d 1036, 1042-43 (E.D. Cal. 2021) (statute was *self-effectuating* and the statue *had already begun* to have an impact on business).[2] In fact, Senate Bill 253, on its own, imposes no obligations on Plaintiffs' members, Cal. Health & Safety Code § 38532(c)(1), and cannot be enforced until 2026, a full year after CARB is directed to promulgate its regulations. *Id.* § 38532(c)(1)(F)(ii).

---

[2] Plaintiffs' citation of *Union Pac. R. Co. v. California Pub. Utilities Comm'n*, 346 F.3d 851, 871 (9th Cir. 2003) is further misplaced, as that court found a challenge was ripe where the parties agreed that *any* standard issued would burden the instrumentalities of interstate commerce.

Nor does the Complaint identify any "conflict" between the statute and the ways Plaintiffs' members' currently conduct their operations. *California Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021); Opp. 10. While the future regulations may require some of Plaintiffs' members to take additional actions, the statute itself does not require action now. Moreover, Plaintiffs' members may change their practices, or not even be covered by the laws, by the time the statute is enforceable or requires them to do anything. *See Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1171 (9th Cir. 2018) (looking to whether there "is a credible threat that the challenged provision will be invoked against [plaintiffs]") (cleaned up).

At minimum, this Court should decline to exercise jurisdiction on prudential grounds. CARB's regulations may clarify which companies are covered and the nature of the required disclosures. And Plaintiffs point to no hardship to their members, apart from conclusory assertions, if the Court were to withhold consideration. The only harm Plaintiffs identify is a hypothetical harm *to the Court* if "forced to rule on an emergency basis," Opp. 10, which is not the relevant inquiry. In any event, that eventuality is unlikely to arise given that covered entities do not have compliance obligations until 2026. There will be ample time for litigation before then, and that litigation can proceed on a more concrete set of facts and issues once regulations are adopted.

## II. PLAINTIFFS FAIL TO ALLEGE AN INJURY-IN-FACT SUFFICIENT TO ESTABLISH STANDING TO BRING THEIR SUPREMACY CLAUSE AND EXTRATERRITORIALITY CLAIMS AS TO SB 261 AND SCOPE 1 AND 2 OF SENATE BILL 253[3]

Plaintiffs do not meaningfully dispute that their injury-in-fact allegations are both sparse and conclusory. Plaintiffs identify only two member companies by

---

[3] Defendants do not "concede" that Plaintiffs have standing regarding either their First Amendment claim or the Scope 3 emissions requirement. Opp. at 5. Rather, Defendants acknowledge only that Plaintiffs have pleaded facts that, if taken as true, could be seen to establish standing for these components of their complaint.

name that are purportedly subject to the laws, and they allege facts sufficient only to establish that these two companies would be regulated—not that they will or are likely to suffer any injury that could be characterized as "concrete, particularized, and actual or imminent." FAC ¶ 20; *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

Plaintiffs attempt to excuse these pleading deficiencies by arguing that they can be "presumed to have constitutional standing" because their members are "the direct object of regulatory action challenged as unlawful." Opp. 6 (quoting *L.A. Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 655 (9th Cir. 2011)). But "*L.A. Haven* . . . do[es] not create an exception to the requirement that a party for standing must show a concrete and particularized injury." *California Sea Urchin Comm'n v. Bean*, 883 F.3d 1173, 1181 (9th Cir. 2018), as amended (Apr. 18, 2018). Plaintiffs must still allege facts that could establish their named members face "concrete and particular burdensome requirements." *Id.* Here, where many companies already disclose their climate-change risks and scope 1 and 2 emissions, Plaintiffs must allege facts that establish "*additional* costs" or other injuries the identified members will bear. *Ass'n of Am. Railroads v. Randolph*, No. 22-3-CV-01154, 2024 WL 664359, at *7 (E.D. Cal. Feb. 16, 2024). But the Complaint contains no allegations about disclosures the two identified companies already make; nor does it even identify a member company with concrete plans to comply. Consequently, this Court cannot presume that these members face any additional injury-in-fact—financial, stigmatic, or otherwise.

### III. PLAINTIFFS FAIL TO STATE A SUPREMACY CLAUSE CLAIM

Plaintiffs' second claim supposedly sounds in preemption. FAC 26:21. There is, however, "no federal pre-emption *in vacuo,* without a constitutional text or a federal statute to assert it." *Puerto Rico Dep't of Consumer Affs. v. Isla Petroleum Corp.*, 485 U.S. 495, 503 (1988); *see also* MTD 14:17-15:6. Plaintiffs do not identify any constitutional or statutory provision that preempts these state

disclosure requirements. Plaintiffs' claim also relies on a false premise—that these disclosure requirements regulate emissions.

### A. The Constitution Provides No Basis for This Claim

Plaintiffs first attempt to ground their preemption claim in "federalism and comity principles embodied in the Constitution." Opp. 12:22-23. But they fail to identify any constitutional principle (much less text) that precludes States from requiring that corporations doing business in the State disclose information about their national or global operations. In fact, States can and do require such information. *See VIZIO, Inc. v. Klee*, 886 F.3d 249, 253 (2d Cir. 2018) (affirming State's use of *national* market-share to determine manufacturers' mandatory contributions to costs of state recycling program).

Plaintiffs appear to believe that the Constitution precludes States from concerning themselves with greenhouse gas emissions because "[c]limate change is by its very nature global." Opp. 12:24. But courts have consistently upheld states' authority to *regulate* greenhouse gas emissions. *E.g., Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1077 (9th Cir. 2013) (rejecting constitutional challenges to "one such regulatory scheme"); *Energy & Env't Legal Inst. v. Epel*, 793 F.3d 1169 (10th Cir. 2015) (Gorsuch, J.) (same); *United States v. California*, 444 F. Supp. 3d 1181 (E.D. Cal. 2020) (same). Plaintiffs neither acknowledge this nor explain why States cannot require the simple *disclosure* of greenhouse gas emissions. Plaintiffs lean on *American Electric Power Company, Inc. v. Connecticut* (*AEP*), 564 U.S. 410, 415 (2011), but that case held only that the Clean Air Act displaced federal common law. *Id.* at 415, 425. It said nothing about state statutes or regulations, generally, or disclosure requirements, specifically.[4]

---

[4] Plaintiffs' water pollution cases fare no better. While *International Paper Company v. Ouellette*, 479 U.S. 481, 483, 497 (1987), provides that Vermont nuisance law may not be used to require a New York facility to install particular equipment to reduce its polluting discharges, it says nothing about a State's authority *to request information* from companies that choose to do business in the State. Similarly, the "control[]" of pollution in "interstate or navigable waters,"

5

1    Plaintiffs' feint at foreign affairs preemption is equally unavailing. Opp. 13:8-
2    20. None of Plaintiffs' cases involve informational disclosures of the kind at issue
3    here. *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 424-25 (1964) (validity
4    of foreign nation's expropriation decree); *Zschernig v. Miller*, 389 U.S. 429, 433-34
5    (1968) (ability of State probate courts to inquire into the credibility of "consuls,
6    ambassadors, and other representatives of foreign nations"). While Senate Bills
7    253 and 261 apply to some multi-national *companies* doing business in California,
8    neither law involves "this country's relations with other *nations*." *Sabbatino*, 376
9    U.S. at 408 (emphasis added). And Plaintiffs point to no factual allegations that
10   could support a contrary conclusion. Opp. 13:8-20.

**B.    The Clean Air Act Does Not Preempt These Laws Either**

With respect to their statutory claim, Plaintiffs tellingly identify no text of the Clean Air Act that preempts state disclosure requirements or, indeed, *any* state regulation at all. Plaintiffs purport to rely on "the structure of the Clean Air Act." Opp. 17:1. But Plaintiffs' description of several ways in which EPA regulates greenhouse gas emissions under the Act, *id.* at 15:14-16:12, does nothing to establish that "[t]his comprehensive statutory system precludes supplemental state regulation" of any kind, much less of the kind at issue here, *id.* at 16:13-14. To the extent Plaintiffs mean to suggest that Congress intended EPA alone to regulate greenhouse gas emissions, *id.* at 17:16-18, that is both incorrect, *supra* at III.A, and irrelevant. Likewise, Plaintiffs' narrower proposition—that the Act "does not license California to regulate emissions around the world," *id.* at 17:21-22 (cleaned up)—is irrelevant because neither California statute regulates emissions anywhere.

**C.    Senate Bills 253 and 261 Do Not Regulate Emissions**

Ultimately both of Plaintiffs' preemption theories fail because they rest on the erroneous premise that by requiring large companies to disclose their emissions,

---

*Illinois v. City of Milwaukee*, 406 U.S. 91, 102 (1972), is not related to the requirement to make informational disclosures.

California is *regulating* those emissions.[5] *E.g.,* Opp. 12:26-27, 18:10. Plaintiffs do not, and cannot, identify any authority that remotely supports this premise. To the contrary, the Ninth Circuit has rejected the argument that an air pollution agency's requirement that owners of certain diesel engines "provide information" about those engines equated to regulating the emissions of those engines. *Jensen Fam. Farms, Inc. v. Monterey Bay Unified Air Pollution Control Dist.*, 644 F.3d 934, 939 (9th Cir. 2011). Other courts have similarly recognized that emission regulations contain some form of "command having a direct effect on the level of emissions." *Metro. Taxicab Bd. of Trade v. City of New York*, 633 F. Supp. 2d 83, 104 (S.D.N.Y. 2009) (quoting *Am. Auto. Mfrs. Ass'n v. Cahill*, 152 F.3d 196, 200 (2d Cir. 1998)).[6]

Plaintiffs concede that these statutes "do not directly require reductions in greenhouse-gas emissions." FAC ¶ 88. So, they now argue that California may not impose such requirements *indirectly*. Opp. 13:21-27.[7] But Plaintiffs fail to identify factual allegations that could support a conclusion that either statute does so. Plaintiffs argue that imposing liability for damages caused by emissions constitutes regulation, but there is no need to engage that argument because neither of these statutes imposes any liability for emissions-related harms. *Cf. City of New York v.*

---

[5] Notably, Plaintiffs cannot maintain a Supremacy Clause claim against Senate Bill 261 because they do not even attempt to connect the mandatory risk disclosures to the control of emissions that constitutes the entire basis of their preemption claim.

[6] Still more courts have likewise rejected arguments that a regulation requiring or prohibiting one action (e.g., a disclosure) is a *de facto* regulation of other conduct (e.g., emissions). *E.g., Neighborhood Mkt. Ass'n, Inc. v. Cnty. of San Diego*, 529 F. Supp. 3d 1123, 1133-34 (S.D. Cal. 2021) (noting holding that "sales ban on flavored tobacco products is not a *de facto* manufacturing regulation"); *Bohmker v. Oregon*, 903 F.3d 1029, 1044 (9th Cir. 2018) (rejecting characterization of regulation that did not prohibit or require certain uses of land as *de facto* land-use regulation).

[7] Plaintiffs imply *Defendants* suggested indirect regulation might be present. Opp. 13:21-22. But they base that on Defendants' quotation of *Plaintiffs'* Complaint; Defendants have never suggested that Senate Bills 253 and 261 regulate emissions. MTD 13:3-14:4.

*Chevron Corp.*, 993 F.3d 81, 93 (2d Cir. 2021); *Kurns v. R.R. Friction Prod. Corp.*, 565 U.S. 625, 637 (2012) (quoting *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 247 (1959)).[8]  A company that accurately reported more emissions and climate costs than any of its peers would have complied with its obligations under the statutes; the statutes impose no follow-on duty to reduce.  The only penalties regulated entities may face under the bills are for failure to disclose.  Cal. Health & Safety Code §§ 38532(f)(2)(A), 38533(e)(2).

Plaintiffs argue that third-parties—investors, consumers, and/or others—may make use of the disclosed information to pressure companies to reduce their emissions.  Opp. 14:1-23.  But Plaintiffs cite no authority for the proposition that whether a State is regulating particular conduct turns on the actions of private third-parties that the State does not control.  The proper inquiry is whether these particular laws actually mandate emission limitations or controls.  The plain text of both statutes clearly does no such thing.  Senate Bills 253 and 261 require the disclosure of information but do not require regulated entities to alter their emission levels *at all*.

### IV. PLAINTIFFS FAIL TO STATE A DORMANT COMMERCE CLAUSE CLAIM

Plaintiffs purport to bring their third claim under "the Constitution's limitations on extraterritorial regulation, including the Dormant Commerce Clause."  FAC ¶ 112; *see also id.* at 27:19-21.  However, as Defendants showed in their motion, there is no such freestanding claim under the dormant Commerce Clause.  MTD 16:19-17:23.  Plaintiffs do not dispute the point.  Instead, Plaintiffs now assert a different claim: one of "purposeful discrimination against out-of-state economic interests."  Opp. 19:1-2 (cleaned up).  But Plaintiffs cannot amend their

---

[8] Plaintiffs' reliance on *Kurns* for an undeveloped point about extraterritorial regulation is odd, Opp. 13:16-18, because the case does not address the issue; here Plaintiffs pleaded a separate claim for "extraterritorial regulation," *see* MTD 15:27-28.

Complaint through their opposition brief, and in any event, have failed to state any discrimination claim. MTD 18:3-19:25.[9] This claim should be dismissed with prejudice.[10]

Plaintiffs have not alleged, and cannot allege, facts sufficient to establish the "fundamental element" of a dormant Commerce Clause discrimination claim—that the state statutes apply "differential treatment favoring local entities over substantially similar out-of-state interests." *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 342-43 (2008). Plaintiffs have not identified any in-state entities that are favored over substantially similar out-of-state competitors. *Rosenblatt v. City of Santa Monica*, 940 F.3d 439, 451 (9th Cir. 2019); *Ward v. United Airlines, Inc.*, 986 F.3d 1234, 1239 (9th Cir. 2021). Nor can they do so. These statutes require the same disclosures of all similarly situated businesses. These are simply not "regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Id.* at 337-38 (cleaned up).

Plaintiffs argue that the laws will deprive out-of-state interests of "the competitive advantages they would possess" if California regulated only in-state businesses. Opp. 19:10-13 (cleaned up). But the Constitution does not require States to grant an *affirmative advantage* to out-of-state companies who choose to do business in the State by *excusing* them from regulations that apply generally to anyone else choosing to do business in the State. *E.g., Exxon Corp. v. Maryland*, 437 U.S. 117, 125 (1978) (affirming state law that regulated *only* out-of-state companies). Plaintiffs also point to no factual allegations in the Complaint that

---

[9] Plaintiffs cite to a conclusory allegation that the State has not identified the benefits of these disclosures. Opp. 19:23. That allegation cannot be credited. *See* S.B. 253, 2022-2023 Reg. Sess. § 1(c) (2023); *see also*, S.B. 261, 2022-2023 Reg. Sess. § 1(j) (2023). In any event, Plaintiffs have not met their threshold burdens to demand a showing of the statute's benefits. *Maine v. Taylor*, 477 U.S. 131, 138 (1986) (requiring benefit showing "since Maine's import ban discriminates on its face against interstate trade"); MTD 20:2-10.

[10] Plaintiffs have no response to Defendants' showing that, at a minimum, any facial challenge must be dismissed with prejudice. *See* MTD 16:24-28.

9

could establish a cognizable competitive advantage—like "the opportunity to charge lower prices"—that is stripped away from out-of-state companies by either California statute. *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 372 (2023); *see also* Opp. 19:27-20:4.

Plaintiffs' hypothetical of an out-of-state company that sells a single pack of gum in California likewise cannot save their claim. Opp. 19:15-22. As an initial matter, the implausibility that a company meeting the threshold revenue requirements ($500 million (Senate Bill 261) or $1 billion (Senate Bill 253)) would seek to sell a single pack of gum, and no more, in California—and the speculation that CARB's eventual regulations would view such sales as "doing business" in California for purposes of the law—simply underscore that plaintiffs' challenge is not ripe. *See supra* at I. In any event, courts have consistently rejected dormant Commerce Clause challenges to state laws that "do[] nothing to *control* interstate commerce, but rather merely *consider[]* out-of-state activity." *VIZIO, Inc.*, 886 F.3d at 256; *see also e.g.*, *Rocky Mountain Farmers Union*, 730 F.3d at 1081 (upholding California regulation "designed … to account for emissions associated with all aspects of the production, refining, and transportation of a fuel" regardless of location). Nothing in either California statute "compel[s]" a company to control its emissions "outside of [California] on the state's proscribed terms," *VIZIO*, 886

///
///
///
///
///
///
///
///

1  F.3d at 256, or, indeed, on any terms at all. The statutes merely require qualifying
2  companies to disclose information. Plaintiffs provide no authority for the
3  proposition that such requirements violate the dormant Commerce Clause.

Dated: June 7, 2024

Respectfully submitted,

ROB BONTA
Attorney General of California
GARY E. TAVETIAN
MYUNG J. PARK
Supervising Deputy Attorneys General

/s/ Caitlan McLoon

CAITLAN MCLOON
Deputy Attorney General
*Attorneys for Defendants Liane M. Randolph, Steven S. Cliff, and Robert A. Bonta*

SA2024300503
66845998.docx

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants Liane M. Randolph, Steven S. Cliff, and Robert A. Bonta, certifies that this brief contains 3,296 words, which complies with the word limit set by the court's standing order.

Dated: June 7, 2024

Respectfully submitted,

ROB BONTA
Attorney General of California

*/s/ Caitlan McLoon*

CAITLAN MCLOON
Deputy Attorney General
*Attorneys for Defendants Liane M. Randolph, Steven S. Cliff, and Robert A. Bonta*

# CERTIFICATE OF SERVICE

Case Name: **Chamber of Commerce of the United States of America, et al. v. Liane M. Randolph, et al.**

Case No.: **2:24-cv-00801-ODW-PVC**

I hereby certify that on June 7, 2024, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on June 7, 2024, at Los Angeles, California.

| Beatriz Davalos | /s/ Beatriz Davalos |
|---|---|
| Declarant | Signature |

SA2024300503
66591334.docx