ROB BONTA
Attorney General of California
TRACY WINSOR (SBN 186164)
Senior Assistant Attorney General
GARY E. TAVETIAN (SBN 117135)
MYUNG J. PARK (SBN 210866)
Supervising Deputy Attorneys General
M. ELAINE MECKENSTOCK (SBN 268861)
CAITLAN MCLOON (SBN 302798)
EMILY HAJARIZADEH (SBN 325246)
DYLAN REDOR (SBN 338136)
KATHERINE GAUMOND (SBN 349453)
Deputy Attorneys General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013-1230
Telephone: (213) 269-6438
Fax: (916) 731-2128
E-mail: Caitlan.McLoon@doj.ca.gov
*Attorneys for Defendants Liane M. Randolph, Steven S. Cliff, and Robert A. Bonta*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

**CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, CALIFORNIA CHAMBER OF COMMERCE, AMERICAN FARM BUREAU FEDERATION, LOS ANGELES COUNTY BUSINESS FEDERATION, CENTRAL VALLEY BUSINESS FEDERATION, and WESTERN GROWERS ASSOCIATION,**

Plaintiffs,

**v.**

**LIANE M. RANDOLPH, in her official capacity as Chair of the California Air Resources Board, STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board, and ROBERT A. BONTA, in his official capacity as Attorney General of California,**

Defendants.

2:24-cv-00801-FMO-PVCx

**DEFENDANTS' MOTION TO DENY OR DEFER PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON CLAIM I UNDER RULE 56(d)**

| | |
|---|---|
| Date: | September 9, 2024 |
| Time: | 1:30 PM |
| Courtroom: | 5D |
| Judge: | The Honorable Otis D. Wright, II |
| Trial Date: | Not Set |
| Action Filed: | 1/30/2024 |

## TABLE OF CONTENTS


| | Page |
|---|---|
| Introduction | 1 |
| Procedural History | 3 |
| Legal Standard | 3 |
| Argument | 4 |
| I. Defendants Require Discovery Into The Alleged Financial and Administrative Burden of Compliance with Senate Bills 253 and 261 | 4 |
| II. Defendants Require Discovery Into The Existence of a Relevant Climate Change Controversy | 8 |
| III. Defendants Require Discovery Into Plaintiffs' Claim That Senate Bills 253 and 261 Apply to Companies Engaging in Only a Single Transaction in the State | 10 |
| Conclusion | 11 |
| Certificate of Compliance | 13 |

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Am. Hosp. Ass'n v. Azar*
983 F.3d 528 (D.C. Cir. 2020) .......... 4

*Americans for Prosperity Foundation v. Bonta*
594 U.S. 595 (2021) .......... 5

*Ameron Int'l Corp. v. Cont'l Nat'l Am. Grp.*
No. CV 11-06879 ODW .......... 4

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986) .......... 3

*Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reserv.*
323 F.3d 767 (9th Cir. 2003) .......... 1, 4

*CTIA – The Wireless Assoc. v. Berkeley*
928 F.3d 832 (2019) .......... 8

*Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*
525 F.3d 822 (9th Cir. 2008) .......... 4

*Goldberg v. Kelly*
397 U.S. 254 (1970) .......... 7

*Hollyway Cleaners & Laundry Co. v. Cent. Nat'l Ins. Co. of Omaha*
219 F. Supp. 3d 996 (C.D. Cal. 2016) .......... 4

*Metabolife Int'l, Inc. v. Wornick*
264 F.3d 832 (9th Cir. 2001) .......... 3

*Moody v. NetChoice*
144 S. Ct. 2383 (2024) .......... 2, 5, 11

*Smith v. L.A. Unified Sch. Dist.*
No. CV 16-2358 PSG, 2017 WL 10562961 (C.D. Cal. June 9, 2017) .......... 7, 9

## TABLE OF AUTHORITIES
## (continued)

**Page**

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*
471 U.S. 626 (1985) .......... 4, 5

**STATUTES**

Health and Safety Code
§ 38532(c)(1)(A)(ii) .......... 7

**CONSTITUTIONAL PROVISIONS**

First Amendment .......... 1, 2, 3

**COURT RULES**

Federal Rules of Civil Procedure
Rule 26(f) .......... 1, 2
Rule 56(d) .......... 1, 3, 4, 11
Rule 56(d)(1), (2) .......... 3

**OTHER AUTHORITIES**

2011 WL 5873024, at *2 (C.D. Cal. Nov. 23, 2011) .......... 4

Senate Bill
253 .......... 8
261 .......... 8, 9

## INTRODUCTION

As set forth in Defendants Liane Randolph et al.'s (Defendants) concurrently filed opposition to Plaintiffs Chamber of Commerce et al.'s (Plaintiffs) Motion for Summary Judgment on Claim I (ECF No. 48), summary judgment must be denied. Senate Bills 253 and 261 seek to increase transparency and improve access to factual information about the greenhouse gas (GHG) emissions data and climate-related financial risks of the largest companies doing business in California. This information protects consumers and investors from fraudulent and misleading environmental claims and omissions, promotes efficiency in the markets, and enables California residents, consumers, companies, and investors to make decisions informed by greater understanding of the sources and volumes of GHG emissions produced by major companies doing business in the State and the climate-related financial risks those companies face. For all the reasons set out in Defendants' opposition, these laws survive First Amendment review under any level of scrutiny.

However, if this Court is not inclined to deny Plaintiffs' motion outright, it should deny or defer the motion for summary judgment to allow time for Defendants to take certain discovery, and thereby "present facts essential to justify [their] opposition." Fed. R. of Civ. P. 56(d). The Ninth Circuit has made clear that where discovery has yet to commence, requests made under Rule 56(d) are to be granted as a matter of course. *See Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reserv.*, 323 F.3d 767, 773 (9th Cir. 2003) ("before a party has had any realistic opportunity to pursue discovery relating to its theory of the case," Rule 56(d) requests should be granted "fairly freely").

The parties have not yet conferred as required by Federal Rule of Civil Procedure 26(f), and are thus not yet permitted to "seek discovery from any source." Fed. R. Civ. P. 26(d). Prior to Plaintiffs filing their summary judgment motion, the parties reasonably deferred the Rule 16 Scheduling Conference, and

thereby the Rule 26(f) Conference, in light of (1) the potential impact of the pending motion to dismiss and expected summary judgment motion on the scope of the case, and (2) the parties' beliefs (at that time) that the summary judgment motion could be resolved on the basis of legal questions applied to available facts. *See* ECF No. 44. However, after reviewing Plaintiffs' filed summary judgment motion and in preparing Defendants' opposition, Defendants have determined there are three issues where, if the Court decides they are relevant in resolving the motion, Defendants will require discovery:

*First*, if the Court determines that financial and administrative burden is a relevant factor in its analysis of Plaintiffs' First Amendment claim, then Defendants will require discovery to dispute Plaintiffs' vague and unsubstantiated claims of compliance costs. *Second*, if the Court is inclined to conclude that Senate Bills 253 and 261 compel speech about allegedly controversial aspects of climate change, then Defendants will require discovery to properly dispute the existence of any such controversy. And *third*, should the Court decide to credit Plaintiffs' allegation that the State "cannot articulate a legitimate interest in forcing discussion of out-of state, or even out-of-country, climate-related information merely because a company engages in a single transaction within the State," MSJ at 20, then Defendants require discovery to dispute that such circumstances are prevalent enough to burden constitutional rights in "a substantial number of [its] applications," as is necessary for a facial challenge. *Moody v. NetChoice*, 144 S. Ct. 2383, 2397 (2024) (citation omitted).

Defendants are currently unable to present evidence and properly dispute these issues because formal discovery has not yet opened, and the relevant facts are in the exclusive control of Plaintiffs, their declarants, and their members. By moving this Court to grant summary judgment before discovery even opens, Plaintiffs are asking the Court to take their unsubstantiated, conclusory statements as undisputed facts. That would be inconsistent with the Federal Rules of Civil Procedure.

## PROCEDURAL HISTORY

On March 27, 2024, Defendants filed a partial motion to dismiss Claims II and III of the Amended Complaint. ECF No. 38. That motion remains pending. On May 24, 2024, Plaintiffs filed a motion for summary judgment on Claim I of their Amended Complaint, requesting that the court declare Senate Bills 253 and 261 facially invalid under the First Amendment. ECF. No. 48. Defendants are filing their opposition to Plaintiffs' motion for summary judgment concurrently with this motion.

The parties reasonably deferred the Rule 16 Scheduling Conference in this case, "given the potential impact of the pending motion to dismiss and … summary judgment motion(s) on the scope of this litigation." ECF No. 44. However, because they had not yet seen Plaintiffs' summary judgment motion, Defendants reserved their rights to seek necessary discovery under Rule 56(d). *Id.*

This motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on July 8, 2024, at which the parties were unable to resolve this dispute. McLoon Decl ¶ 6.

## LEGAL STANDARD

Rule 56(d) states that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to a summary judgment motion, "the court may: (1) defer considering the motion or deny it; [or] (2) allow time to obtain affidavits or declarations or to take discovery . . . ." Fed. R. Civ. P. 56(d)(1), (2). "[T]he Supreme Court has restated the rule as requiring, rather than merely permitting, discovery 'where the nonmoving party has not had the opportunity to discover information that is essential to its opposition." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)).

To merit additional discovery and a continuance of the summary judgment motion, "[t]he requesting party must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). Although where, as here, the parties opposing summary judgment have had no chance for discovery, courts relax the degree of specificity required to grant a Rule 56(d) motion. *See, e.g.*, *Burlington N. Santa Fe R.R. Co.*, 323 F.3d at 774 ("where … no discovery whatsoever has taken place, [the 56(d) movant] cannot be expected to frame its motion with great specificity as to the kind of discovery likely to turn up useful information, as the ground for such specificity has not yet been laid"); *see also Ameron Int'l Corp. v. Cont'l Nat'l Am. Grp.*, No. CV 11-06879 ODW (MANx), 2011 WL 5873024, at *2 (C.D. Cal. Nov. 23, 2011). "The purpose of Rule 56(d) relief is to prevent the nonmoving party from being 'railroaded' by a summary judgment motion that is filed too soon after the start of a lawsuit for the nonmovant to properly oppose it without additional discovery." *Hollyway Cleaners & Laundry Co. v. Cent. Nat'l Ins. Co. of Omaha*, 219 F. Supp. 3d 996, 1003 (C.D. Cal. 2016).

## ARGUMENT

### I. DEFENDANTS REQUIRE DISCOVERY INTO THE ALLEGED FINANCIAL AND ADMINISTRATIVE BURDEN OF COMPLIANCE WITH SENATE BILLS 253 AND 261

Defendants maintain that the constitutionality of Senate Bills 253 and 261 should be reviewed under *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 637 (1985), under which the financial or administrative burden on companies created by the laws is irrelevant. Opp. at 17 (citing *Am. Hosp. Ass'n v. Azar*, 983 F.3d 528, 541 (D.C. Cir. 2020) (explaining that entity challenging the law "must demonstrate a burden on *speech*" rather than a financial burden) (emphasis in original)). However, if this Court reaches a different

conclusion, Defendants need discovery to dispute Plaintiffs' factual claims that compliance with Senate Bills 253 and 261 would be financially and administratively burdensome. These facts are relevant to Plaintiffs' claim that Senate Bills 253 and 261 fail strict scrutiny because they place an undue administrative and financial burden on businesses that would have to comply, and therefore are not sufficiently narrowly tailored. MSJ at 12-13. They also pertain to Plaintiffs' claim that the bills do not survive the lower scrutiny under *Zauderer*, 471 U.S. at 637, due to an "undue" administrative and financial burden. MSJ at 20. If Plaintiffs are correct that this burden is relevant to their motion, they would need to demonstrate a burden and that the burden occurs in a substantial number of applications. *See Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 615 (2021); *Moody*, 144 S. Ct. at 2398 (to evaluate a facial challenge to a law compelling speech a court must ask "as to each thing covered, whether the required disclosures unduly burden expression").

Defendants have produced evidence that calls Plaintiffs' claimed burden into question. Opp. at 17-18. But if this evidence is insufficient to defeat summary judgment, Defendants require discovery into three categories of specific facts to dispute Plaintiffs' conclusory allegations of financial and administrative burden:

*First*, Defendants seek to know how expensive compliance will actually be for companies required to disclose under the laws. Plaintiffs' evidence regarding the financial burden of compliance for covered entities is limited to the Governor's hypothesis that Senate Bills 253 and 261 will have a negative "financial impact" on affected businesses, an anecdotal statement of expense from a single covered company, and the estimated financial burden imposed by a distinct reporting regime. Opp. at 18; SSMF 23, 29, 41, 62-65. If the Court is inclined to credit these conclusory statements, then Defendants require discovery to genuinely dispute these allegations. To obtain these facts, Defendants would serve requests for production seeking all documents from Plaintiffs regarding estimated compliance

costs for Senate Bills 253 and 261, and total revenue for these entities to understand how these costs fits into the companies' overall financial situation. Defendants would also request all documents regarding the overall budgets member companies have for public disclosure to understand the relative financial burden on a company's overall reporting program. These facts must exist if Plaintiffs' assertions about the undue financial and administrative burden are true. But if these facts do not actually exist, that would also be relevant to the disposition of the motion. If Plaintiffs do not have access to these facts, Defendants propose serving subpoenas on Plaintiffs' members to obtain all documents regarding compliance costs and disclosure budgets.

*Second*, Defendants would seek discovery into companies' current internal tracking of the same type of information required by Senate Bills 253 and 261. Given the prevalence of sustainability reporting generally, it is likely that many companies are tracking climate emissions and managing climate risks internally, even if not currently disclosing all that data publicly. *See* Opp. at 3, 18 (describing frequency of voluntary reporting); McLoon Decl. Ex. 1 at 3 (U-Haul likely tracks relevant metrics from Senate Bills 253 and 261 since it has initiatives to "mitigate high energy consumption"). For instance, presumably the many companies, including Plaintiffs' members, that have "net zero" emissions goals must have some sort of emissions tracking system. Opp. at 9. If these companies have these climate-metric tracking systems in place already, that would greatly reduce any financial or administrative burden in overall compliance with Senate Bills 253 and 261. To obtain these facts about companies' current internal reporting practices, Defendants would propound requests for production on Plaintiffs for all documents regarding their members' existing internal climate emissions tracking and climate-related risk management practices to probe what kind of additive burden Senate Bills 253 and 261 might actually create. And if necessary, Defendants would seek these facts from Plaintiffs' members via depositions and documentary subpoenas.

Again, these facts must exist because companies know the scope of their own internal procedures.

*Third*, if the Court considers it relevant, Defendants would seek to probe Plaintiffs' claims regarding the costs Senate Bills 253 and 261 could create for businesses in a covered entity's supply chain. Plaintiffs claim that Senate Bills 253 and 261 will burden "thousands of family-farm[s]" because these farms "will incur significant costs monitoring and reporting emissions." MSJ at 5, 13. To support this claim, Plaintiffs cite to the declarations of two farm owners. MSJ at 5, 13. But this claim is belied by the statute itself, which permits reporting entities to use "secondary data" to estimate supply chain emissions, meaning farms in the supply chain may never need monitor or report emissions at all. Cal. Health & Saf. Code § 38532(c)(1)(A)(ii) (providing that Scope 3 emissions calculations can be determined through "secondary data sources," including "industry average data, proxy data, and other generic data," rather than from the downstream entity itself); *see also* SSUF 117. Plaintiffs' declarations do not establish otherwise—indeed, neither declarant asserts that any covered entity has indicated it will ask for emission reports from the farm.

If the Court nonetheless intends to credit these declarations, Defendants require discovery to dispute them. "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970). Indeed, "[c]ourts have recognized that 56(d) relief is warranted when the moving party files a declaration in support of summary judgment but does not make the declarant available for cross-examination to the non-moving party." *Smith v. L.A. Unified Sch. Dist.*, No. CV 16-2358 PSG (RAOx), 2017 WL 10562961, at *2 (C.D. Cal. June 9, 2017). Therefore, in order to dispute the existence and extent of this alleged burden on at least two family farms, Defendants would seek to depose both of these declarants, and discover whether these farms are truly part of a

relevant supply chain, whether they have been asked to provide data to support any emissions reporting, and the alleged extent of that burden.

## II. DEFENDANTS REQUIRE DISCOVERY INTO THE EXISTENCE OF A RELEVANT CLIMATE CHANGE CONTROVERSY

Defendants maintain that the disclosures required under SB 253 and 261 are factual, and do not become "controversial" merely because they "can be tied in some way to a controversial issue." *CTIA – The Wireless Assoc. v. Berkeley*, 928 F.3d 832, 845 (2019). Opp. at 12-14. However, if this Court is inclined to conclude that Senate Bills 253 and 261 compel speech about allegedly controversial aspects of climate change, Defendants will need discovery to properly dispute the existence of any such controversy.

Plaintiffs claim without citation that "[w]hether a particular wildfire[ ], sea level rise, extreme weather event[ ], or extreme drought[ ], . . . has anything to do with climate change, or to what extent, is a matter of significant debate and controversy." MSJ at 19 (alterations in original). They further allege that there is "robust disagreement by reputable scientific sources on the degree to which climate change affects these events." *Id*. (quotation marks and citation omitted). But these issues have nothing to do with either Senate Bill 253, which only requires companies to disclose their emissions, or Senate Bill 261, which leaves it up to companies to determine what—if any—"climate risks" they identify as material. Opp. at 13. At best, the laws require acknowledgement of the existence of climate change as a fact relevant to companies' business planning. But on this metric Defendants have demonstrated that there is (1) no legitimate debate in the scientific community regarding the reality of climate change, and (2) no legitimate debate in the business community that climate-risk is a factual metric relevant to companies' business planning and risk management activities. Opp. at 13-14. Moreover, Plaintiffs do not submit a single declaration or supply this court with any facts supporting these claims. Defendants cannot specifically challenge or discredit the

bases for Plaintiffs' allegation that a serious controversy exists without knowing the evidentiary foundation for their claim. Accordingly, if this Court does not deny Plaintiffs' motion outright, Defendants propose serving Plaintiffs with requests for production of all documents supporting Plaintiffs' claims of controversy and scientific disagreement regarding climate change. And if necessary, Defendants propose deposing anyone Plaintiffs rely on to support these claims of controversy.

Defendants also propose deposing Plaintiffs' sole declarant from a covered entity to examine the statement that "SB 261 … would force U-Haul to convey to the public a philosophy of environmental sustainability that it does not believe." ECF No. 48-30. *See Smith*, 2017 WL 10562961, at *2 (nonmoving party entitled to cross-examine declarants). Defendants would seek discovery regarding what exactly U-Haul finds controversial about Senate Bill 261's disclosure requirements and why. U-Haul has not stated that it doubts the veracity of climate change, or that it does not conduct internal climate-risk assessments. ECF No. 48-30. Moreover, there is reason to question the credibility of U-Haul's declaration, given its voluntary public statements regarding sustainability. For example, U-Haul states on its webpage titled "Sustainability" that "[a]t U-Haul, we are committed to sustainability through environmental protection," and describes initiatives such as "solutions for pollution prevention, energy conservation and waste reductions." McLoon Decl., Ex. 1 at 3. And U-Haul lists as one of its corporate goals, the "develop[ment] and implement[ation] [of] comprehensive climate-change strategies to manage and mitigate our greenhouse gas (GHG) emissions." McLoon Decl., Ex. 2 at 2. If Plaintiffs wish to rely on U-Haul's vague statement regarding environmental sustainability to support its factual claim of a political debate so contentious it warrants strict scrutiny, then Defendants require the opportunity to investigate the basis for that assertion.

Additionally, Defendants would seek discovery into companies' internal climate emissions and risk tracking practices to dispute this claim of controversy.

As discussed above, *supra* at 6-7, Defendants have reason to believe that tracking greenhouse gas emissions and considering climate risk are uncontroversial and commonplace within the business community. Opp. at 3, 13-14. Discovery showing that many companies are already internally tracking these emissions and considering these risks, would be relevant to any determination of controversy. Therefore, as discussed above, *supra* at 6-7, Defendants would propound requests for production on Plaintiffs for all documents regarding their members' internal climate emissions tracking and climate-related risk management activities, and if necessary, Defendants would seek these facts from Plaintiffs' members via depositions and documentary subpoenas.

While Defendants doubt that facts exist to support Plaintiffs' claim of controversy, if such facts exist, they must be in Plaintiffs' possession. And if Plaintiffs have no support for their claim of controversy, then that fact is relevant to the disposition of their motion for summary judgment.

## III. DEFENDANTS REQUIRE DISCOVERY INTO PLAINTIFFS' CLAIM THAT SENATE BILLS 253 AND 261 APPLY TO COMPANIES ENGAGING IN ONLY A SINGLE TRANSACTION IN THE STATE

Finally, Defendants seek discovery to dispute the existence of out-of-state entities that are covered by SB 253 and 261, but only engage in a single transaction within California. MSJ at 20. This fact could be legally relevant if this Court credits Plaintiffs' argument that the government purportedly does not have a legitimate interest in providing information about companies with limited transactions in California to California investors and consumers. *See* MSJ at 20 (arguing that SB 253 and 261 are unlawful because the State "cannot articulate a legitimate interest in forcing discussion of out-of state, or even out-of-country, climate-related information merely because a company engages in a single transaction within the State"); *but see* Opp. at 19-20. Plaintiffs fail to cite to any evidence showing that any such entity even exists, let alone that there are a "substantial number" of such entities as required to sustain a facial challenge.

*Moody*, 144 S. Ct. at 2397 (citation omitted). However, if this Court determines that this hypothetical is sufficient to mount a facial claim, Defendants seek discovery to genuinely dispute the existence and prevalence of such potential applications of the laws.

Defendants will propound interrogatories and requests for production on Plaintiffs seeking the name of any of their member companies who meet the revenue threshold for the laws, but have conducted *de minimus* transactions in California, and request all documents supporting the existence and prevalence of such entities. If Plaintiffs do not have sufficient information from their members to answer this question definitively, then Defendants may seek depositions or documentary subpoenas from any of Plaintiffs' member companies subject to the laws regarding the scope of their business activities in California.

These facts must exist if Plaintiffs' expression of this concern is based in fact. But if these facts do not exist, that would still be relevant for Defendants' opposition to show that this concern is unsubstantiated.

## CONCLUSION

Defendants respectfully request the Court deny Plaintiffs' motion for summary judgment outright; but if this Court does not, it should deny or defer the motion for summary judgment to allow time for Defendants to take the discovery described above so Defendants can "present facts essential to justify [their] opposition." Fed. R. of Civ. P. 56(d).

Dated: July 24, 2024

Respectfully submitted,

ROB BONTA
Attorney General of California
TRACY WINDSOR
GARY E. TAVETIAN
MYUNG J. PARK
Supervising Deputy Attorney General
M. ELAINE MECKENSTOCK
EMILY HAJARIZADEH
DYLAN REDOR
KATHERINE GAUMOND
Deputy Attorneys General

*/s/ Caitlan McLoon*

CAITLAN MCLOON
Deputy Attorney General
*Attorneys for Defendants Liane M. Randolph, Steven S. Cliff, and Robert A. Bonta*

SA2024300503
66958748.docx

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants Liane M. Randolph, Steven S. Cliff, and Robert A. Bonta, certifies that this brief contains 3,468 words, which complies with the word limit of L.R. 11-6.1.

Dated: July 24, 2024

Respectfully submitted,

ROB BONTA
Attorney General of California

CAITLAN MCLOON
Deputy Attorney General
*Attorneys for Defendants Liane M. Randolph, Steven S. Cliff, and Robert A. Bonta*

## CERTIFICATE OF SERVICE

Case Name: **Chamber of Commerce of the United States of America, et al. v. Liane M. Randolph, et al.**

Case No.: **2:24-cv-00801-ODW-PVC**

I hereby certify that on July 24, 2024, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' MOTION TO DENY OR DEFER PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON CLAIM I UNDER RULE 56(d)**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on July 24, 2024, at Los Angeles, California.

| Caitlan McLoon | /s/ Caitlan McLoon |
| --- | --- |
| Declarant | Signature |