EUGENE SCALIA, SBN 151540
  escalia@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

*Attorneys for Plaintiffs Chamber of Commerce of the United States of America, California Chamber of Commerce, American Farm Bureau Federation, Los Angeles County Business Federation, Central Valley Business Federation, and Western Growers Association*

(*Additional counsel listed on next page*)

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA,

WESTERN DIVISION

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, CALIFORNIA CHAMBER OF COMMERCE, AMERICAN FARM BUREAU FEDERATION, LOS ANGELES COUNTY BUSINESS FEDERATION, CENTRAL VALLEY BUSINESS FEDERATION, and WESTERN GROWERS ASSOCIATION, <br><br> Plaintiffs, <br><br> v. <br><br> LIANE M. RANDOLPH, in her official capacity as Chair of the California Air Resources Board, STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board, and ROBERT A. BONTA, in his official capacity as Attorney General of California. <br><br> Defendants. | CASE NO. 2:24-cv-00801-ODW-PVC <br><br> **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON CLAIM I** <br> [F.R.C.P. 56] <br><br> **HEARING:** <br><br> Date: Sept. 9, 2024 <br> Time: 1:30 PM <br> Location: Courtroom 5D <br> Judge: Otis D. Wright II |

BRADLEY J. HAMBURGER,
    SBN 266916
    bhamburger@gibsondunn.com
SAMUEL ECKMAN, SBN 308923
    seckman@gibsondunn.com
ELIZABETH STRASSNER,
    SBN 342838
    estrassner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Ave.
Los Angeles, CA  90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

BRIAN A. RICHMAN
(*pro hac vice*)
    DC Bar No. 230071
    brichman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Ave., Suite 2100
Dallas, TX  75201-2923
Telephone:  214.698.3100
Facsimile:   214.571.2900

*Attorneys for Plaintiffs Chamber of Commerce of the United States of America, California Chamber of Commerce, American Farm Bureau Federation, Los Angeles County Business Federation, Central Valley Business Federation, and Western Growers Association*

DARYL JOSEFFER
(*pro hac vice*)
    DC Bar No. 457185
    djoseffer@uschamber.com
TYLER S. BADGLEY
(*pro hac vice*)
    DC Bar No. 1047899
    tbadgley@uschamber.com
KEVIN PALMER
(*pro hac vice*)
    DC Bar No. 90014967
    kpalmer@uschamber.com
CHAMBER OF COMMERCE OF THE
UNITED STATES OF AMERICA
1615 H Street, NW
Washington, D.C.  20062-2000
Telephone:  202.659.6000
Facsimile:   202.463.5302

*Attorneys for Plaintiff Chamber of Commerce of the United States of America*

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................... 1

II. ARGUMENT .................................................................................................. 2

    A. Strict Scrutiny Applies to S.B. 253 and 261 Because They Are Not Targeted at Commercial Speech ........................................................... 2

    B. S.B. 253 and 261 Flunk Any Level of Scrutiny ......................................... 8

    C. A Permanent Injunction Is Warranted ...................................................... 10

III. CONCLUSION .............................................................................................. 10

# TABLE OF AUTHORITIES

**CASES** Page(s)

*Am. Acad. of Pain Mgmt. v. Joseph*,
   353 F.3d 1099 (9th Cir. 2004) ............................................................................. 3

*Am. Hosp. Ass'n v. Azar*,
   983 F.3d 528 (D.C. Cir. 2020) ............................................................................. 4

*AMI v. U.S. Dep't of Agric.*,
   760 F.3d 18 (D.C. Cir. 2014) ...................................................................... 4, 5, 8

*Ams. for Prosperity Found. v. Bonta*,
   594 U.S. 595 (2021) .......................................................................................... 1, 9

*Book People, Inc. v. Wong*,
   91 F.4th 318 (5th Cir. 2024) ................................................................................ 5

*Cal. Chamber of Commerce v. Council for Educ. & Research on Toxics*,
   29 F.4th 468 (9th Cir. 2022) ................................................................................ 5

*Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*,
   447 U.S. 557 (1980) ............................................................................................. 4

*City of Cincinnati v. Discovery Network, Inc.*,
   507 U.S. 410 (1993) ............................................................................................. 3

*CTIA – The Wireless Ass'n v. City of Berkeley*,
   928 F.3d 832 (9th Cir. 2019) ..................................................................... 2, 4, 6

*Edmo v. Corizon, Inc.*,
   935 F.3d 757 (9th Cir. 2019) ............................................................................ 10

*Entm't Software Ass'n v. Blagojevich*,
   469 F.3d 641 (7th Cir. 2006) ............................................................................... 2

*Environmental Defense Center, Inc. v. EPA*,
   344 F.3d 832 (9th Cir. 2003) ........................................................................... 4, 9

*Glickman v. Wileman Brothers & Elliott, Inc.*,
   521 U.S. 457 (1997) ............................................................................................. 4

*IMDb.com, Inc. v. Becerra*,
   2018 WL 979031 (N.D. Cal. Feb. 20, 2018) ..................................................... 10

ii

Gibson, Dunn & Crutcher LLP

PLAINTIFFS' REPLY MEMORANDUM ISO MOTION FOR SUMMARY JUDGMENT ON CLAIM I
CASE NO. 2:24-CV-00801-ODW-PVC

# TABLE OF AUTHORITIES
(continued)

| | Page(s) |
|---|---|
| *IMDb.com, Inc. v. Becerra*,<br>257 F. Supp. 3d 1099 (N.D. Cal. 2017) | 1 |
| *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*,<br>585 U.S. 878 (2018) | 1, 7 |
| *NAM v. SEC*,<br>748 F.3d 359 (D.C. Cir. 2014) | 9 |
| *NAM v. SEC*,<br>800 F.3d 518 (D.C. Cir. 2015) | 6, 9 |
| *Nat'l Ass'n of Wheat Growers v. Bonta*,<br>85 F.4th 1263 (9th Cir. 2023) | 1, 4, 9 |
| *Nat'l Elec. Mfrs. Ass'n v. Sorrell*,<br>272 F.3d 104 (2d Cir. 2001) | 4, 6 |
| *NetChoice, LLC v. Bonta*,<br>— F.4th —, 2024 WL 3838423 (9th Cir. Aug. 16, 2024) | 1, 2, 3, 4, 5, 7, 9 |
| *NIFLA v. Becerra*,<br>585 U.S. 755 (2018) | 1, 2, 3, 4, 6, 8, 9 |
| *Riley v. Nat'l Fed'n of Blind of N.C., Inc.*,<br>487 U.S. 781 (1988) | 2, 8, 9 |
| *Sorrell v. IMS Health Inc.*,<br>564 U.S. 552 (2011) | 6 |
| *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*,<br>600 U.S. 181 (2023) | 10 |
| *United States v. United Foods, Inc.*,<br>533 U.S. 405 (2001) | 4 |
| *Zauderer v. Office of Disciplinary Counsel*,<br>471 U.S. 626 (1985) | 2, 3, 4, 6 |

**STATUTES**

| | |
|---|---|
| Cal. Health & Safety Code § 38533(a)(2) | 7 |
| Cal. Health & Safety Code § 38533(b)(1)(A)(i) | 4 |

# I. INTRODUCTION

Plaintiffs' motion can be resolved through the straightforward application of First-Amendment principles—ones the Supreme Court and Ninth Circuit have repeatedly applied in striking down California's unlawful attempts to compel speech to target actors and activities it disfavors. *See, e.g.*, *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *NIFLA v. Becerra*, 585 U.S. 755 (2018); *NetChoice, LLC v. Bonta*, — F.4th —, 2024 WL 3838423 (9th Cir. Aug. 16, 2024); *Nat'l Ass'n of Wheat Growers v. Bonta*, 85 F.4th 1263 (9th Cir. 2023). Unable to justify another unconstitutional compulsion of speech—this time concerning climate change, a subject the Supreme Court has labeled a "controversial," "sensitive political topic[ ]," *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 585 U.S. 878, 913-14 (2018)—the State attempts to distract the Court with 6,072 pages of supposed "factual" submissions. This is a fruitless effort to manufacture a factual dispute to delay invalidation of S.B. 253 and 261. The State also seeks burdensome and irrelevant discovery, replaying a tactic that other courts have rightly rejected, and that would further infringe Plaintiffs' First Amendment rights. *See IMDb.com, Inc. v. Becerra*, 257 F. Supp. 3d 1099, 1103 (N.D. Cal. 2017), *aff'd*, 962 F.3d 1111 (9th Cir. 2020) (rejecting the State's "irrelevant, burdensome, even harassing" discovery).

The State is wrong that forcing companies to create and publish detailed, subjective climate-related information is a run-of-the-mill disclosure regulation—akin to standard disclosures about a corporation's operations—that survives "any" level of scrutiny. Opp. 2. Accepting this view of the First Amendment would have massive implications for the freedom of speech, effectively licensing each of 50 States to compel discussion of any number of hot-button political issues—from abortion to diversity—under the guise of basic corporate disclosures.

Despite admitting S.B. 253 and 261 "compel[ ] speech," Opp. 14, the State maintains neither imposes "a burden on *speech*," *id.* at 17. But by "[m]andating speech a speaker would not otherwise make," the laws "necessarily alter[ ] the content of the

speech" and thus "burden[ ] protected speech," *Riley v. Nat'l Fed'n of Blind of N.C., Inc.*, 487 U.S. 781, 795, 797-98 (1988), as the Ninth Circuit reaffirmed last week in *NetChoice*, 2024 WL 3838423, at *9. As "[c]ontent-based" speech regulations, the laws "presumptively" trigger, and fail, "strict scrutiny." *NIFLA*, 585 U.S. at 766; *see* MSJ 7-14. They also flunk less exacting tests. MSJ 19-20.

S.B. 253 and 261 are facially unconstitutional because they impose on "all" covered companies "the same" sweeping, unjustified "statutory obligation to opine" on climate-related issues, and the Court should permanently enjoin both laws. *NetChoice*, 2024 WL 3838423, at *8.

## II. ARGUMENT

### A. Strict Scrutiny Applies to S.B. 253 and 261 Because They Are Not Targeted at Commercial Speech

The State's defense turns almost entirely on avoiding strict scrutiny. It invokes the lower standard from *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985). But *Zauderer* applies only to mundane factual disclosures appended to existing commercial advertising, such as "whether a particular chemical is within any given product." *Entm't Software Ass'n v. Blagojevich*, 469 F.3d 641, 652 (7th Cir. 2006). To trigger *Zauderer* and escape strict scrutiny, the State must establish that the laws compel only "'purely factual and uncontroversial information' that relates to the service or product provided." *CTIA – The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 842 (9th Cir. 2019) (quoting *NIFLA*, 585 U.S. at 768). For three independent reasons, the State cannot show S.B. 253 and 261 are within *Zauderer*'s reach.

***The Laws Do Not Govern Commercial Speech.*** The State fails to show S.B. 253 and 261 govern only commercial speech, let alone "only 'commercial advertising.'" *NIFLA*, 585 U.S. at 768 (quoting *Zauderer*, 471 U.S. at 651); *see CTIA*, 928 F.3d at 842. Like the law at issue in *NetChoice*, the laws here "regulate[ ] far more than mere commercial speech" because "a covered business must do far 'more than propose a commercial transaction.'" *NetChoice*, 2024 WL 3838423, at *12; *see also* MSJ 15.

1  Covered businesses, for example, "must opine on potential" climate-related "harms,"
2  "disconnected from any economic transaction." *Id.*. The State does not contest this;
3  instead, it misstates the definition of commercial speech as any "'expression related
4  *solely* to the economic interests of the speaker and its audience.'" Opp. 8 (emphasis
5  added).  But that is only half of the relevant standard:  "Commercial speech represents
6  'expression related solely to the economic interests of the speaker and its audience,' . . .
7  *and* 'does no more than propose a commercial transaction.'" *Am. Acad. of Pain Mgmt.
8  v. Joseph*, 353 F.3d 1099, 1106 (9th Cir. 2004) (emphasis added).  The Supreme Court
9  and Ninth Circuit have declined to apply the State's "broader definition" because "'*the
10 test* for identifying commercial speech'" is "the proposal of a commercial transaction."
11 *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 423 (1993); *see NetChoice*,
12 2024 WL 3838423, at *12.

13      In any event, S.B. 253 and 261 fail the State's own commercial speech definition,
14 since the State's goal—"lowering [greenhouse-gas] emissions" (Opp. 7)—is not
15 "'related *solely* to the economic interests'" of the speaker and audience. *Id*. at 8. Unlike
16 cases applying *Zauderer* the State cites, the audience here includes those with *no*
17 economic relationship to the speaker.  *Cf. Zauderer*, 471 U.S. at 647 (linking "the
18 audience to the advertiser's message").

19      As a fallback, the State asserts a "connection" to "'commercial advertising,'"
20 because some companies "advertis[e] their business as 'green' or emissions-conscious."
21 Opp. 9.  This is a red herring.  S.B. 253 and 261 are not limited to companies that make
22 such advertisements, nor to the context in which such advertisements are made; the laws
23 apply to "any business entity satisfying the revenue threshold regardless of . . .
24 connection to a product." Opp. 22; *see also* MSJ 15.

25      Moreover, the laws are also not about commercial advertising.  As *NIFLA*
26 emphasized, the "statements in *Zauderer* would have been 'fully protected' if they were
27 made in a context other than advertising." 585 U.S. at 771.  *Zauderer* does not apply to
28

1 laws of this breadth, which compel speech unrelated "to the service[s] or product[s]
2 provided."  *CTIA*, 927 F.3d at 842.

3   The State's own cases illustrate (Opp. 7-18) that *Zauderer* extends, at most, to
4 labeling or point-of-sale disclosures.  *See Wheat Growers*, 85 F.4th at 1266; *CTIA*, 928
5 F.3d at 836; *AMI v. U.S. Dep't of Agric.*, 760 F.3d 18, 20 (D.C. Cir. 2014) (en banc);
6 *Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 107 (2d Cir. 2001); *see also Am. Hosp.
7 Ass'n v. Azar*, 983 F.3d 528, 542 (D.C. Cir. 2020) ("[r]equiring hospitals to disclose
8 prices before rendering services").  The laws here, however, are not "*about commercial
9 products*" at all.  *CTIA*, 928 F.3d at 848 (quoting *NIFLA*, 585 U.S. at 775).

10   The State also relies (Opp. 18-21) on *Environmental Defense Center, Inc. v. EPA*,
11 344 F.3d 832 (9th Cir. 2003), and *Central Hudson Gas & Electric Corp. v. Public
12 Service Commission of New York*, 447 U.S. 557 (1980), but neither supports its position.
13 *Environmental Defense* applies *Glickman v. Wileman Brothers & Elliott, Inc.*, 521 U.S.
14 457 (1997), which was limited to speech "ancillary to a more comprehensive program
15 restricting market autonomy," *United States v. United Foods, Inc.*, 533 U.S. 405, 411
16 (2001).  But here, the compelled speech, "far from being ancillary, is the principal object
17 of the regulatory scheme."  *Id.* at 411-12; *see NetChoice*, 2024 WL 3838423, at *9
18 (distinguishing "compelled speech [that] was 'plainly incidental'").  *Environmental
19 Defense* and *Glickman* are thus inapplicable, as is *Central Hudson* (MSJ 14-16).

20   ***The Speech Compelled Is Not Purely Factual.***  The State's failure to establish
21 that S.B. 253 and 261 are limited to commercial speech means *Zauderer* does not apply.
22 The State further fails to establish that the laws require "only factual statements," Opp.
23 12, which is another reason reliance on *Zauderer* fails.  *See NIFLA*, 585 U.S. at 768;
24 *CTIA*, 928 F.3d at 842.

25   Neither law comports with the "purely factual" standard.  S.B. 261 does not
26 require "only" statements about a company's "own activities."  Opp. 12.  Rather, as
27 explained in the "Recommendations of the Task Force on Climate-related Financial
28 Disclosures," incorporated into S.B. 261, Cal. Health & Safety Code

§ 38533(b)(1)(A)(i), the law requires a company to predict the "[p]olicy actions" government officials will take "to promote adaptation to climate change" (so-called "[t]ransition risk"); the effects of "longer-term shifts . . . in climate patterns" (so-called "[p]hysical risk"); and the "varied and complex" ways all this will impact global "markets," Dkt. 48-23 at 5-6. This "[b]alancing [of] a myriad of factors," including policymakers' discretionary decisions on controversial political questions, is "anything but the mere disclosure of factual information," *Book People, Inc. v. Wong*, 91 F.4th 318, 340 (5th Cir. 2024); *cf. NetChoice*, 2024 WL 3838423, at *12 ("a business's opinion about" how children might be exposed to harmful content "is not 'purely factual and uncontroversial'").

The State similarly errs in asserting S.B. 253 requires only "objective, factual" statements: "the quantity of [companies'] greenhouse gas emissions." Opp. 11. Estimating emissions requires competing judgments, MSJ 18, which involves "subjectivity," Dkt. 48-20 at 77. Moreover, S.B. 253 compels misleading disclosures because it fails to factor in avoided emissions. MSJ 18; Dkt. 48-30 ¶¶ 28-31; *see Cal. Chamber of Commerce v. Council for Educ. & Research on Toxics*, 29 F.4th 468, 479 n.12 (9th Cir. 2022) ("The First Amendment also bars the government from compelling others to disseminate false, deceptive, or misleading commercial disclosures."). And though the State says S.B. 253 requires companies to report "*their* emissions," that is incorrect. Opp. 11 (emphasis added). As the State concedes, the law requires companies to misleadingly acknowledge as "their own" the emissions of *others*, including the emissions of "upstream and downstream" suppliers and customers. Opp. 11; *cf. id.* at 12 (misleadingly calling this companies' "own activities").

The State tries to equate its requirements with "financial disclosure[s]" and "other commercial documents." Opp. 11. But reporting corporate assets "under longstanding financial accounting principles," *id.*, or labeling products' country-of-origin, *AMI*, 760 F.3d at 20, are mundane factual matters not subject to reasonable dispute, MSJ 17. Estimating "your" emissions, by contrast, by guessing at the level of "sulphur

hexafluoride," Dkt. 48-20 at 6, emitted by your "customers," *id.* at 27—pursuant to a 152-page instruction manual (Dkt. 48-20)—is not the type of "pure[ ]," essentially one-or-two-sentence factual disclosure that triggers *Zauderer*, *NIFLA*, 585 U.S. at 768; *cf. Zauderer*, 471 U.S. at 650 (disclosure that client may bear expenses); *CTIA*, 928 F.3d at 846 (disclosure that product meets federal guidelines for radio-frequency exposure); *Nat'l Elec. Mfrs.*, 272 F.3d at 107 (disclosure that product contains mercury and should be disposed of as hazardous waste).

**The Speech Compelled Is Controversial.** *Zauderer* is inapplicable for a third independent reason: A company's climate-related risks and emissions are "anything but an 'uncontroversial' topic." *NIFLA*, 585 U.S. at 769. *Zauderer* applies only to "uncontroversial information." *Id.* at 768; *accord CTIA*, 928 F.3d at 842.

The State's own statements confirm that a purpose of the legislation is to coerce companies into controversial speech. *E.g.*, SMF 3 (Sen. Wiener stating companies are "going to be embarrassed by [the disclosures]"). The compelled speech is designed—the State admits—to attract protests ("independent economic decisions and actions," Opp. 16). The speech these laws mandate will require companies to "convey[ ] moral responsibility" for climate change and "skew [the] public debate" in the State's preferred direction. *NAM v. SEC*, 800 F.3d 518, 530 (D.C. Cir. 2015). And in doing so, the "'practical operation'" of S.B. 253 and 261 is to target certain companies "for disfavored treatment." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 565 (2011); SMF 1-3, 5, 7.

Trying to sidestep the obvious conclusion that these laws compel speech on a controversial topic, the State raises a red herring: the undisputed fact that climate change is "real[ ]." Opp. 13. The State submits expert declarations and scores of exhibits on this topic. *E.g.*, Dkt. 55. But this is beside the point. All parties here *agree* climate change is a "reality," *id.*, and emissions contribute to it. As the complaint makes clear, "Plaintiffs support policies that reduce greenhouse-gas emissions," Am. Compl. ¶ 2. The existence of climate change is irrelevant to this Court's resolution of any claim. Rather, the controversy on which these laws compel speech is "climate change's 'long-

term' consequences . . . and corporations' responsibility to 'plan for and adapt to' it." MSJ 8. *That* is undoubtedly controversial. The State concedes "policy responses to climate change are the subject of *vigorous political* debate." Opp. 21 (emphasis added). The Supreme Court agrees, deeming "climate change" a "controversial," "sensitive political topic[ ]," which is "undoubtedly [a] matter[ ] of profound 'value and concern to the public.'" *Janus*, 585 U.S. at 913-14. The laws challenged here force companies to speak on that controversial subject.

For example, S.B. 261 requires companies to speak to so-called "transition" risk. Cal. Health & Safety Code § 38533(a)(2). Will governments "implement[ ] carbon-pricing mechanisms to reduce GHG emissions"? Dkt. 48-23 at 5. When will they do so, and what mechanisms will they utilize? *Id.* And how would that affect the company directly, by operation of the "[p]olicy action" itself, *id.*, and indirectly, by impacting "financial markets and economic health," Cal. Health & Safety Code § 38533(a)(2)? These questions, which lack defined answers, pertain to the "policy responses to climate change" that the State admits are "the subject of vigorous political debate." Opp. 21. So, too, do the compelled discussions of "physical" risk, *id.* § 38533(a)(2)—the "impacts of climate change" through "extreme weather events," "fires," "sea level rise," and "drought," and how these impacts may affect companies. Dkt. 48-23, at 62. The "timing and magnitude of [these] impacts" are "highly uncertain" and controversial. Dkt. 48-23 at 26, 35; *cf. NetChoice*, 2024 WL 3838423, at *12.

S.B. 253 likewise compels speech related to the controversial, "vigorous political debate" about "policy responses to climate change." Opp. 21. The statute choses one way of calculating emissions, when there is legitimate debate about what represents the appropriate calculation. The State insists it is "misleading" to allow companies to report anything other than "*their* total emissions," *id.* (emphasis added), but as explained, the State uses "their" to include emissions of *others*—a controversial choice. *Supra* p. 5. Likewise, the State says emissions estimates should not include "avoided emissions," Opp. 11, but that, too, is a controversial choice, *see* MSJ 18; Dkt. 48-30 ¶¶ 28-31.

B. **S.B. 253 and 261 Flunk Any Level of Scrutiny**

"Other than a conclusory assertion" tacked onto the end of its brief, the State does not seriously "explain how" S.B. 253 and 261 could survive strict scrutiny. *NIFLA*, 585 U.S. at 776 n.3. The laws fail strict scrutiny and any less exacting test. *See* MSJ 9-14, 19-20.

**State Interests.** The State has not shown its mandates further compelling, or legitimate, State interests. *See* MSJ 9-11. The State claims "investors, consumers, and employees" need "comprehensive" "information" to "make rational decisions." Opp. 22; *see also id.* at 15-16. But it is "not enough for the Government to say simply that it has a substantial interest in giving [individuals] information," as "[t]hat circular formulation would drain" the First Amendment "of any meaning." *AMI*, 760 F.3d at 31-32 (Kavanaugh, J., concurring). "Some consumers might want to know the political affiliation of a business's owners," for instance, or "whether a doctor has ever performed an abortion," but that is not grounds to compel disclosure of that information. *Id.*

The State cites anti-fraud concerns (Opp. 16, 22), but California already "has an anti-fraud law, and [courts] presume that law enforcement officers are ready and able to enforce it." *Riley*, 487 U.S. at 795. The State also fails to explain how the speech compelled here would "prevent" fraud. Opp. 16. For example, the State's expert states companies "greenwash" by "making small operational improvements while using political clout to block climate policy." Dkt. 56 ¶ 20. But it is unclear how the compelled speech would prevent such actions, much less why existing law is insufficient.

Finally, the State argues that by triggering boycotts—what the State euphemistically calls "market forces of third parties' independent economic decisions"—the laws will cause "companies doing business in California" to "reduce" their emissions and "thereby mitigate the risks California and its residents face from climate change." Opp. 16. But the State has no evidence any such reductions would have a material impact on global emissions, and thus global climate change. *See* MSJ

Gibson, Dunn & Crutcher LLP

11. In any event, the State's boycott-the-emitters argument is not a *defense* of the laws; it's a confession the State's true goal is not to help consumers, but "to stigmatize and shape behavior." *NAM*, 800 F.3d at 530; *see* SMF 1-3, 5, 7. While that may be "a more 'effective' way" of lowering emissions than other political options, that just "makes the requirement more constitutionally offensive, not less so." *NAM*, 800 F.3d at 530. The "First Amendment does not permit the State to sacrifice speech for efficiency." *Riley*, 487 U.S. at 795.

*Tailoring.* Even if there were legitimate state interests here, the laws are not narrowly tailored to advance those interests, MSJ 11-13, and are overly "broad[ ]" or "unduly burdensome," *NIFLA*, 585 U.S. at 776. The State claims an interest in protecting individuals from "fraud or misrepresentation," and in providing "investors, consumers, and employees" with "comparable . . . and reliable information." Opp. 15-16. But as in *NetChoice*, the "State could have easily employed less restrictive means" to combat fraud, such as by "relying on existing criminal laws that prohibit related conduct." 2024 WL 3838423, at *13. And "[t]here is a dramatic mismatch" "between the interest that [the State] seeks to promote and the disclosure regime that [it] has implemented in service of that end," *Ams. for Prosperity*, 594 U.S. at 612; the laws are not limited to companies that advertise or make statements related to climate change, or that have investors, consumers, or employees in the State. *Any* company meeting the revenue threshold that does business in the State is covered, regardless of any plausible connection between the business and climate change and any advertisement, investor, consumer, or employee. MSJ 11-12.

The State also fails to explain why it could not simply provide relevant information *itself*, without burdening speech. *See Wheat Growers*, 85 F.4th at 1283; MSJ 12. The State claims "companies possess more detailed and accurate data," Opp. 22, but that does not "explain why (much less provide evidence that)" the State does not have *enough* data to make useful information available to the public, *NAM v. SEC*, 748

F.3d 359, 373 (D.C. Cir. 2014), *overruled on other grounds by AMI*, 760 F.3d 18; *see* MSJ 12.

At most, the State speculates the laws could reduce emissions (Opp. 16, 22), but there is "no evidence that California explored less-speech-restrictive alternatives," like directly regulating emissions. *IMDb.com, Inc. v. Becerra*, 2018 WL 979031, at *2 (N.D. Cal. Feb. 20, 2018), *aff'd*, 962 F.3d 1111 (9th Cir. 2020). Of course, federal law may constrain the State's ability to regulate emissions. Dkt. 43. But "[w]hat cannot be done directly cannot be done indirectly," much less through speech compulsion. *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181, 230 (2023).

### C. A Permanent Injunction Is Warranted

The State does not dispute if this Court finds the laws violate the First Amendment, the Court should enjoin Defendants from applying, enforcing, or otherwise implementing them. MSJ 20-21. The State thus concedes the issue. *See, e.g.*, *Edmo v. Corizon, Inc.*, 935 F.3d 757, 785 n.14 (9th Cir. 2019).

### III. CONCLUSION

The Court should grant Plaintiffs' motion for summary judgment, declare S.B. 253 and 261 violate the First Amendment, and enjoin Defendants from implementing, applying, or taking any action whatsoever to enforce the laws.

| | | |
|---|---|---|
| 1 | DATED: August 19, 2024 | Respectfully submitted, |
| 2 | | GIBSON, DUNN & CRUTCHER LLP |

By: */s/ Bradley J. Hamburger*
Eugene Scalia, SBN 151540
Bradley J. Hamburger, SBN 266916
Samuel Eckman, SBN 308923
Brian A. Richman (*pro hac vice*)
Elizabeth Strassner, SBN 342838

*Attorneys for Plaintiffs Chamber of Commerce of the United States of America, California Chamber of Commerce, American Farm Bureau Federation, Los Angeles County Business Federation, Central Valley Business Federation and Western Growers Association*

CHAMBER OF COMMERCE OF THE
UNITED STATES OF AMERICA

Daryl Joseffer (*pro hac vice*)
Tyler S. Badgley (*pro hac vice*)
Kevin Palmer (*pro hac vice*)

*Attorneys for Plaintiff Chamber of Commerce of the United States of America*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs Chamber of Commerce of the United States of America, California Chamber of Commerce, American Farm Bureau Federation, Los Angeles County Business Federation, Central Valley Business Federation and Western Growers Association, certifies that this brief contains 3,299 words, which complies with the word limit of this Court's Rule VII.A.3.

DATED: August 19, 2024

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: /s/ Bradley J. Hamburger
Eugene Scalia, SBN 151540
Bradley J. Hamburger, SBN 266916
Samuel Eckman, SBN 308923
Brian A. Richman (*pro hac vice*)
Elizabeth Strassner, SBN 342838

*Attorneys for Plaintiffs Chamber of Commerce of the United States of America, California Chamber of Commerce, American Farm Bureau Federation, Los Angeles County Business Federation, Central Valley Business Federation and Western Growers Association*

CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA

Daryl Joseffer (*pro hac vice*)
Tyler S. Badgley (*pro hac vice*)
Kevin Palmer (*pro hac vice*)

*Attorneys for Plaintiff Chamber of Commerce of the United States of America*