1  ROB BONTA
   Attorney General of California
2  TRACY WINSOR (SBN 186164)
   Senior Assistant Attorney General
3  MYUNG J. PARK (SBN 210866)
   Supervising Deputy Attorney General
4  M. ELAINE MECKENSTOCK (SBN 268861)
   CAITLAN MCLOON (SBN 302798)
5  EMILY HAJARIZADEH (SBN 325246)
   DYLAN REDOR (SBN 338136)
6  KATHERINE GAUMOND (SBN 349453)
   Deputy Attorneys General
7    300 South Spring Street, Suite 1702
     Los Angeles, CA  90013-1230
8    Telephone:  (213) 269-6438
     Fax:  (916) 731-2128
9    E-mail:  Caitlan.McLoon@doj.ca.gov
   *Attorneys for Defendants Liane M. Randolph,*
10 *Steven S. Cliff, and Robert A. Bonta*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, CALIFORNIA CHAMBER OF COMMERCE, AMERICAN FARM BUREAU FEDERATION, LOS ANGELES COUNTY BUSINESS FEDERATION, CENTRAL VALLEY BUSINESS FEDERATION, and WESTERN GROWERS ASSOCIATION,**<br><br>Plaintiffs,<br><br>v.<br><br>**LIANE M. RANDOLPH, in her official capacity as Chair of the California Air Resources Board, STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board, and ROBERT A. BONTA, in his official capacity as Attorney General of California,**<br><br>Defendants. | 2:24-cv-00801-ODW-PVC<br><br>**NOTICE OF AMENDMENTS TO SENATE BILLS 253 AND 261**<br><br>Date:         N/A<br>Time:        N/A<br>Courtroom: 5D<br>Judge:       The Honorable Otis D. Wright, II<br>Trial Date:  Not Set<br>Action Filed: 1/30/2024 |

1

**TO THE COURT, THE PARTIES, AND THEIR COUNSEL OF RECORD:**

Defendants Liane M. Randolph, in her official capacity as Chair of the California Air Resources Board (CARB), Steven S. Cliff, in his official capacity as the Executive Officer of CARB, and Robert A. Bonta, in his official capacity as Attorney General of California, hereby file this Notice of Amendments to bring to the Court's attention recently enacted amendments to the two disclosure laws challenged in this case—Senate Bills 253 and 261. On September 27, 2024, the Governor signed into law Senate Bill 219, "an act to amend Sections 38532 and 38533 of the Health and Safety Code, relating to greenhouse gases," which becomes effective on January 1, 2025. A true and correct copy of Senate Bill 219 is attached hereto as **Exhibit 1**.

Among other things, Senate Bill 219 amends Senate Bill 253 by:

- Delaying until July 1, 2025, the requirement that CARB adopt implementing regulations (Cal. Health & Saf. Code § 38532(c)(1));
- Requiring the reporting entity to publicly disclose its scope 3 emissions on a schedule specified by CARB, rather than 180 days after its scope 1 emissions and scope 2 emissions are publicly disclosed (*id.* § 38532(c)(2)(A)(i)(II));
- Authorizing reports to be consolidated at the parent company level (*id.* § 38532(c)(2)(A)(iii));
- Deleting the requirement that the annual fee be paid upon filing the disclosure (*id.* § 38532(c)(2)(G)); and
- Authorizing, rather than requiring, CARB to contract with an emissions reporting organization to develop a reporting program to receive and make certain required disclosures publicly available (*id.* § 38532(c)(1), (c)(3)).

1  And among other things, Senate Bill 219 amends Senate Bill 261 by:

- Authorizing, rather than requiring, CARB to contract with a climate reporting organization to prepare a biennial public report on the climate-related financial risk disclosures (*id.* § 38533(d)); and
- Deleting the requirement that the entity's fee be paid upon filing its disclosure (*id.* § 38532(c)(2)(A)).

Defendants are available to brief the effect, if any, of Senate Bill 219 on their ripeness (*see, e.g.*, Dkt. No. 38-1 at 7-10; Dkt. No. 49 at 1-3) and other arguments, upon the Court's request.

Dated:  October 16, 2024

Respectfully submitted,

ROB BONTA
Attorney General of California
MYUNG J. PARK
Supervising Deputy Attorney General
M. ELAINE MECKENSTOCK
EMILY HAJARIZADEH
DYLAN REDOR
KATHERINE GAUMOND
Deputy Attorneys General

*/s/ Caitlan McLoon*

CAITLAN MCLOON
Deputy Attorney General
*Attorneys for Defendants Liane M. Randolph, Steven S. Cliff, and Robert A. Bonta*

**EXHIBIT 1**

 

| Home | Bill Information | California Law | Publications | Other Resources | My Subscriptions | My Favorites |

## SB-219 Greenhouse gases: climate corporate accountability: climate-related financial risk. (2023-2024)

SHARE THIS:    Date Published: 09/30/2024 09:00 PM

### Senate Bill No. 219

### CHAPTER 766

An act to amend Sections 38532 and 38533 of the Health and Safety Code, relating to greenhouse gases.

[ Approved by Governor  September 27, 2024. Filed with Secretary of State  September 27, 2024. ]

### LEGISLATIVE COUNSEL'S DIGEST

SB 219, Wiener. Greenhouse gases: climate corporate accountability: climate-related financial risk.

Existing law, the Climate Corporate Data Accountability Act, requires, on or before January 1, 2025, the State Air Resources Board to develop and adopt regulations to require a reporting entity to annually disclose to the emissions reporting organization, as defined, all of the reporting entity's scope 1 emissions, scope 2 emissions, and scope 3 emissions, as defined. Existing law requires the state board to ensure that the regulations require a reporting entity, starting in 2027 and annually thereafter, to publicly disclose its scope 3 emissions no later than 180 days after its scope 1 emissions and scope 2 emissions are publicly disclosed to the emissions reporting organization. Existing law requires the reporting entities to pay an annual fee upon filing the disclosure. Existing law also requires the state board to contract with an emissions reporting organization to develop a reporting program to receive and make certain required disclosures publicly available, and sets forth other duties of the emissions reporting organization and the state board.

This bill would delay the requirement that the state board adopt regulations until July 1, 2025, and would require that the regulations adopted by the state board require, among other things, a reporting entity to make the annual disclosure to either the emissions reporting organization or the state board, and that the reporting entity publicly disclose its scope 3 emissions on a schedule specified by the state board, rather than no later than 180 days after its scope 1 emissions and scope 2 emissions are publicly disclosed. The bill would authorize reports to be consolidated at the parent company level and would delete the requirement that the annual fee be paid upon filing the disclosure. The bill would authorize, rather than require, the state board to contract with an emissions reporting organization to develop a reporting program to receive and make certain required disclosures publicly available. The bill would make other related changes to the duties of the emissions reporting organization and the state board, as provided.

Existing law requires, on or before January 1, 2026, and biennially thereafter, a covered entity, as defined to mean a corporation, partnership, limited liability company, or other business entity with total annual revenues in excess of $500,000,000, as specified, to prepare a climate-related financial risk report disclosing the entity's climate-related financial risk and measures adopted to reduce and adapt to climate-related financial risk. Existing law requires the state board to contract with a climate reporting organization, as defined, to prepare a biennial public report on the climate-related financial risk disclosures and requires the climate reporting organization to be

contracted to take other actions, including biennially preparing a public report that includes a review of the disclosure of climate-related financial risk contained in a subset of publicly available climate-related financial risk reports and monitoring federal regulatory actions, as specified. Existing law requires, on or before January 1, 2026, and annually thereafter, a covered entity to pay a fee upon filing its disclosure to the state board for the administration and implementation of these requirements.

This bill would authorize, rather than require, the state board to contract with a climate reporting organization to carry out the above-described actions that the state board deems appropriate. The bill would also delete the requirement that the entity's fee be paid upon filing its disclosure.

Vote: majority   Appropriation: no   Fiscal Committee: yes   Local Program: no

THE PEOPLE OF THE STATE OF CALIFORNIA DO ENACT AS FOLLOWS:

**SECTION 1.** Section 38532 of the Health and Safety Code is amended to read:

**38532.** (a) This section shall be known, and may be cited, as the Climate Corporate Data Accountability Act.

(b) For purposes of this section, the following terms have the following definitions:

(1) "Emissions reporting organization" means a nonprofit emissions reporting organization contracted by the state board pursuant to paragraph (3) of subdivision (c) that both:

(A) Currently operates a greenhouse gas emission reporting organization for organizations operating in the United States.

(B) Has experience with greenhouse gas emissions disclosure by entities operating in California.

(2) "Reporting entity" means a partnership, corporation, limited liability company, or other business entity formed under the laws of this state, the laws of any other state of the United States or the District of Columbia, or under an act of the Congress of the United States with total annual revenues in excess of one billion dollars ($1,000,000,000) and that does business in California. Applicability shall be determined based on the reporting entity's revenue for the prior fiscal year.

(3) "Scope 1 emissions" means all direct greenhouse gas emissions that stem from sources that a reporting entity owns or directly controls, regardless of location, including, but not limited to, fuel combustion activities.

(4) "Scope 2 emissions" means indirect greenhouse gas emissions from consumed electricity, steam, heating, or cooling purchased or acquired by a reporting entity, regardless of location.

(5) "Scope 3 emissions" means indirect upstream and downstream greenhouse gas emissions, other than scope 2 emissions, from sources that the reporting entity does not own or directly control and may include, but are not limited to, purchased goods and services, business travel, employee commutes, and processing and use of sold products.

(c) (1) On or before July 1, 2025, the state board shall develop and adopt regulations to require a reporting entity to annually disclose all of the reporting entity's scope 1 emissions, scope 2 emissions, and scope 3 emissions, and obtain an assurance engagement performed by an independent third-party assurance provider. Those regulations shall require the reporting entity to make the annual disclosure to either of the following:

(A) The emissions reporting organization, if contracted for services.

(B) The state board.

(2) The state board shall ensure that the regulations adopted pursuant to this subdivision require all of the following:

(A) (i) (I) That a reporting entity, starting in 2026 on or by a date to be determined by the state board, and annually thereafter on or by that date, publicly disclose to the emissions reporting organization, if contracted for services, or the state board, all of the reporting entity's scope 1 emissions and scope 2 emissions for the reporting entity's prior fiscal year.

(II) That a reporting entity, starting in 2027 and annually thereafter, publicly disclose its scope 3 emissions on a schedule specified by the state board as part of the regulations developed pursuant to this subdivision for the prior fiscal year.

(ii) A reporting entity shall, beginning in 2026, measure and report its emissions of greenhouse gases in conformance with the Greenhouse Gas Protocol standards and guidance, including the Greenhouse Gas Protocol Corporate Accounting and Reporting Standard and the Greenhouse Gas Protocol Corporate Value Chain (Scope 3) Accounting and Reporting Standard developed by the World Resources Institute and the World Business Council for Sustainable Development, including guidance for scope 3 emissions calculations that detail acceptable use of both primary and secondary data sources, including the use of industry average data, proxy data, and other generic data in its scope 3 emissions calculations.

(iii) Reports may be consolidated at the parent company level. If a subsidiary of a parent company qualifies as a reporting entity pursuant to paragraph (2) of subdivision (b), the subsidiary is not required to prepare a separate report.

(iv) (I) Starting in 2033, the state board may survey and assess currently available greenhouse gas accounting and reporting standards. At the conclusion of this assessment the state board may adopt a globally recognized alternative accounting and reporting standard if it determines its use would more effectively further the goals of this section. This review process shall include consultation with the stakeholders identified in paragraph (5).

(II) If the state board adopts an alternative accounting and reporting standard, the state board shall develop and adopt new regulations, pursuant to paragraph (1), to ensure full conformance with the new standard and reporting of scope 1 emissions, scope 2 emissions, and scope 3 emissions and other requirements of this section.

(v) During 2029 the state board shall review, and on or before January 1, 2030, the state board shall update as necessary, the public disclosure deadlines established pursuant to clause (i) to evaluate trends in scope 3 emissions reporting and consider changes to the disclosure deadlines to ensure that scope 3 emissions data is disclosed to the emissions reporting organization, if contracted for services, or the state board, as close in time as practicable to the deadline for reporting entities to disclose scope 1 emissions and scope 2 emissions data.

(vi) The reporting timelines shall consider industry stakeholder input and shall take into account the timelines by which reporting entities typically receive scope 1 emissions, scope 2 emissions, and scope 3 emissions data, as well as the capacity for an independent assurance engagement to be performed by a third-party assurance provider.

(B) That a reporting entity's public disclosure maximizes access for consumers, investors, and other stakeholders to comprehensive and detailed greenhouse gas emissions data across scope 1 emissions, scope 2 emissions, and scope 3 emissions, as defined by this section, and is made in a manner that is easily understandable and accessible.

(C) That a reporting entity's public disclosure includes the name of the reporting entity and any fictitious names, trade names, assumed names, and logos used by the reporting entity.

(D) (i) That the emissions reporting is structured in a way that minimizes duplication of effort and allows a reporting entity to submit to the emissions reporting organization, if contracted for services, or the state board, reports prepared to meet other national and international reporting requirements, including any reports required by the federal government, as long as those reports satisfy all of the requirements of this section.

(ii) Reporting entities that are required to report mandatory industrial emissions pursuant to regulations adopted pursuant to Section 38530 may provide that data with the disclosure required pursuant to this section.

(E) That a reporting entity's disclosure takes into account acquisitions, divestments, mergers, and other structural changes that can affect the greenhouse gas emissions reporting, and is disclosed in a manner consistent with the Greenhouse Gas Protocol standards and guidance or an alternative standard, if one is adopted after 2033.

(F) (i) That a reporting entity obtains an assurance engagement, performed by an independent third-party assurance provider, of their public disclosure. The reporting entity shall ensure that a copy of the complete assurance provider's report on the greenhouse gas emissions inventory, including the name of the third-party assurance provider, is provided to the emissions reporting organization, if contracted for services, or the state board, as part of or in connection with the reporting entity's public disclosure.

(ii) The assurance engagement for scope 1 emissions and scope 2 emissions shall be performed at a limited assurance level beginning in 2026 and at a reasonable assurance level beginning in 2030.

(iii) During 2026, the state board shall review and evaluate trends in third-party assurance requirements for scope 3 emissions. On or before January 1, 2027, the state board may establish an assurance requirement for third-party assurance engagements of scope 3 emissions. The assurance engagement for scope 3 emissions shall be performed at a limited assurance level beginning in 2030.

(iv) A third-party assurance provider shall have significant experience in measuring, analyzing, reporting, or attesting to the emission of greenhouse gasses and sufficient competence and capabilities necessary to perform engagements in accordance with professional standards and applicable legal and regulatory requirements. The assurance provider shall be able to issue reports that are appropriate under the circumstances and independent with respect to the reporting entity, and any of the reporting entity's affiliates for which it is providing the assurance report. During 2029 the state board shall review and, on or before January 1, 2030, shall update as necessary, the qualifications for third-party assurance providers based on an evaluation of trends in education relating to the emission of greenhouse gases and the qualifications of third-party assurance providers.

(v) The state board shall ensure that the assurance process minimizes the need for reporting entities to engage multiple assurance providers and ensures sufficient assurance provider capacity, as well as timely reporting implementation as required under clause (i) of subparagraph (A).

(G) (i) That a reporting entity shall pay an annual fee to the state board for the administration and implementation of this section.

(ii) The state board shall set the fee established pursuant to clause (i) in an amount sufficient to cover the state board's full costs of administrating and implementing this section. The total amount of fees collected shall not exceed the state board's actual and reasonable costs to administer and implement this section.

(iii) The proceeds of the fees imposed pursuant to clause (i) shall be deposited in the Climate Accountability and Emissions Disclosure Fund, which is hereby created in the State Treasury. Notwithstanding Section 13340 of the Government Code, the money in the fund is continuously appropriated to the state board and shall be expended by the state board for the state board's activities pursuant to this section and to reimburse any outstanding loans made from other funds used to finance the initial costs of the state board's activities pursuant to this section. Moneys in the fund shall not be expended for any purpose not enumerated in this section.

(iv) The state board may adjust the fee in any year to reflect changes in the California Consumer Price Index during the prior year.

(3) The state board may contract with an emissions reporting organization to develop a reporting program to receive and make publicly available disclosures required by this section pursuant to paragraph (1).

(4) The state board may adopt or update any other regulations that it deems necessary and appropriate to implement this section.

(5) In developing the regulations required pursuant to this subdivision, the state board shall consult with all of the following:

(A) The Attorney General.

(B) Other government stakeholders, including, but not limited to, experts in climate science and corporate carbon emissions accounting and reporting.

(C) Investors.

(D) Stakeholders representing consumer and environmental justice interests.

(E) Reporting entities that have demonstrated leadership in full-scope greenhouse gas emissions accounting and public disclosure and greenhouse gas emissions reductions.

(6) This section does not require additional reporting of emissions of greenhouse gases beyond the reporting of scope 1 emissions, scope 2 emissions, and scope 3 emissions required pursuant to the Greenhouse Gas Protocol standards and guidance or an alternative standard, if one is adopted after 2033.

(d) (1) On or before July 1, 2027, the state board shall contract with the University of California, the California

State University, a national laboratory, or another equivalent academic institution to prepare a report on the public disclosures made by reporting entities to the emissions reporting organization, if contracted for services, or the state board, pursuant to subdivision (c) and the regulations adopted by the state board pursuant to that subdivision. In preparing the report, consideration shall be given to, at a minimum, greenhouse gas emissions from reporting entities in the context of state greenhouse gas emissions reduction and climate goals. The entity preparing the report shall not require reporting entities to report any information beyond what is required pursuant to subdivision (c) or the regulations adopted by the state board pursuant to that subdivision.

> (2) The state board shall ensure the report required by this subdivision is posted publicly by either of the following:
>
>> (A) The emissions reporting organization, if contracted for services, to be made publicly available on the digital platform required to be created by the emissions reporting organization pursuant to subdivision (e).
>>
>> (B) The state board on its public internet website.

(e) (1) (A) The state board, or the emissions reporting organization, if contracted for services, on or before the date determined by the state board pursuant to clause (i) of subparagraph (A) of paragraph (2) of subdivision (c), shall create a digital platform, which shall be accessible to the public, that will feature the emissions data of reporting entities in conformance with the regulations adopted by the state board pursuant to subdivision (c) and the report prepared for the state board pursuant to subdivision (d). The state board, or the emissions reporting organization, if contracted for services, shall make the reporting entities' disclosures and the state board's report available on the digital platform no later than 90 days after receipt.

> (B) The digital platform shall be capable of featuring individual reporting entity disclosures, and shall allow consumers, investors, and other stakeholders to view reported data elements aggregated in a variety of ways, including multiyear data, in a manner that is easily understandable and accessible to residents of the state. All data sets and customized views shall be available in electronic format for access and use by the public.
>
> (C) Any contract for services with a reporting organization shall be considered a noninformation technology services contract for procurement purposes.

(2) The emissions reporting organization, if contracted for services, or the state board, shall submit, within 30 days of receipt, the report prepared for the state board pursuant to subdivision (d) to the relevant policy committees of the Legislature.

(f) (1) Section 38580 does not apply to a violation of this section.

(2) (A) The state board shall adopt regulations that authorize it to seek administrative penalties for nonfiling, late filing, or other failure to meet the requirements of this section. The administrative penalties authorized by this section shall be imposed and recovered by the state board in administrative hearings conducted pursuant to Article 3 (commencing with Section 60065.1) and Article 4 (commencing with Section 60075.1) of Subchapter 1.25 of Chapter 1 of Division 3 of Title 17 of the California Code of Regulations. The administrative penalties imposed on a reporting entity shall not exceed five hundred thousand dollars ($500,000) in a reporting year. In imposing penalties for a violation of this section, the state board shall consider all relevant circumstances, including both of the following:

> (i) The violator's past and present compliance with this section.
>
> (ii) Whether the violator took good faith measures to comply with this section and when those measures were taken.
>
> (B)  A reporting entity shall not be subject to an administrative penalty under this section for any misstatements with regard to scope 3 emissions disclosures made with a reasonable basis and disclosed in good faith.
>
> (C) Penalties assessed on scope 3 reporting, between 2027 and 2030, shall only occur for nonfiling.

(g) This section applies to the University of California only to the extent that the Regents of the University of California, by resolution, make any of these provisions applicable to the university.

(h)  The provisions of this section are severable. If any provision of this section or its application is held invalid, that invalidity shall not affect other provisions or applications that can be given effect without the invalid provision or application.

**SEC. 2.** Section 38533 of the Health and Safety Code is amended to read:

**38533.** (a) For purposes of this section, the following definitions apply:

(1) "Climate reporting organization" means a nonprofit climate reporting organization contracted by the state board pursuant to subdivision (d) that both:

(A) Currently operates a climate reporting organization for organizations operating in the United States.

(B) Has experience with climate-related financial risk disclosure by entities operating in California.

(2) "Climate-related financial risk" means material risk of harm to immediate and long-term financial outcomes due to physical and transition risks, including, but not limited to, risks to corporate operations, provision of goods and services, supply chains, employee health and safety, capital and financial investments, institutional investments, financial standing of loan recipients and borrowers, shareholder value, consumer demand, and financial markets and economic health.

(3) "Climate-related financial risk report" means a report required by subdivision (b).

(4) "Covered entity" means a corporation, partnership, limited liability company, or other business entity formed under the laws of the state, the laws of any other state of the United States or the District of Columbia, or under an act of the Congress of the United States with total annual revenues in excess of five hundred million United States dollars ($500,000,000) and that does business in California. Applicability shall be determined based on the business entity's revenue for the prior fiscal year. "Covered entity" does not include a business entity that is subject to regulation by the Department of Insurance in this state, or that is in the business of insurance in any other state.

(b) (1) (A) On or before January 1, 2026, and biennially thereafter, a covered entity shall prepare a climate-related financial risk report disclosing both of the following:

(i) Its climate-related financial risk, in accordance with the recommended framework and disclosures contained in the Final Report of Recommendations of the Task Force on Climate-related Financial Disclosures (June 2017) published by the Task Force on Climate-related Financial Disclosures, or any successor thereto, or pursuant to an equivalent reporting requirement as described in paragraph (3).

(ii) Its measures adopted to reduce and adapt to climate-related financial risk disclosed pursuant to clause (i).

(B) If a covered entity does not complete a report consistent with all required disclosures pursuant to clause (i) of subparagraph (A), the covered entity shall provide the recommended disclosures to the best of its ability, provide a detailed explanation for any reporting gaps, and describe steps the covered entity will take to prepare complete disclosures.

(2) Climate-related financial risk reports may be consolidated at the parent company level. If a subsidiary of a parent company qualifies as a covered entity pursuant to paragraph (4) of subdivision (a), the subsidiary is not required to prepare a separate climate-related financial risk report.

(3) Notwithstanding paragraph (1), a covered entity satisfies the requirements of paragraph (1) if it prepares a publicly accessible biennial report that includes climate-related financial risk disclosure information by any of the following methods:

(A) Pursuant to a law, regulation, or listing requirement issued by any regulated exchange, national government, or other governmental entity, including a law or regulation issued by the United States government, incorporating disclosure requirements consistent with clause (i) of subparagraph (A) of paragraph (1), including the International Financial Reporting Standards Sustainability Disclosure Standards, as issued by the International Sustainability Standards Board.

(B) Voluntarily using a framework that meets the requirements of clause (i) of subparagraph (A) of paragraph (1) or the International Financial Reporting Standards Sustainability Disclosure Standards, as issued by the International Sustainability Standards Board.

(4) To the extent a climate-related financial risk report contains a description of a covered entity's greenhouse gas emissions or voluntary mitigation of greenhouse gas emissions, the state board may consider the covered entity's claims if those claims are verified by a third-party independent verifier.

(c) (1) On or before January 1, 2026, and biennially thereafter, a covered entity shall make available to the public, on its own internet website, a copy of the report required by this section.

(2) (A) On or before January 1, 2026, and annually thereafter, a covered entity shall pay a fee to the state board for the administration and implementation of this section.

(B) (i) The state board shall set the fee described in subparagraph (A) at an amount adequate to cover the state board's full costs of administrating and implementing this section. The total amount of fees collected shall not exceed the state board's actual and reasonable costs to administer and implement this section.

(ii) The state board may adjust the fee in any year to reflect changes in the California Consumer Price Index during the prior year.

(C) The proceeds of the fees imposed pursuant to this paragraph shall be deposited in the Climate-Related Financial Risk Disclosure Fund, which is hereby created in the State Treasury. Notwithstanding Section 13340 of the Government Code, the money in the fund is continuously appropriated to the state board and shall be expended by the state board for the state board's activities pursuant to this section and to reimburse any outstanding loans made from other funds used to finance the initial costs of the state board's activities pursuant to this section. Money in the fund shall not be expended for any other purpose not described in this subparagraph.

(d) The state board may contract with a climate reporting organization to do any of the following it deems appropriate:

(1) Biennially prepare a public report that contains all of the following elements:

(A) A review of the disclosure of climate-related financial risk contained in a subset of publicly available climate-related financial risk reports by industry.

(B) Analysis of the systemic and sectorwide climate-related financial risks facing the state based on the contents of climate-related financial risk reports, including, but not limited to, potential impacts on economically vulnerable communities.

(C) Identification of inadequate or insufficient reports.

(2) Regularly convene representatives of sectors responsible for reporting climate-related financial risks, state agencies responsible for oversight of reporting sectors, investment managers, academic experts, standard-setting organizations, climate and corporate sustainability organizations, labor union representatives whose members work in impacted sectors, and other stakeholders to offer input on current best practices regarding the disclosure of financial risks resulting from climate change, including, but not limited to, proposals to update the definition of "climate-related financial risk," and the framework or disclosure standard of "climate-related financial risk reports" that meets the requirements of clause (i) of subparagraph (A) of paragraph (1) of subdivision (b).

(3) Monitor federal regulatory actions among agency members of the federal Financial Stability Oversight Council, as well as nonindependent regulators overseen by the White House.

(e) Any contract for services with a reporting organization shall be considered a noninformation technology services contract for procurement purposes.

(f) (1) Section 38580 does not apply to a violation of this section.

(2) The state board shall adopt regulations that authorize it to seek administrative penalties from a covered entity that fails to make the report required by this section publicly available on its internet website or publishes an inadequate or insufficient report. The administrative penalties authorized by this section shall be imposed and recovered by the state board in administrative hearings conducted pursuant to Article 3 (commencing with Section 60065.1) and Article 4 (commencing with Section 60075.1) of Subchapter 1.25 of Chapter 1 of Division 3 of Title 17 of the California Code of Regulations. The administrative penalties imposed on a reporting entity shall not exceed fifty thousand dollars ($50,000) in a reporting year. In imposing penalties for a violation of this section, the state board shall consider all relevant circumstances, including both of the following:

(A) The violator's past and present compliance with this section.

(B) Whether the violator took good faith measures to comply with this section and when those measures were taken.

# CERTIFICATE OF SERVICE

| | | | |
|---|---|---|---|
| Case Name: | **Chamber of Commerce of the United States of America, et al. v. Liane M. Randolph, et al.** | No. | **2:24-cv-00801-ODW-PVC** |

I hereby certify that on <u>October 16, 2024</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **NOTICE OF AMENDMENTS TO SENATE BILLS 253 AND 261**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>October 16, 2024</u>, at Los Angeles, California.

| C. Chow | /s/ C. Chow |
|---|---|
| Declarant | Signature |

SA2024300503
67169366.docx