O

# United States District Court
# Central District of California

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA et al., <br><br> Plaintiffs, <br><br> v. <br><br> CALIFORNIA AIR RESOURCES BOARD et al., <br><br> Defendants. | Case № 2:24-cv-00801-ODW (PVCx) <br><br> **ORDER GRANTING DEFENDANTS' MOTION TO DENY OR DEFER PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINITFFS' MOTION FOR SUMMARY JUDGMENT [48] [57]** |

## I.     INTRODUCTION

Plaintiffs Chamber of Commerce of the United States of America, California Chamber of Commerce, American Farm Bureau Federation, Los Angeles County Business Federation, Central Valley Business Federation, and Western Growers Association bring this action challenging California Senate Bills ("SB" or "SBs") 253 and 261 against Defendants Chair of the California Air Resources Board ("CARB") Liane M. Randolph, Executive Officer of CARB Steven S. Cliff, and California Attorney General Robert A. Bonta (the "State") for violation of the First Amendment, the Supremacy Clause, and the United States Constitution's limitations on extraterritorial regulation.  (*See* First Am. Compl. ("FAC") ¶¶ 92–112, ECF No. 28.) Plaintiffs move for summary judgment on their First Amendment claim.  (Mem.

P. & A. ISO Mot. Summ. J. ("MSJ" or "Motion for Summary Judgment"), ECF No. 48-1). The State moves to deny or defer Plaintiffs' Motion for Summary Judgment under Federal Rule of Civil Procedure ("Rule") 56(d). (Mot. Deny Defer MSJ ("Rule 56(d) Mot." or "Rule 56(d) Motion"), ECF No. 57-1.)[1]

For the reasons discussed below, the Court **GRANTS** the State's Rule 56(d) Motion and **DENIES** Plaintiffs' Motion for Summary Judgment.[2]

## II. BACKGROUND

On October 7, 2023, Governor Gavin Newsom signed SBs 253 and 261 into law. (MSJ 2.) SBs 253's and 261's obligations are expected to take effect in 2026. Cal. Health & Safety Code §§ 38532(c)(1)(A), (F)(ii)–(iii), 38533(b)(1)(A). A brief description of each law follows.

### A. Senate Bill 253

SB 253 directs that by January 1, 2025, CARB "shall develop and adopt regulations" for "reporting entities"—businesses with total annual revenues over $1 billion "that do[] business in California." *Id.* §§ 38532(b)(2), (c)(1).[3] One of the legislation's sponsors estimates that SB 253 would apply to approximately 5,300 United States businesses. (Pls. Separate Statement Uncontroverted Facts ("PF") 27–28, ECF No. 48-2.)

SB 253 requires CARB to develop regulations that require reporting entities to annually disclose its Scope 1, Scope 2, and Scope 3 emissions. Cal. Health & Safety Code § 38532(c)(1).

---

[1] The State also moves to dismiss Plaintiffs' Supremacy Clause and extraterritorial regulation claims. (Mot. Dismiss, ECF No. 38.) The Court will address that motion in a separate order.

[2] Having carefully considered the papers filed in connection with the Motion for Summary Judgment and Rule 56(d) Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

[3] On October 16, 2024, Defendants informed the Court that, on September 27, 2024, Governor Newsom signed amendments to SBs 253 and 261 into law. (Not. Amends. SBs 253 & 261, ECF No. 72.) The amendments would, among other things, delay CARB's requirement to adopt SB 253's implementing regulations until July 1, 2025. (*Id.* at 1). Because the amendments do not take effect until January 1, 2025, and the amendments do not alter the Court's analysis in this Order, the Court describes SBs 253 and 261 as in effect as of the date of this Order.

- Scope 1 emissions are "all direct greenhouse gas emissions that stem from sources that a reporting entity owns or directly controls, regardless of location, including, but not limited to, fuel combustion activities." *Id.* § 38532(b)(3).

- Scope 2 emissions are "indirect greenhouse gas emissions from consumed electricity, steam, heating, or cooling purchased or acquired by a reporting entity, regardless of location." *Id.* § 38532(b)(4).

- Scope 3 emissions are "indirect upstream and downstream greenhouse gas emissions, other than scope 2 emissions, from sources that the reporting entity does not own or directly control and may include, but are not limited to, purchased goods and services, business travel, employee commutes, and processing and use of sold products." *Id.* § 38532(b)(5).

SB 253 does not mandate entities to report avoided emissions, or so-called "Scope 4 emissions." (PF 59.) These are "avoided emissions or greenhouse-gas reductions from actions taken to compensate for or offset emissions." (Decl. Bradley J. Hamburger Ex. 17 ("Greenhouse Gas Protocol") 6, ECF Nos. 48-3, 48-20; *see* PF 31, 59.)

SB 253 requires CARB to ensure that its regulations mandate entities to measure and report Scope 3 emissions "in conformance with the Greenhouse Gas protocol standards and guidance." Cal. Health & Safety Code § 38532(c)(1)(A)(ii). The law further directs CARB to develop and adopt regulations to "minimize[] duplication of effort" by allowing entities "to submit to the emissions reporting organization reports prepared to meet other national and international reporting requirements." *Id.* § 38532(c)(1)(D)(i). CARB must also develop and adopt regulations that ensure reporting entities obtain third-party assurances as to the quality and accuracy of the reported emissions. *Id.* § 38532(c)(1)(F). These emissions data will be publicly available, and CARB will ensure the creation of a public report on the disclosures. *Id.* §§ 38532(d)(1), (e)(1)(2). SB 253 requires CARB to adopt regulations that authorize it to seek administrative penalties for "nonfiling, late filing, or other failure to meet the requirements" of the law. *Id.* § 38532(f)(2)(A).

B.     **Senate Bill 261**

SB 261 applies to any entity with total annual revenues over $500 million "that does business in California." *Id.* § 38533(a)(4).  The California Senate Rules Committee analysis estimates that over 10,000 companies would meet this threshold, twenty percent of which are publicly traded companies.  (PF 48–49.)

As of January 1, 2026, SB 261 will mandate each applicable entity to biennially disclose on its website two categories of climate-related financial risk information, defined as information related to "material risk of harm to immediate and long-term financial outcomes due to physical and transition risks" to the business, Cal. Health & Safety Code § 38533(a)(2)[4]:

- Its climate-related financial risk, in accordance with the recommended framework and disclosures contained in the Final Report of Recommendations of the Task Force on Climate-related Financial Disclosures (June 2017), *id.* § 38533(b)(1)(A)(i); and

- Its measures adopted to reduce and adapt to climate-related financial risk disclosed in its biennial report.  *Id.* § 38533(b)(1)(A)(ii).

SB 261 requires CARB to adopt regulations that authorize it to seek administrative penalties—no more than $50,000—for reporting entities that fail to publish a report or make an inaccurate one.  *Id.* § 38533(e)(2).

On January 30, 2024, Plaintiffs filed this lawsuit against the State.  (Compl., ECF No. 1.)  In its first amended complaint, filed on February 22, 2024, Plaintiffs bring four causes of action under 42 U.S.C. § 1983.  In Count I, Plaintiffs allege that SBs 253 and 261 violate the First Amendment.  (FAC ¶¶ 92–99.)  In Count II, Plaintiffs assert that federal law preempts SBs 253 and 261, which violates the Supremacy Clause.  (*Id.* ¶¶ 100–06.)  In Count III, Plaintiffs claim that the laws

---

[4] The legislation's full definition of "climate-related financial risk" is as follows: "material risk of harm to immediate and long-term financial outcomes due to physical and transition risks, including, but not limited to, risks to corporate operations, provision of goods and services, supply chains, employee health and safety, capital and financial investments, institutional investments, financial standing of loan recipients and borrowers, shareholder value, consumer demand, and financial markets and economic health." Cal. Health & Safety Code § 38533(a)(2).

violate the U.S. Constitution's limits on extraterritorial regulation. (*Id.* ¶¶ 107–12.) Lastly, in Count IV, Plaintiffs seek payment of attorneys' and expert' fees. (*Id.* ¶¶ 113–15.) As relief, Plaintiffs seek declarations that SBs 253 and 261 are "null, void, and with no force or effect," and an injunction enjoining the State from "implementing, applying, or taking any action whatsoever to enforce" SBs 253 and 261. (FAC, Prayer for Relief ¶ 116.)

Despite discovery having not yet begun, Plaintiffs now move for summary judgment on their First Amendment Claim. (MSJ.) In addition to opposing Plaintiffs' Motion for Summary Judgment on the merits, the State separately moves to deny or defer the motion under Rule 56(d). (Opp'n MSJ, ECF No. 52; Rule 56(d) Mot.) The Motion for Summary Judgment and Rule 56(d) Motion are fully briefed. (MSJ; Opp'n MSJ; Reply ISO MSJ, ECF No. 59; Rule 56(d) Mot.; Opp'n Rule 56(d) Mot., ECF No. 60; Reply ISO Rule 56(d) Mot., ECF No. 61.)[5]

### III.   LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" where it might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden of establishing the absence of a genuine issue of material fact lies with the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once the moving party satisfies its initial burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt"

---

[5] The parties also filed supplemental briefing on the impact of the Ninth Circuit's recent decisions in *NetChoice, LLC v. Bonta*, 113 F.4th 1101 (9th Cir. 2024), and *X Corp. v. Bonta*, 116 F.4th 888 (9th Cir. 2024) on the Motion for Summary Judgment and Rule 56(d) Motion. (*See* Defs. Sur-Reply MSJ, ECF No. 64; Pls. Resp. Sur-Reply, ECF No. 66; Pls. Suppl, Br., ECF No. 69; Defs. Suppl. Br., ECF No. 70.)

1 | about a material issue of fact precludes summary judgment. *Matsushita Elec. Indus.*
2 | *v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must show
3 | that there are "genuine factual issues that . . . may reasonably be resolved in favor of
4 | either party." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics*, *Inc.*,
5 | 818 F.2d 1466, 1468 (9th Cir. 1987) (emphasis omitted) (quoting *Anderson*, 477 U.S.
6 | at 250). Courts should grant summary judgment against a party who fails to make a
7 | sufficient showing on an element essential to her case when she will ultimately bear
8 | the burden of proof at trial. *Celotex*, 477 U.S. at 322–23.

9 | In ruling on summary judgment motions, courts "view the facts and draw
10 | reasonable inferences in the light most favorable" to the nonmoving party. *Scott v.*
11 | *Harris*, 550 U.S. 372, 378 (2007) (internal quotation marks omitted). Conclusory,
12 | speculative, or "uncorroborated and self-serving" testimony will not raise genuine
13 | issues of fact sufficient to defeat summary judgment. *Villiarimo v. Aloha Island Air,*
14 | *Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *see Thornhill Publ'g Co. v. GTE Corp.*,
15 | 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though a court may not weigh
16 | conflicting evidence or make credibility determinations, there must be more than a
17 | mere scintilla of contradictory evidence to survive summary judgment. *Addisu v.*
18 | *Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

19 | A court may assume that material facts claimed and adequately supported are
20 | undisputed except to the extent that such material facts are (a) included in the
21 | opposing party's responsive statement of disputes and (b) controverted by declaration
22 | or competent written evidence. C.D. Cal. L.R. 56-4. A court is not obligated to look
23 | any further in the record for supporting evidence other than what is actually and
24 | specifically referenced. *Id.*

25 | "A party requesting a continuance pursuant to Rule 56(d) must identify by
26 | affidavit the specific facts that further discovery would reveal, and explain why those
27 | facts would preclude summary judgment. *Sec. & Exch. Comm'n v. Stein*, 906 F.3d
28 | 823, 833 (9th Cir. 2018) (internal quotation marks omitted) (quoting *Tatum v. City &*

*Cnty. of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006)). "The facts sought must be 'essential' to the party's opposition to summary judgment, and it must be 'likely' that those facts will be discovered during further discovery." *Id.* (citation omitted). In denying the request, a "district court abuses its discretion only if the party requesting a continuance can show that allowing additional discovery would have precluded summary judgment." *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1076 (9th Cir. 2019).

## IV.   DISCUSSION

The sole claim at issue in the Motion for Summary Judgment and Rule 56(d) Motion is Plaintiffs' facial challenge to SBs 253 and 261 for violation of the First Amendment. (*See* MSJ; Rule 56(d) Mot.)

**A.   Whether the First Amendment Applies**

Before analyzing whether SBs 253 and 261 violate the First Amendment, the Court must first decide whether the First Amendment even applies.

While the State devotes most of its briefing to arguing that the laws withstand First Amendment scrutiny, the State also asserts that the laws escape First Amendment scrutiny because they are "part of a broader regulatory apparatus." (Opp'n MSJ 20 (internal quotation marks omitted).)

As the Ninth Circuit recently noted, "[i]t is well-established that the First Amendment protects 'the right to refrain from speaking at all'" and "that the forced disclosure of information, even purely commercial information, triggers First Amendment scrutiny." *NetChoice, LLC v. Bonta*, 113 F.4th 1101, 1117 (9th Cir. 2024) (quoting *Wooley v. Maynard*, 430 U.S. 705, 714 (1977)). A law's "primary effect . . . is to compel speech, distinguishing it from statutes where the compelled speech was plainly incidental to the [law's] regulation of conduct." *Id.* (second alteration in original) (internal quotation marks omitted). There can be no dispute that the primary effect—and purpose—of SBs 253 and 261 is to compel speech. (*See*

1 Opp'n MSJ 15–17 (describing California's interests in SBs 253 and 261).) Therefore, the First Amendment applies to SBs 253 and 261.

### B. Whether SBs 253 and 261 Violate the First Amendment

Plaintiffs bring a First Amendment facial challenge to SBs 253 and 261. "[C]ourts usually handle constitutional claims case by case, not en masse." *X Corp. v. Bonta*, 116 F.4th 888, 898 (9th Cir. 2024) (quoting *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2397 (2024)). Because facial challenges "often rest on speculation about the law's coverage and its future enforcement" and "threaten to short circuit the democratic process," the Supreme Court "has therefore made facial challenges hard to win." *Moody*, 144 S. Ct. at 2397 (internal quotation marks omitted).

In First Amendment cases, the Supreme Court has "lowered th[e] very high bar" of a typical facial challenge. *X Corp.*, 116 F.4th at 898 (quoting *Moody*, 144 S. Ct. at 2397). "'[I]f the law's unconstitutional applications substantially outweigh its constitutional ones,' then a court may sustain a facial challenge to the law and strike it down." *Id.* (alteration in original) (quoting *Moody*, 144 S. Ct. at 2397). As such, "a First Amendment facial challenge has two parts: first, the courts must 'assess the state laws' scope'; and second, the courts must 'decide which of the laws' applications violate the First Amendment, and . . . measure them against the rest." *Id.* (alteration in original) (quoting *Moody*, 144 S. Ct. at 2398). The Supreme Court recently admonished that courts cannot treat facial challenges "more like as-applied claims than like facial ones." *Moody*, 144 S.Ct. at 2398.

In evaluating whether a regulation violates the First Amendment, courts "distinguish between content-based and content-neutral regulations of speech." *Vidal v. Elster*, 602 U.S. 286, 292 (2024). "Mandating speech that a speaker would not otherwise make necessarily alters the content of the speech." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 795 (1988). A content-based regulation is typically subject to strict scrutiny, or "presumptively unconstitutional and may be justified only if the government proves that [it is] narrowly tailored to serve

compelling state interests." *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 766 (2018).

However, not all content-based regulations are subject to strict scrutiny. "Laws regulating commercial speech are generally subject to a lesser standard than strict scrutiny." *NetChoice*, 113 F.4th at 1119; *accord X Corp.*, 116 F.4th at 900. "Commercial speech is 'usually defined as speech that does no more than propose a commercial transaction.'" *X Corp.*, 116 F.4th at 900 (quoting *United States v. United Foods, Inc.*, 533 U.S. 405, 409 (2001)). But this is "just a starting point." *Id.* Courts "try to give effect to a common-sense distinction between commercial speech and other varieties of speech." *Id.* (internal quotation marks omitted). This is a "fact-driven" analysis, "due to the inherent difficulty of drawing bright lines that will clearly cabin commercial speech in a distinct category." *Id.* Given this difficulty, "in close cases," courts consider the three factors outlined by the Supreme Court in *Bolger v. Youngs Drug Products Corporation*, 463 U.S. 60 (1983), to determine if speech is commercial. *NetChoice*, 113 F.4th at 1119. The *Bolger* factors weigh in favor of characterizing speech as commercial where (1) "the speech is an advertisement," (2) "the speech refers to a particular product," and (3) "the speaker has an economic motivation." *Hunt v. City of Los Angeles*, 638 F.3d 703, 715 (9th Cir. 2011). While these factors are "important guideposts, . . . they are not dispositive." *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1116 (9th Cir. 2021).

Generally, commercial speech receives intermediate scrutiny. *X Corp.*, 116 F.4th at 900; *NetChoice*, 114 F.4th at 1119. In such cases, courts ask, "whether the asserted governmental interest is substantial," "whether the regulation directly advances the governmental interest asserted," and "whether [the law] is not more extensive than is necessary to serve that interest." *NetChoice*, 114 F.4th at 1119 (quoting *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 556, 566 (1980)). However, there is an exception for commercial speech that is "purely factual and uncontroversial," which is subject to rational basis review.

1 *X Corp.*, 116 F.4th at 900; *NetChoice*, 114 F.4th at 1119. Under *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*, 471 U.S. 626 (1985), "the government may compel truthful disclosure in commercial speech as long as the compelled disclosure is 'reasonably related' to a substantial governmental interest." *CTIA - The Wireless Ass'n v. City of Berkeley, Cal.*, 928 F.3d 832, 842 (9th Cir. 2019) (quoting *Zauderer*, 471 U.S. at 651).

Here, Plaintiffs assert that a facial challenge is appropriate. (*See* MSJ 6; Reply ISO MSJ 2; Pls. Suppl. Br 1.) They also argue that strict scrutiny applies because neither *Central Hudson*'s intermediate scrutiny nor *Zauderer*'s rational basis scrutiny applies. (*See* MSJ 14–19; Reply ISO MSJ 2–7.) Specifically, Plaintiffs contend that SBs 253 and 261 do not regulate commercial speech and the regulated speech is not purely factual and uncontroversial. (*See* MSJ 14–19; Reply ISO MSJ 2–7.) In any event, Plaintiffs contend that SBs 253 and 261 fail any degree of First Amendment scrutiny. (*See* MSJ 19–20; Reply ISO MSJ 8–10.)

The State disputes each of these assertions and urges the Court to outright deny Plaintiffs' Motion for Summary Judgment. (*See* Opp'n MSJ.) Alternatively, the State moves to deny or defer Plaintiffs' Motion for Summary Judgment because no discovery has occurred, and it has identified "three issues where, if the Court decides they are relevant in resolving the motion," the State requires discovery. (Rule 56(d) Mot. 2.) These issues are the (1) SBs 253's and 261's financial and administrative burden, (2) controversial nature of the speech SBs 253 and 261 regulate, and (3) "existence of out-of-state entities that are covered by SB[s] 253 and 261, but only engage in a single transaction within California." (*Id.* at 2, 10.) Plaintiffs counter that none of this "discovery is material to the merits" of their facial constitutional challenge. (Opp'n Rule 56(d) Mot. 2.)

The Court finds that Plaintiffs' constitutional challenge does not present "only pure questions of law." (Opp'n Rule 56(d) Mot. 1.) Indeed, Plaintiffs chose to litigate this case as a facial challenge, "and that decision comes at a cost." *Moody*, 144 S. Ct.

at 2397. In the first instance, the Court must "determine what [the law] covers." *Id.* at 2398 (alteration in original). On their face, SBs 253 and 261 appear to apply to all companies that meet the relevant revenue thresholds that do "business in California." Cal. Health & Safety Code §§ 38532(b)(2), 38533(a)(4). But the Court must also "decide which of the laws' applications violate the First Amendment," and "measure the constitutional against the unconstitutional applications." *Moody*, 144 S. Ct. at 2398.

On the present record—before any discovery has taken place—the Court is unable to complete this "fact-driven" task. *X Corp.*, 116 F.4th at 900. For example, for purposes of Plaintiffs' summary judgment motion, Plaintiffs admit that California's legislature "designed" the bills "to, in part, prevent companies from making potential misleading statements." (Pls. Resp. Defs.' Additional Material Facts ("Pls. Resp. DAMF") 130, ECF No. 59-1.) Plaintiffs further admit that "[m]any companies advertise their business as 'green' or emissions conscious" and that their "own member companies have advertised themselves as adhering to 'net zero' emissions goals." (*Id.* ¶¶ 128–29.) Moreover, the purpose of this advertising is to "influence . . . consumer behavior." (*Id.* ¶ 163.)

These facts may support that at least two of the three *Bolger* factors (i.e., advertisement and economic motivation) favor a finding that SBs 253 and 261 regulate commercial speech and therefore less than strict scrutiny applies. *See Stutzman v. Armstrong*, No. 2:13-CV-00116-MCE-KJN, 2013 WL 4853333, at *18 (E.D. Cal. Sept. 10, 2013) (finding two of three *Bolger* factors support characterization of commercial speech); *cf. Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 959 (9th Cir. 2012) (not commercial speech where object of regulation "does not fulfill two of the three Bolger factors").

But they also may not. To determine which level of scrutiny to apply, the Court needs a record on whether SBs 253 and 261 regulate a substantial number of companies that do not make potentially misleading environmental claims. For

11

1  example, if ninety-nine percent of the regulated companies have made advertisements
2  relevant to SBs 253's and 261's required disclosures, that may support a finding that
3  SBs 253 and 261 are appropriately tailored to the State's aims under at least rational
4  basis review.  This becomes less likely if, for example, a handful of the regulated
5  companies make such advertisements.

6  Moreover, contrary to Plaintiffs' contention, it is indeed relevant to SB 253's
7  and 261's purported overinclusiveness whether there exists a company that "engages
8  in a single transaction within the State, wholly unconnected to climate-related risks,"
9  and must comply with SBs 253 and 261.  (Opp'n Rule 56(d) (quoting MSJ 8–9.))  The
10 absence of real-world examples of SB 253's and 261's overinclusvieness directly
11 impacts whether SB 253 and 261 are appropriately tailored to the State's aims.

### C. Requirements of Rule 56(d)

Plaintiffs urge the Court to strike the State's motion deny or defer Plaintiffs' MSJ because its support declaration does not comply with Rule 56(d).  (*See* Opp'n Rule 56(d) Mot.)  But the State has "show[n] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."  Fed R. Civ. P. 56(d).  The State identifies "three categories of specific facts," and explains the specific facts it is "unable to present . . . because discovery has not opened."  (Decl. Caitlan McLoon ISO Rule 56(d) Mot. ¶¶ 2, 5, ECF No. 57-2.)  These are not "bare assertion[s]," (Opp'n Rule 56(d) Mot. 10), and thus are sufficient to comply with Rule 56(d)'s requirements.  In any event, even if the State's Rule 56(d) motion was deficient, the Court finds that there are genuine disputes of material fact that preclude it from granting summary judgment at this stage.

Plaintiffs raise concerns that the State will use "improper tactic[s]" and take an "abusive approach" to discovery in this case. (Opp'n Rule 56(d) Mot. 1.)  To be clear, at this time, the Court does not rule on whether the State is entitled to specific discovery.  The Court simply rules that further development of the facts are needed for it to evaluate Plaintiffs' Motion for Summary Judgment.  If the State takes an abusive

approach to discovery, Plaintiffs may pursue appropriate measures, as may any party in any litigation. *See, e.g.*, Fed. R. Civ. P. 26.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** the State's Motion to Defer or Deny Plaintiffs' Motion for Summary Judgment on Claim I, (ECF No. 57), and **DENIES** Plaintiffs' Motion for Summary Judgment on Claim I, (ECF No. 48), **WITH LEAVE TO RE-FILE**.

**IT IS SO ORDERED.**

November 5, 2024

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**