**O**

# United States District Court
# Central District of California

CHAMBER OF COMMERCE OF THE
UNITED STATES OF AMERICA et al.,

Plaintiffs,

v.

CALIFORNIA AIR RESOURCES
BOARD et al.,

Defendants.

Case № 2:24-cv-00801-ODW (PVCx)

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AND THIRD CAUSES OF ACTION [38]**

## I.    INTRODUCTION

Plaintiffs Chamber of Commerce of the United States of America ("U.S. Chamber"), California Chamber of Commerce, American Farm Bureau Federation, Los Angeles County Business Federation, Central Valley Business Federation, and Western Growers Association bring this action challenging California Senate Bills ("SB" or "SBs") 253 and 261 against Defendants Chair of the California Air Resources Board ("CARB") Liane M. Randolph, Executive Officer of CARB Steven S. Cliff, and California Attorney General Robert A. Bonta (collectively, the "State") for violation of the United States Constitution's First Amendment, Supremacy Clause, and limitations on extraterritorial regulation.  (*See* First Am. Compl. ("FAC") ¶¶ 92–112, ECF No. 28.)   The State moves to dismiss Plaintiffs' Supremacy Clause and

extraterritoriality claims. (Mem. P. & A. ISO Mot. Dismiss. ("Mot." or "Motion"), ECF No. 38-1).[1]

For the reasons discussed below, the Court **GRANTS** the State's Motion to Dismiss and dismisses Plaintiffs' Supremacy Clause and extraterritoriality claims.[2]

## II.    BACKGROUND[3]

On October 7, 2023, Governor Gavin Newsom signed SBs 253 and 261 into law. (FAC ¶ 3.) A brief description of each law follows.

### A.    Senate Bill 253

SB 253 originally directed that by January 1, 2025, CARB "shall develop and adopt regulations" for "reporting entit[ies]"—businesses with total annual revenues over $1 billion "that do[] business in California." Cal. Health & Safety Code §§ 38532(b)(2), (c)(1). After the FAC was filed, California delayed this deadline to July 1, 2025. (Notice Amends. SBs 253 & 261 ("Not. Amends."), ECF No. 72.)[4] SB 253 is expected to directly apply to more than 5,300 companies. (FAC ¶ 44.)

SB 253 requires CARB to develop regulations that require reporting entities to annually disclose their Scope 1, Scope 2, and Scope 3 emissions. (*Id.* ¶ 47); Cal. Health & Safety Code § 38532(c)(1).

- Scope 1 emissions are "all direct greenhouse gas emissions that stem from sources that a reporting entity owns or directly controls, regardless of location, including, but not limited to, fuel combustion activities." (FAC ¶ 47a); Cal. Health & Safety Code § 38532(b)(3).

---

[1] The State also moved to dismiss all of Plaintiffs' claims against Attorney General Bonta, arguing that sovereign immunity bars these claims. (Mot. 21–22.) In their Reply, the State, without conceding the point, withdrew this argument. (Reply 1 n.1, ECF No. 49.)

[2] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

[3] All factual references derive from the FAC, unless otherwise noted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that well-pleaded factual allegations are accepted as true for purposes of a motion to dismiss).

[4] On October 16, 2024, Defendants informed the Court that, on September 27, 2024, Governor Newsom signed amendments to SBs 253 and 261 into law. (Not. Amends.) These amendments took effect on January 1, 2025. (*Id.*)

- Scope 2 emissions are "indirect greenhouse gas emissions from consumed electricity, steam, heating, or cooling purchased or acquired by a reporting entity, regardless of location." (FAC ¶ 47b); Cal. Health & Safety Code § 38532(b)(4).

- Scope 3 emissions are "indirect upstream and downstream greenhouse gas emissions, other than scope 2 emissions, from sources that the reporting entity does not own or directly control and may include, but are not limited to, purchased goods and services, business travel, employee commutes, and processing and use of sold products." (FAC ¶ 47c); Cal. Health & Safety Code § 38532(b)(5).

SB 253 does not mandate entities to report avoided emissions, or so-called "Scope 4 emissions." (FAC ¶¶ 50–51, 69.)

SB 253 requires CARB to ensure that its regulations mandate entities to measure and report Scope 3 emissions "in conformance with the Greenhouse Gas protocol standards and guidance." (*Id.* ¶ 48); Cal. Health & Safety Code § 38532(c)(2)(A)(ii). The law further directs CARB to develop and adopt regulations to "minimize[] duplication of effort" by allowing entities "to submit to the emissions reporting organization . . . reports prepared to meet other national and international reporting requirements." *Id.* § 38532(c)(2)(D)(i). CARB must also develop and adopt regulations that ensure reporting entities obtain third-party assurances as to the quality and accuracy of the reported emissions. *Id.* § 38532(c)(2)(F). These emissions data will be publicly available, and CARB will ensure the creation of a public report on the disclosures. (FAC ¶ 61); Cal. Health & Safety Code §§ 38532(d)(1), (e).

SB 253 requires CARB to adopt regulations that authorize it to seek administrative penalties for "nonfiling, late filing, or other failure to meet the requirements" of the law. (FAC ¶ 63); Cal. Health & Safety Code § 38532(f)(2)(A). As of the date of the FAC, the law required CARB to adopt regulations mandating reporting entities to pay an annual fee upon filing disclosures to cover the costs of administration and implementation of the new reporting requirements. (FAC ¶ 62.) The recent amendment still requires CARB to issue regulations mandating reporting

entities pay an annual fee, but no longer makes that fee due upon the filing of disclosures.  (Not. Amends.); Cal. Health & Safety Code § 38532(c)(2)(G)(i).

**B.    Senate Bill 261**

SB 261 applies to any entity with total annual revenues over $500 million "that does business in California."  (FAC ¶ 34); Cal. Health & Safety Code § 38533(a)(4). SB 261 is expected to apply to more than 10,000 companies.  (FAC ¶ 34.)

Starting on January 1, 2026, SB 261 will mandate each applicable entity to biennially disclose on its website two categories of climate-related financial risk information, defined as information related to "material risk of harm to immediate and long-term financial outcomes due to physical and transition risks" to the business.  (*Id.* ¶¶ 36, 39); Cal. Health & Safety Code § 38533(a)(2).[5]  These two categories are:

- The entity's climate-related financial risk, in accordance with the recommended framework and disclosures contained in the Final Report of Recommendations of the Task Force on Climate-related Financial Disclosures (June 2017), (FAC ¶ 36), Cal. Health & Safety Code § 38533(b)(1)(A)(i); and

- The entity's measures adopted to reduce and adapt to climate-related financial risk disclosed in its biennial report, (FAC ¶ 37), Cal. Health & Safety Code § 38533(b)(1)(A)(ii).

SB 261 requires CARB to adopt regulations that authorize it to seek administrative penalties—no more than $50,000—for reporting entities that fail to publish a report or that make an inaccurate one.  (FAC ¶ 43); Cal. Health & Safety Code § 38533(f)(2).  SB 261 required covered entities to pay an annual fee upon filings disclosures starting on January 1, 2026.  (FAC ¶ 43).  This, too, was amended

---

[5] The legislation's full definition of "climate-related financial risk" is as follows: "material risk of harm to immediate and long-term financial outcomes due to physical and transition risks, including, but not limited to, risks to corporate operations, provision of goods and services, supply chains, employee health and safety, capital and financial investments, institutional investments, financial standing of loan recipients and borrowers, shareholder value, consumer demand, and financial markets and economic health."  Cal. Health & Safety Code § 38533(a)(2).

to require covered entities to pay an annual fee, but to no longer make it due upon the filing of disclosures.  (Not. Amends.); Cal. Health & Safety Code § 38533(c)(2)(A).

In its FAC, Plaintiffs bring four causes of action under 42 U.S.C. § 1983.  In Count I, Plaintiffs allege that SBs 253 and 261 violate the First Amendment.  (FAC ¶¶ 92–99.)  In Count II, Plaintiffs assert that the Constitution and federal law preempt SBs 253 and 261, which violate the Supremacy Clause.  (*Id.* ¶¶ 100–06.)  In Count III, Plaintiffs claim that the laws violate the U.S. Constitution's limits on extraterritorial regulation, including the dormant Commerce Clause.  (*Id.* ¶¶ 107–12.)  Lastly, in Count IV, Plaintiffs seek payment of attorneys' and expert fees.  (*Id.* ¶¶ 113–15.)  As relief, Plaintiffs seek declarations that SBs 253 and 261 are "null, void, and with no force or effect," and an injunction enjoining the State from "implementing, applying, or taking any action whatsoever to enforce" SBs 253 and 261.  (FAC, Prayer for Relief ¶ 116.)

Before discovery began, Plaintiffs moved for summary judgment on their First Amendment claim, (Mot. Summ. J., ECF No. 48), and the State separately moved to deny or defer the motion under Federal Rule ("Rule" or "Rules") of Civil Procedure 56(d), (Mot. Den. Defer Mot. Summ. J., ECF No. 57).  The Court granted the State's motion to defer Plaintiff's motion for summary judgment under Rule 56(d) and granted Plaintiffs leave to re-file their motion after the close of discovery.  (*See* Order Summ. J., ECF No. 73.)

The State now moves to dismiss Plaintiffs' Supremacy Clause and extraterritoriality claims under Rules 12(b)(1) and 12(b)(6).  (Mot.)  The Motion is fully briefed.  (Mot.; Opp'n, ECF No. 43; Reply, ECF No. 49.)[6]

---

[6] The State also requests that the Court take judicial notice of certain documents.  Because the Court reaches its conclusions without relying on those documents, it **DENIES** the request.  (Req. Judicial Notice, ECF No. 39.)

### III.    LEGAL STANDARD

**A.    Rule 12(b)(1)**

Under Rule 12(b)(1), a party may move to dismiss based on a court's lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack "accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (internal quotation marks omitted). Conversely, a factual attack "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Id*. The party attempting to invoke a court's jurisdiction bears the burden of proof for establishing jurisdiction. *See Sopcak v. N. Mountain Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995).

**B.    Rule 12(b)(6)**

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as

true and . . . in the light most favorable" to the plaintiff.  *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).    However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1034 (9th Cir. 2008).    Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).    Thus, leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## IV.    DISCUSSION

The State moves to dismiss Plaintiffs' Supremacy Clause and extraterritoriality claims on the basis that Plaintiffs lack standing, the claims are not ripe, and Plaintiffs fail to state a claim on which relief can be granted.  As it must, the Court begins with the State's arguments that Plaintiffs' claims fail on ripeness and standing grounds. Having found that Plaintiffs only have standing to bring these claims as to SB 261, the Court then turns to the State's Rule 12(b)(6) attack on that claim.

### A.    Standing and Ripeness

The State argues that Plaintiffs lack standing to pursue their Supremacy Clause and extraterritoriality claims as to SB 261 and as to SB 253's Scope 1 and Scope 2 reporting requirements because Plaintiffs fail to raise an injury in fact.  (Mot. 10–12.) At this stage, the State does not contest that Plaintiffs have standing to challenge SB 253's Scope 3 reporting requirement. (*See id.* at 12.)  But the State does argue that Plaintiffs' challenges to SB 253, including the Scope 3 reporting requirement, is not ripe for review.  (*Id.* at 8–10.)

To establish standing under Article III of the U.S. Constitution, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). An injury in fact—the only element at issue here—is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. "A related doctrine," ripeness, "is designed to 'separate matters that are premature for review because the injury is speculative and may never occur from those cases that are appropriate for federal court action.'" *Thomas v. County of Humboldt*, --- F.4th ---, No. 23-15846, 2024 WL 5243033, at *4 (9th Cir. Dec. 30, 2024) (quoting *Portman v. County of Santa Clara*, 995 F.2d 898, 902 (9th Cir. 1993)). Therefore, "[t]he constitutional component of the ripeness inquiry is often treated under the rubric of standing and, in many cases, ripeness coincides squarely with standing's injury in fact prong." *Id.* (alteration in original) (quoting *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000)).

When "standing is challenged on the basis of the pleadings," courts "accept as true all material allegations of the complaint" and "construe the complaint in favor of the complaining party." *Id.* (quoting *Pennell v. City of San Jose*, 485 U.S. 1, 7 (1988)). "[G]eneral factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss" courts "presume that general allegations embrace those specific facts that are necessary to support the claim." *Cal. Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1100 (9th Cir. 2024) (quoting *Lujan*, 504 U.S. at 561).

In the FAC, Plaintiffs allege that their members are subject to SBs 253 and 261's requirements. (*See, e.g.*, FAC ¶ 9 (alleging that "members" of the U.S. Chamber "are subject to" SBs 253 and 261), ¶ 20 (identifying Chevron Corp. and

U-Haul Holding Company as members of the U.S. Chamber, among other Plaintiffs, whose annual revenues exceed $1 billion and would thus be subject to reporting requirements under SBs 253 and 261).)  Plaintiffs also allege that "[b]oth laws compel a substantial amount of speech at significant expense" and will require companies spend "significant time and money . . . making public statements regarding climate change."  (*Id.* ¶¶ 33, 109.)  For example, with respect to SB 253, Plaintiffs allege that "[e]stimating greenhouse-gas emissions is enormously burdensome."  (*Id.* ¶ 52.)  And they allege that the laws "compel companies" to make statements "that they otherwise would not" make.  (*Id.* ¶ 93.)

Taken together, these allegations establish that, at this stage, SBs 253 and 261 would injure at least one of Plaintiffs' members.  *See Nat'l Fam. Farm Coal. v. EPA*, 966 F.3d 893, 908 (9th Cir. 2020) (holding that associational standing requires, among other things, that one of an organization's "members would otherwise have standing to sue in their own right").[7]   The State challenges this conclusion, arguing that Plaintiffs fail to allege that any of its members would incur costs associated with SBs 253 and 261 that they would not otherwise incur as part of obligations under other reporting requirements.  (*See* Mot. 11–12.)  But, as noted, Plaintiffs allege that the laws "compel companies" to make statements "that they otherwise would not" make and that the required disclosures are "unduly burdensome."  (*Id.* ¶¶ 80, 93.) These general allegations are sufficient at this stage to show that the reporting required by SBs 253 and 261 would injure at least one of Plaintiffs' members.  *See Cal. Rest. Ass'n*, 89 F.4th at 1099–100.

This is not the end of the inquiry.  A plaintiff bringing a pre-enforcement challenge must also show three things for it to be ripe for review: (1) an "intention to engage in a course of conduct arguably affected with a constitutional interest"; (2) that

---

[7] The two other requirements—that the interests the organization seeks to protect are germane to its purpose and that neither the claim asserted nor relief requested requires the participation of individual members in the lawsuit—are undisputed and satisfied here.  *See Nat'l Fam. Farm Coal.*, 966 F.3d at 908.

the conduct is "proscribed by a statute"; and (3) that there is a "credible threat of prosecution" under that statute. *Arizona v. Yellen*, 34 F.4th 841, 849 (9th Cir. 2022) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)).

### 1.    SB 261

Starting with SB 261, Plaintiffs demonstrate that this pre-enforcement challenge is ripe. As to the first factor, Plaintiffs have adequately alleged that their members' current business practices "are presently in conflict with the" statute. *City & County of San Francisco v. Trump*, 897 F.3d 1225, 1237 (9th Cir. 2018); *see also Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021) (same). Therefore, Plaintiffs "have 'articulated . . . concrete plan[s]' to violate the law." *City & County of San Francisco*, 897 F.3d at 1237 (alterations in original) (quoting *Anchorage Equal Rts. Comm'n*, 220 F.3d at 1139).

As to the second factor, Plaintiffs' members' conduct—here, not reporting information required by SB 261—will violate the law. SB 261 requires covered entities to, among other things, "prepare a climate-related financial risk report disclosing . . . its climate related-risk" and the measures it "adopted to reduce and adapt to climate-related financial risk." Cal. Health & Safety Code § 38533(b)(1)(A). And SB 261 requires CARB to "adopt regulations that authorize it to seek administrative penalties from a covered entity that fails to make the" required report. *Id.* § 38533(f)(2).

As to the third factor—whether there is a credible threat of enforcement— courts consider (1) "whether the plaintiffs have articulated a 'concrete plan' to violate the law in question," (2) "whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings," and (3) "the history of past prosecution or enforcement under the challenged statute." *Yellen*, 34 F.4th at 850 (quoting *Anchorage Equal Rts. Comm'n*, 220 F.3d at 1139). As noted, Plaintiffs have shown a concrete plan to violate SB 261. And "a specific threat is [not] necessary to demonstrate standing." *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1015 n.5

(9th Cir. 2013).   The State's failure to disavow enforcement of SB 261 favors a finding of credible threat of enforcement.  *See, e.g.*, *Cal. Trucking Ass'n*, 996 F.3d at 653 ("[T]he state's refusal to disavow enforcement of AB-5 against motor carriers during this litigation is strong evidence that the state intends to enforce the law and that [plaintiff's] members face a credible threat.")  Finally, "[w]here the challenged statute is new, as here, the history of past enforcement carries little, if any weight." *Yellen*, 34 F.4th at 850.

Plaintiffs have thus shown that they have standing to challenge SB 261 and that this challenge is ripe.

*2.    SB 253*

The foregoing analysis largely applies to SB 253.  But there is one critical difference: SB 253, on its own, does not mandate any action from any of Plaintiffs' members or any other reporting entity.  (*See* Mot. 8–10.)  Instead, SB 253 requires CARB to "develop and adopt regulations to require a reporting entity to annually disclose all of the reporting entity's scope 1 emissions, scope 2 emission, and scope 3 emissions" within the framework required in the legislation.  Cal. Health & Safety Code § 38532(c)(1).  For example, the legislation does not compel reporting entities to disclose Scope 3 emissions; rather, it requires CARB to "ensure that the regulations" it adopts require reporting entities to publicly disclose their Scope 3 emissions starting in 2027.  *Id.* § 38532(c)(2)(A)(II).  The parties have not made the Court aware of any published CARB regulations imposing any obligation on reporting entities.  (*See* Mot. 8 (stating that CARB has not yet adopted any regulations implementing SB 253.)

The absence of implementing regulations may lead a controversy to be unripe where "further development by state officials may reduce or avoid constitutional problems, or change the nature of the issues presented." *Valeria G. v. Wilson*, 12 F. Supp. 2d 1007, 1026 (N.D. Cal. 1998).  But this is not always the case.  The Ninth Circuit has held that a challenge is ripe where "it is clear that any standard required

would impermissibly burden interstate commerce." *Union Pac. R.R. Co. v. Cal. Pub. Utils. Comm'n,* 346 F.3d 851, 870 n.20, 872 n.22 (9th Cir. 2003).

It is not clear to the Court that any possible regulations CARB issues would impermissibly burden interstate commerce or violate the Supremacy Clause. And while, as Plaintiffs correctly note, SB 253 provides that CARB "shall" issue regulations that require companies to disclose certain emissions, (Opp'n 9 (citing Cal. Health & Safety Code § 38532(c)(1))), the regulations CARB issues may alter the constitutional analysis. For example, Plaintiffs' extraterritoriality claim may depend, in part, on "whether the burden on interstate commerce clearly exceeds the local benefits." *Rosenblatt v. City of Santa Monica*, 940 F.3d 439, 444 (9th Cir. 2019). The regulations CARB adopts may affect the burden on interstate commerce, and thus may determine the outcome of that claim.

Plaintiffs also have failed to show a concrete plan to violate SB 253 where the law, on its own, does not obligate Plaintiffs' members to take any action. Further, unlike with SB 261, the State's failure to disavow enforcement of SB 253 does not constitute a threat of enforcement where SB 253 does not impose any obligations on Plaintiffs' members, and Plaintiffs have not identified some other enforcement threat. The Court's role "is neither to issue advisory opinions nor to declare rights in hypothetical cases." *Anchorage Equal Rts. Comm'n*, 220 F.3d at 1138. The Court thus finds Plaintiffs' Supremacy Clause and extraterritoriality challenges to SB 253 are not ripe for review.

Even if Plaintiffs' SB 253 challenge were constitutionally ripe, the Court would decline to exercise jurisdiction on prudential grounds. In analyzing the prudential components of ripeness, courts consider "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 1141. For the reasons explained above, the issues are not fit for judicial decision. And Plaintiffs have not identified any hardship to delaying court consideration until after CARB issues regulations actually imposing requirements on Plaintiffs. *Compare County of*

*Humboldt*, 2024 WL 5243033, at *8 (finding delay in adjudication would cause hardship where plaintiffs "mod[ified] their behavior to avoid future adverse consequences").[8]

In sum, the Court has standing over Plaintiffs' Supremacy Clause and extraterritoriality challenges to SB 261. Conversely, whether labelled as standing or ripeness, the Court finds that Plaintiffs' Supremacy Clause and extraterritoriality challenges to SB 253 are not yet justiciable. Thus, the Court **GRANTS** the State's Motion as to Plaintiffs' Supremacy Clause and extraterritoriality challenges to SB 253 without prejudice.

**B.    Failure to State a Claim**

Having found that Plaintiffs have standing to challenge SB 261 on Supremacy Clause and extraterritorial grounds, and that these claims are ripe, the Court next addresses the merits.

*1.    Supremacy Clause*

In the FAC, Plaintiffs allege that "California lacks the authority to regulate greenhouse-gas emissions outside of its own borders" under the Clean Air Act and "principles of federalism inherent in the structure of" the Constitution. (FAC ¶ 105.) So, they allege, SB 261 violates the Supremacy Clause. (*Id.* ¶ 106.) The State moves to dismiss this claim under Rule 12(b)(6) as insufficiently pleaded. (Mot. 12–16.)

Under the Supremacy Clause, U.S. Const. art. VI, cl. 2, federal law preempts state law when "(1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no

---

[8] The only hardship Plaintiffs identify is that "the Court [would] be forced to rule on an emergency basis." (Opp'n 10 (alteration in original) (quoting *Comm. for Idaho's High Desert v. Collinge*, 148 F. Supp. 2d 1097, 1100 (D. Idaho 2001)).) Even if this were a hardship to the parties—and not just the Court—this harm is not sufficient for the Court to decline to exercise jurisdiction. First, Plaintiffs may have an opportunity to challenge SB 253 and CARB's regulations before the regulations go into effect. Second, the Court is capable of ruling on an emergency basis, if necessary, that would permit "the opportunity for a reasoned presentation and analysis." *Collinge*, 148 F. Supp. 2d at 1100.

room for state regulation in that field." *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010). These are known as express, conflict, and field preemption, respectively. *See id.* Regardless of the type of preemption, the "purpose of Congress is the ultimate touchstone of pre-emption analysis." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (internal quotation marks omitted).

The parties debate whether Plaintiffs identify a source of federal law that precludes SB 261. (*See* Mot. 14–16; Opp'n 11–18; Reply 4–6.) Plaintiffs point generally to the Clean Air Act and foreign affairs. (Opp'n 11–18.) They also highlight "federalism and comity principles embodied in the Constitution," including that the "basic scheme of the Constitution" permits only the federal government to regulate issues regarding "air and water in their ambient or interstate aspects." (*Id.*) The State notes Plaintiffs' failure to point to specific text in the Constitution or Clean Air Act. (Mot. 14–16; Reply 4–6.)

Before addressing this dispute, the Court must answer a more fundamental question: what does SB 261 regulate? Certainly, as this Court has already found, this law regulates speech. (Order Summ. J. 7–8.) But what, if anything, else? By their own admission, Plaintiffs' claims are premised on the assumption that, through SB 261, the State is "attempt[ing] to *regulate* greenhouse-gas emissions." (Opp'n 12 (emphasis added); *see also id.* ("Applying state law to attempt to regulate these global emissions would necessarily violate the exclusivity of federal law."); *id.* at 14 (arguing that SB 261 is a "regulation[] over global greenhouse gas emissions"); *id.* at 17 ("[T]he Clean Air Act preempts state law to the extent it purports to regulate air pollution originating out of state.").) But in the FAC, Plaintiffs acknowledge that the legislation "do[es] not directly require reductions in greenhouse-gas emissions in other states." (FAC ¶ 88.) Instead, they allege that the State enacted SB 261 "to force actual reductions" through "disclosure." (*Id.*) Specifically, they allege that the law is "aimed at stigmatizing" and "sham[ing]" companies to "pressure[] them to lower their

emissions nation- and even world-wide." (*Id.* ¶¶ 89–90; *see also* Opp'n 13–15 (discussing pressure from "third parties" (emphasis omitted)).)

Taking these allegations as true, as the Court must at this stage, Plaintiffs do not state a claim on which relief can be granted. Plaintiffs fail to cite any relevant authority to support the proposition that a disclosure regime intended to regulate emissions through third-party actions is a de facto regulatory scheme subject to preemption.

Instead, Plaintiffs point to cases concerning infringement of civil liberties under the First and Fourteenth Amendments where third-party actions implicated the law's constitutionality. (*See* Opp'n 14); *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 463 (1958) (freedom of association); *Nat'l Ass'n of Mfrs. v. SEC*, 800 F.3d 518, 530 (D.C. Cir. 2015) (freedom of speech); *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023) (equal protection).[9]

And Plaintiffs cite cases prohibiting a state from regulating emissions through the imposition of damages (rather than through a direct cap). (*See* Opp'n 12–18); *City of New York v. Chevron Corp.*, 993 F.3d 81, 85–86 (2d Cir. 2021) (liability for damages caused by global greenhouse gas emissions); *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 491, 493 (1987) (liability on an out-of-state point source that would allow states to "impose separate discharge standards"); *see also San Diego Bldg. Trades Council, Millmen's Union, Loc. 2020 v. Garmon*, 359 U.S. 236, 247 (1959) ("obligation to pay compensation" for conduct regulated by National Labor Relations Act "can be . . . a potent method of governing conduct and controlling policy"). In

---

[9] *National Association of Manufacturers* concerned speech, which, as noted, the Court has found the legislation regulates. (*See* Order Summ. J. 7–8.) Plaintiffs' citation to *Students for Fair Admissions* is further afield. They quote the Supreme Court's admonition that "what cannot be done directly cannot be done indirectly." (Opp'n 13 (quoting *Students for Fair Admissions*, 600 U.S. at 230).) But there, the Supreme Court rejected a potential workaround its ruling that would still result in universities—not indirect third parties—violating the Constitution by considering race in admissions. *Students for Fair Admissions*, 600 U.S. at 230 (permitting universities to consider an applicant's discussion of how race affected his or her life, but prohibiting universities from "simply establish[ing] through application essays or other means the regime" the Court held unlawful).

such cases, if an entity wants to "avoid all liability, then their only solution would be to" follow the de facto regulation restricting emissions. *Chevron Corp.*, 993 F.3d at 93.

SB 261 does not force this choice. It imposes no liability for failure to reduce emissions; only for failure to *disclose* climate-related financial risk and the measures adopted to reduce such risk. (*See* FAC ¶¶ 43, 63); Cal. Health & Safety Code § 38533(e)(2); *cf. Jensen Fam. Farms, Inc. v. Monterey Bay Unified Air Pollution Control Dist.*, 644 F.3d 934, 939 (9th Cir. 2011) (holding that regulation requiring owners of certain engines to register such engines by "provid[ing] information to the [government] about their engines and to pay fees" are not regulations that "involve emissions control" for purposes of preemption analysis). If Plaintiffs want to avoid liability, all they must do is make disclosures in accordance with the legislation, not reduce their emissions. The public pressure of which Plaintiffs complain is not imposed by the statute, even if it provides information that supports such campaigns. Therefore, that California enacted SB 261 "in order to stigmatize . . . companies and shape their behavior," (FAC ¶ 1), is irrelevant to the law's compliance with the Supremacy Clause.

This leaves whether the law's compelled disclosure is preempted by the Constitution or federal law. The Court thus returns to the parties' debate on whether Plaintiffs identify a source of federal law that preempts the disclosure at issue here. (*See* Opp'n 11–15.) And the Court finds that Plaintiffs fail to do so.

As discussed, SB 261 does not regulate greenhouse-gas emissions. Therefore, even if Plaintiffs are right and the "basic scheme of the Constitution" requires "that federal law alone must govern issues concerning air and water in their ambient or interstate aspects," (Opp'n 12 (internal quotation marks omitted)), this does not preempt the legislation.

In pointing to preemption based on foreign affairs, Plaintiffs cite one case tangentially related to informational disclosures. (Opp'n 13 (citing *Zschernig v.*

*Miller*, 389 U.S. 429 (1968)).)    But that case concerned conduct beyond the mere disclosure at issue here.    There, the Court invalidated probate legislation that "seems to make unavoidable judicial criticism of nations established on a more authoritarian basis than our own."    *Zschernig*, 389 U.S. at 440.    In *Zschernig*, the criticism of foreign governments and officials came from the government itself.    *See id.* It also concerned criticism of nations, not foreign companies doing business in California. *See id.*

Plaintiffs fare no better by invoking the Clean Air Act.    As to field preemption, they cite a host of laws and regulations untethered to disclosure.    (*See* Opp'n 15–16 (first citing 42 U.S.C. §§ 7521(a)(1)–(2), 7571(a)(2)(A), 7547(a)(1), (5) (greenhouse-gas emissions standards for vehicles, aircraft, and nonroad engines and vehicles); then citing 42 U.S.C. § 7411(b)(1)(A)–(B), (d) (regulation of emissions from stationary sources); and then citing 42 U.S.C. § 7545(o) (regulation of consumption and use of fossil fuels)).)    But they cite no Clean Air Act provision or regulation concerning disclosure of emissions that would support the notion that the field of the Clean Air Act encompasses mere disclosure of climate-related information and, in particular, climate risks and the measures adopted to minimize such risk.    (*See* Opp'n 15–17.)

In arguing that SB 261 fails under conflict preemption, Plaintiffs contend that SB 261's requirements conflict with Congress's decision to regulate greenhouse-gas emissions by empowering the EPA to set emissions standards through the Clean Air Act.    (Opp'n 18.)    Plaintiffs offer that "if the EPA does not set emissions limits for a particular pollutant or source of pollution, California may petition for rulemaking on the matter."    (Opp'n 18 (cleaned up) (quoting *Am. Elec. Power Co., Inc. v. Connecticut*, 564 U.S. 410, 425 (2011)).)    That may be so.    But SB 261 does not set emission limits.    (*See generally* FAC); Cal. Health & Safety Code §§ 38532, 38533.

Accordingly, Plaintiffs' Supremacy Clause claim challenging SB 261 cannot survive.    Having read SB 261 and the amendments thereto, the Court finds that Plaintiffs are unable to allege facts that could cure the deficiencies noted by the Court.

*See Carrico*, 656 F.3d at 1008 (holding that leave to amend "is properly denied . . . if amendment would be futile").  The Court thus **GRANTS** the State's Motion and dismisses Plaintiffs' Supremacy Clause claim as to SB 261 **with prejudice**.

### 2.    Extraterritoriality

The State also moves to dismiss Plaintiffs' extraterritoriality cause of action. (Mot. 16–21.)  Plaintiffs allege that SB 261 "intrude[s]" on Congress's "authority to regulate interstate and foreign commerce" and "place[s] upon interstate commerce a burden that far outweighs any benefits to" California.  (FAC ¶ 108.)  In so alleging, Plaintiffs invoke the dormant Commerce Clause.  (*See* Opp'n 18–19.)

"The primary purpose of the dormant Commerce Clause is to prohibit statutes that discriminate against interstate commerce by providing benefits to in-state economic interests while burdening out-of-state competitors." *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 947 (9th Cir. 2013) (internal quotation marks omitted) (quoting *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012)).

To aid courts' review of challenges to state law under the dormant Commerce Clause, the Supreme Court has adopted a "two-tiered approach":

> [1] When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, we have generally struck down the statute without further inquiry. [2] When, however, a statute has only indirect effects on interstate commerce and regulates evenhandedly, we have examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits.

*Rosenblatt*, 940 F.3d at 444 (quoting *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579 (1986)).  This latter tier is known as the *Pike* test.  *Id.* at 451 (citing *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970)).

### a.  First tier approach—direct regulation or discrimination

The Court begins where the parties do: the first-tier approach.  (*See* Mot. 18; Opp'n 18.)  In their Opposition, for the first time, Plaintiffs assert that the State

enacted SB 261 with a "discriminatory purpose." (Opp'n 19.) Plaintiffs' FAC is devoid of any such allegation. (*See generally* FAC.) On this basis alone, Plaintiffs' late-invocation of the first-tier approach cannot save their claim.

In any event, such a claim would fail here because plaintiffs cannot allege SB 261 discriminates against interstate commerce. *See Carrico*, 656 F.3d at 1008 (holding that leave to amend "is properly denied . . . if amendment would be futile"). SB 261 contains no "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Rosenblatt*, 940 F.3d at 448 (quoting *Or. Waste Sys., Inc. v. Dep't of Env't Quality*, 511 U.S. 93, 99 (1994)). Nor does it "effectively prevent[] the sale" of goods in other states or "erect[] an economic barrier protecting a major local industry against competition from without the state." *Id.* (quoting *Dean Milk Co. v. City of Madison*, 340 U.S. 349, 352, 354 (1951)). And the legislation does not "fix prices in other states, require states to adopt California standards, or attempt to regulate transactions conducted wholly out of state." *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1146 (9th Cir. 2015). SB 261 merely requires disclosure of information related to climate risk.

Plaintiffs' theory is as follows: the State intended to regulate greenhouse-gas emissions, but if it had tailored SB 261 to California products or businesses—such that only California products or businesses would have to comply with the law— SB 261 would have put the State at a competitive disadvantage. (Opp'n 19.) So the State "tried a workaround" to "impose costs on businesses nationwide." (*Id.*) Now, as Plaintiffs tell it, all applicable businesses would have to comply with the legislation, and California businesses will no longer be at a competitive disadvantage compared to their out-of-state peers. (*See id.*) Plaintiffs contend that, as a result, California, through SB 261, "is depriving businesses and consumers in other states of the competitive advantages they would possess otherwise freed from California's overly burdensome regulatory scheme." (*Id.* (cleaned up).)

However, SB 261 applies to both California and out-of-state businesses doing business in California equally, and as Plaintiffs allege, it imposes new reporting obligations on companies doing business in California, regardless of whether they are California companies.  Cal. Health & Safety Code § 38533(a)(4).  Therefore, Plaintiffs cannot allege that SB 261 facially discriminates against out-of-state companies.  *See Am. Fuel & Petrochemical Mfrs. v. O'Keeffe*, 903 F.3d 903, 911 (9th Cir. 2018) (finding no facial discrimination where there is no differential treatment).

Nor can Plaintiffs allege a discriminatory purpose.  Even at the motion to dismiss stage, where allegations are construed in favor of the plaintiff, courts nevertheless "assume that the objectives articulated by the legislature are actual purposes of the statute, unless an examination of the circumstances forces us to conclude that they could not have been a goal of the legislation." *Id.* at 912 (finding no discriminatory purpose based on statements by state officials, "[e]ven construing the allegations in the complaint in the light most favorable" to the plaintiff at the motion to dismiss stage).  As alleged, the purpose of the legislation was "to stigmatize . . . companies and shape their behavior."  (FAC ¶ 1.)  The legislature designed the laws "to create accountability for those" not "doing their part to tackle the climate crisis" and "to fuel pressure campaigns against businesses."  (*Id.* ¶¶ 4, 23 (internal quotation marks omitted).)  SB 261 states the legislature found that "[f]ailure of economic actors to adequately plan for and adapt to climate-related risks to their businesses and to the economy will result in significant harm to California, residents, and investors."  2023 Cal. Stat. 383 § 1(c).  Further, "mandatory and comprehensive risk disclosure requirements" "are needed" "to address the climate crisis." *Id.* § 1(j); (*see* FAC ¶ 89.)  Even assuming the purpose Plaintiffs articulate in the Opposition—to impose costs on businesses nationwide so that California companies are not at a competitive disadvantage— would be "discriminatory," neither Plaintiffs' allegations nor the objectives articulated by the legislature support such a purpose.  *O'Keeffe*, 903 F.3d at 912.  Examining the circumstances of this case, the Court is unable to

conclude that the legislature's avowed purpose could not have been a goal of the legislation.  *See id.*

Plaintiffs' cases are inapposite.  (*See* Opp'n 19–20 (citing *West Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 194–96 (1994) and *Brown-Forman*, 476 U.S. at 580).)  The legislation in *West Lynn Creamery* had the "avowed purpose" and "undisputed effect . . . to enable higher cost Massachusetts dairy farmers to compete with lower cost dairy farmers in other States."  512 U.S. at 194.  It was "[l]ike an ordinary tariff" that "effectively imposed" a "tax . . . only on out-of-state products."  *Id.*  And "[i]n *Brown-Forman*, New York required liquor distillers to affirm (on a monthly basis) that their in-state prices were no higher than their out-of-state prices."  *Nat'l Pork Producers Council v. Ross (NPPC II)*, 598 U.S. 356, 372 (2023) (citing *Brown-Forman*, 476 U.S. at 576).  The goal in *Brown-Forman* "was plain: New York sought to force out-of-state distillers to 'surrender' whatever cost advantages they enjoyed against their in-state rivals."  *Id.* (quoting *Brown-Forman*, 476 U.S. at 580).  Plaintiffs do not (nor could they) allege that the purpose of SB 261 is to benefit California businesses at the expense of out-of-state competitors.

### b. Second-tier approach—burden on interstate commerce

Next, the *Pike* test.  As noted, this is the second tier of the dormant Commerce Clause analysis concerning indirect regulation whose burden on interstate commerce clearly exceeds the local benefits.

In their Opposition, Plaintiffs appear to rely on the *Pike* test only to the extent that SB 261 has a discriminatory purpose.  (*See* Opp'n 18–20.)  Plaintiffs' arguments about the burdens and benefits of the legislation concern whether "[t]he 'practical effect[s]' of the laws confirm their 'discriminatory purpose.'"  (Opp'n 19–20 (quoting *NPPC II*, 598 U.S. at 378).)  Thus, for Plaintiffs' claim to survive, Plaintiffs must have alleged that California enacted SB 261 for a discriminatory purpose.  And as discussed, above they have made no such allegation in the FAC.

Even putting aside that Plaintiffs have so limited their claim in the Opposition, they fail to plead a *Pike* claim on which relief can be granted.  In the FAC, Plaintiffs allege three "significant burdens on interstate and foreign commerce."  (FAC ¶ 109.)

First, they assert that SB 261 "require[s] companies to spend significant time and money . . . making public statements regarding climate change."  (*Id.*)  This allegation is insufficient because "[t]he mere fact that a firm engaged in interstate commerce will face increased costs as a result of complying with state regulation does not, on its own, suffice to establish a substantial burden on interstate commerce." *Ward v. United Airlines, Inc.*, 986 F.3d 1234, 1241–42 (9th Cir. 2021); *see also Nat'l Pork Producers Council v. Ross (NPPC I)*, 6 F.4th 1021, 1032 (9th Cir. 2021) ("For dormant Commerce Clause purposes, laws that increase compliance costs, without more, do not constitute a significant burden on interstate commerce.").

Second, Plaintiffs allege that the legislation will subject companies, including those that do not business in California, "to significant political and economic pressure."  (FAC ¶ 109.)  Plaintiffs do not explain how these "pressures" are burdens on interstate commerce.  Nor do they show that these indirect pressures are among the derivative burdens courts have considered susceptible to challenge under the dormant Commerce Cause.  *See, e.g.*, *Bibb v. Navajo Freight Lines, Inc.*, 359 U.S. 520, 527 (1959) (finding statute susceptible to dormant Commerce Clause challenge where threat of "significant delay in an operation" and requirement of additional and "exceedingly dangerous" labor); *Kassel v. Consol. Freightways Corp. of Del.*, 450 U.S. 662, 674 (1981) (plurality opinion) (finding substantial burden to interstate commerce where "law may aggravate . . . the problem of highway accidents."); *Raymond Motor Transp., Inc. v. Rice*, 434 U.S. 429, 445, & n.21 (1978) (finding substantial burden where "the regulations slow the movement of goods in interstate commerce . . . .").

Third, Plaintiffs allege that the law impermissibly "build[s] up domestic commerce through burdens upon the industry of other States" by requiring disclosure

from companies that "do little business in California," but not requiring disclosure from in-state companies that fall just below the revenue threshold).  (FAC ¶ 109 (cleaned up).)    While this may be true, Plaintiffs fail to articulate how this independently *burdens* commerce, a showing required to state a *Pike* claim.  (*See* Opp'n.)

Thus, Plaintiffs fail to plausibly allege a significant burden on interstate commerce.  Absent such an allegation, Plaintiffs, by definition, cannot show that "the burden on interstate commerce clearly exceeds the local benefits."  *Rosenblatt*, 940 F.3d at 444.    Therefore, Plaintiffs' allegations about the limited, if not nonexistent, benefits of the legislation, (*see* FAC ¶ 109), cannot save its claim.  *See Nat'l Ass'n of Optometrists & Opticians*, 682 F.3d at 1156 (holding that "[i]n the absence of . . . [a] substantial burden on interstate commerce, we need not determine if the benefits of a statute are illusory"); *see also id.* ("Because the challenged laws . . . do not impose a significant burden on interstate commerce, it would be inappropriate . . . to determine the constitutionality of the challenged laws based on [the court's] assessment of the benefits of those laws and the State's wisdom in adopting them").  Accordingly, the Court **GRANTS** the State's Motion to Dismiss Plaintiffs' extraterritoriality claim as to SB 261.  However, Plaintiffs may be able to raise plausible facts that support a burden on interstate commerce sufficient to state a claim on which relief can be granted.  Therefore, the Court's dismissal as to Plaintiffs' extraterritoriality claim is **without prejudice**.

## V.    CONCLUSION

For the reasons discussed above, the Court **GRANTS** the State's Motion to Dismiss.  (ECF No. 38.)    The Court lacks jurisdiction over Plaintiffs' Supremacy Clause and extraterritoriality causes of action to the extent they challenge SB 253, and therefore **DISMISSES WITHOUT PREJUDICE** these claims as to SB 253 pursuant to Rule 12(b)(1).    Additionally, the Court **DISMISSES WITH PREJUDICE** Plaintiffs' Supremacy Clause cause of action to the extent it challenges SB 261 for

failure to state a claim pursuant to Rule 12(b)(6).  The Court also **DISMISSES WITHOUT PREJUDICE** Plaintiffs' extraterritoriality cause of action to the extent it challenges SB 261 for failure to state a claim pursuant to Rule 12(b)(6).  Thus, the Court dismisses both Counts II and III from the First Amended Complaint.

If Plaintiffs wish to amend, they must file a Second Amended Complaint no later than **twenty-one days** from the date of this Order, in which case the State shall answer or otherwise respond within **fourteen days** of the filing.  If Plaintiffs do not timely amend, the dismissal of the extraterritoriality cause of action as to SB 261 shall be deemed a dismissal with prejudice as of the lapse of the deadline to amend.

**IT IS SO ORDERED.**

February 3, 2025

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**