1   EUGENE SCALIA, SBN 151540
2       escalia@gibsondunn.com
    GIBSON, DUNN & CRUTCHER LLP
3   1700 M St. N.W.
    Washington, D.C. 20036
4   Telephone: 202.955.8500
    Facsimile: 202.467.0539
5

6   *Attorneys for Plaintiffs Chamber of*
    *Commerce of the United States of Amer-*
7   *ica, California Chamber of Commerce,*
    *American Farm Bureau Federation, Los*
8   *Angeles County Business Federation,*
    *Central Valley Business Federation,*
9   *and Western Growers Association*

10  (*Additional counsel listed on next page*)

11              IN THE UNITED STATES DISTRICT COURT

12          FOR THE CENTRAL DISTRICT OF CALIFORNIA,

13                     WESTERN DIVISION

14

15  CHAMBER OF COMMERCE OF THE          CASE NO. 2:24-cv-00801-ODW-PVC
    UNITED STATES OF AMERICA,
16  CALIFORNIA CHAMBER OF               **REPLY IN SUPPORT OF**
    COMMERCE, AMERICAN FARM             **PLAINTIFFS' MOTION FOR**
17  BUREAU FEDERATION, LOS              **PRELIMINARY INJUNCTION**
    ANGELES COUNTY BUSINESS
18  FEDERATION, CENTRAL VALLEY          **HEARING:**
    BUSINESS FEDERATION, and            Date:      May 27, 2025
19  WESTERN GROWERS ASSOCIATION,        Time:      11:00 AM
                                        Location:  Courtroom 5D
20                Plaintiffs,           Judge:     Otis D. Wright II

21        v.

22  LIANE M. RANDOLPH, in her official
    capacity as Chair of the California Air
23  Resources Board, STEVEN S. CLIFF, in
    his official capacity as the Executive
24  Officer of the California Air Resources
    Board, and ROBERT A. BONTA, in his
25  official capacity as Attorney General of
    California.
26
                  Defendants.
27

28

1    BRADLEY J. HAMBURGER
          SBN 266916
2          bhamburger@gibsondunn.com
3    SAMUEL ECKMAN
          SBN 308923
4          seckman@gibsondunn.com
     ELIZABETH STRASSNER
5          SBN 342838
          estrassner@gibsondunn.com
6    GIBSON, DUNN & CRUTCHER LLP
7    333 South Grand Ave.
     Los Angeles, CA  90071-3197
8    Telephone:  213.229.7000
     Facsimile:    213.229.7520
9
     BRIAN A. RICHMAN
10   (*pro hac vice*)
          DC Bar No. 230071
11         brichman@gibsondunn.com
12   GIBSON, DUNN & CRUTCHER LLP
     2001 Ross Ave., Suite 2100
13   Dallas, TX  75201-2923
     Telephone:  214.698.3100
14   Facsimile:    214.571.2900
15
     *Attorneys for Plaintiffs Chamber of Commerce of the United States of America, Cali-*
16   *fornia Chamber of Commerce, American Farm Bureau Federation, Los Angeles*
     *County Business Federation, Central Valley Business Federation, and*
17   *Western Growers Association*

18   STEPHANIE A. MALONEY
     (*pro hac vice*)
19         DC Bar No. 104427
          smaloney@uschamber.com
20   KEVIN PALMER
21   (*pro hac vice*)
          DC Bar No. 90014967
22         kpalmer@uschamber.com
23   CHAMBER OF COMMERCE OF THE
     UNITED STATES OF AMERICA
24   1615 H Street, NW
     Washington, D.C.  20062-2000
25   Telephone:  202.659.6000
     Facsimile:    202.463.5302
26
     *Attorneys for Plaintiff Chamber of Commerce of the United States of America*
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

<u>Page</u>

I. INTRODUCTION ........................................................................................... 1

II. ARGUMENT .................................................................................................. 2

    A.      Plaintiffs Are Likely to Prevail on the Merits........................................... 2

          1.      The State Cannot Escape First Amendment Scrutiny .................... 3

          2.      S.B. 253 and 261 Fail Under Any Level of Scrutiny ..................... 7

    B.      A Preliminary Injunction Is Warranted....................................................... 9

III. CONCLUSION ............................................................................................. 10

i

PLAINTIFFS' REPLY ISO MOT. FOR PRELIMINARY INJUNCTION
CASE NO. 2:24-CV-00801-ODW-PVC

1

## TABLE OF AUTHORITIES

2

Page(s)

3  CASES

4
Am. Beverage Ass'n v. City of San Francisco,
5      916 F.3d 749 (9th Cir. 2019) ................................................................. 8, 9

6
Am. Hosp. Ass'n v. Azar,
7      983 F.3d 528 (D.C. Cir. 2020) .................................................................. 5

8
Am. Meat Inst. v. U.S. Dep't of Agric.,
9      760 F.3d 18 (D.C. Cir. 2014) (en banc) ...................................................... 8

10
Ariix, LLC v. NutriSearch Corp.,
11      985 F.3d 1107 (9th Cir. 2021) .................................................................. 4

12
Doe v. Harris,
      772 F.3d 563 (9th Cir. 2014) .................................................................... 2

13
Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.,
14      82 F.4th 664 (9th Cir. 2023) (en banc) .................................................... 1, 9

15
First Nat'l Bank of Boston v. Bellotti,
16      435 U.S. 765 (1978) ............................................................................ 4, 7

17
Gov't Suppliers Consolidating Servs., Inc. v. Bayh,
18      975 F.2d 1267 (7th Cir. 1992) ................................................................ 10

19
IMDb.com Inc. v. Becerra,
20      962 F.3d 1111 (9th Cir. 2020) .................................................................. 4

21
McCullen v. Coakley,
      573 U.S. 464 (2014) .............................................................................. 8
22

23
Meinecke v. City of Seattle,
      99 F.4th 514 (9th Cir. 2024) .................................................................. 2, 3
24

25
National Association of Manufacturers v. SEC,
      800 F.3d 518 (D.C. Cir. 2015) .................................................................. 6

26
National Institute of Family & Life Advocates v. Becerra (NIFLA),
27      585 U.S. 755 (2018) ...................................................................... 2, 3, 4, 6, 7

28

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES
(continued)

Page(s)

*NetChoice, LLC v. Bonta*,
   113 F.4th 1101 (9th Cir. 2024) ....................................................................2, 3, 4, 5, 10

*NetChoice, LLC v. Bonta*,
   692 F. Supp. 3d 924 (N.D. Cal. 2023) ................................................................... 10

*Reed v. Town of Gilbert*,
   576 U.S. 155 (2015) .................................................................................................... 3

*Union Pac. R.R. Co. v. Cal. Pub. Utils. Comm'n*,
   346 F.3d 851 (9th Cir. 2003) ................................................................................... 10

*X Corp. v. Bonta*,
   116 F.4th 888 (9th Cir. 2024) ............................................................................. 4, 5, 6

*Zauderer v. Office of Disciplinary Counsel*,
   471 U.S. 626 (1985) ............................................................................................ 2, 4, 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

PLAINTIFFS' MEM. OF POINTS AND AUTHORITIES ISO MOT. FOR PRELIMINARY INJUNCTION
CASE NO. 2:24-CV-00801-ODW-PVC

# I. INTRODUCTION

The State asks this Court to allow enforcement of two laws that it admits "compe[l] . . . speech." Opp. 1.  The Court should decline that request and maintain the status quo, pending resolution of this litigation.

It is beyond dispute that "'[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 694 (9th Cir. 2023) (en banc).  Absent a preliminary injunction, that injury will occur.  Companies must begin speaking in mere months—on January 1, 2026—and must prepare now, including by retaining data necessary to comply with the laws.  The laws are ripe for review:  Even CARB concedes that S.B. 253's compelled speech "will still be due in 2026."  Notice of Enforcement, Dkt. 78-6 at 5.

The State claims immediate enforcement of the laws—*i.e.*, forcing companies to speak on a controversial issue—is needed to counter "misleading or inaccurate" speech.  Opp. 4.  But it provides no evidence of actual misleading or inaccurate speech, and its assertion—repeated throughout its brief (*see* Opp. 2, 4, 16)—that "96%" of emissions-related claims are "misleading or inaccurate" is entirely unsupported.  The State cites only its retained expert, Angel Hsu, who attests that certain corporate statements have supposed "indicator[s]" of "greenwashing."  Dkt. 89-18 ¶ 10-11.  But Hsu does not go so far as to assert that those statements were misleading or inaccurate, as the State claims in its brief.  In fact, Hsu's analysis is divorced from any actual assessment of falsity—for example, she deems it a sign of greenwashing when a company engages in "[a]nti-climate lobbying."  *Id.* ¶ 11(f).  The State is thus arguing that a company's entirely true statements become "misleading or inaccurate" when the company engages in First-Amendment protected activity the State disfavors.  The Court should reject this circular attempt to justify the speech compulsions of S.B. 253 and 261.

The State's Opposition falls short in other respects.  As a threshold matter, Plaintiffs have made a "colorable claim" that their First Amendment rights "are threatened"

by the mandates of S.B. 253 and 261, and the burden therefore has "shift[ed] to the [State] to justify" the laws. *Meinecke v. City of Seattle*, 99 F.4th 514, 521 (9th Cir. 2024). It has failed to do so, in at least two respects.

First, the State's attempt to avoid strict scrutiny is meritless. The State concedes that S.B. 253 and 261 "compe[l] . . . speech." Opp. 1. And this Court has already held that "'First Amendment scrutiny'" applies, and "that the primary effect—and purpose— of the laws is to compel speech" (not conduct). Dkt. 73 at 7 (quoting *NetChoice, LLC v. Bonta*, 113 F.4th 1101, 1117 (9th Cir. 2024)). The State cannot show that the limited exception from *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985), applies. The laws are subject to strict scrutiny.

Second, the State fails to show the requisite tailoring or government interest to withstand any level of scrutiny. The State professes to "protec[t] its investors, consumers, and other stakeholders from fraud or misrepresentation." Opp. 16. But even under *Zauderer*, the State must show that the laws are "no broader than reasonably necessary." *National Institute of Family & Life Advocates v. Becerra* (*NIFLA*), 585 U.S. 755, 776 (2018). It cannot make that showing. S.B. 253 and 261 require *every* covered company to speak on *every* required topic, regardless of what the company has or has not said, whether it does business with consumers, or whether it solicits investments from the public. That is because the true purpose of these laws is not consumer or investor protection, but to compel speech.

The Court should preliminarily enjoin S.B. 253 and 261.

## II. ARGUMENT

### A. Plaintiffs Are Likely to Prevail on the Merits

The parties agree on the legal standard: Plaintiffs must make a "colorable claim" that their First Amendment rights "are threatened with infringement." *Doe v. Harris*, 772 F.3d 563, 570 (9th Cir. 2014); *see* Opp. 9 (citing *Doe*). Because both S.B. 253 and 261 "compe[l] . . . speech," as the State admits, Plaintiffs easily clear that bar. Opp. 1.

1   The burden shifts to the State to justify the laws. *Meinecke*, 99 F.4th at 521. It has not

2   (and cannot).

### 1.      The State Cannot Escape First Amendment Scrutiny

4        This Court correctly rejected the State's counterintuitive assertion that laws that

5   "compe[l] . . . speech" (Opp. 1) do not "implicate the First Amendment" (Opp. 10). As

6   the Court explained, "'the forced disclosure of information, even purely commercial

7   information, triggers First Amendment scrutiny,'" because the First Amendment "pro-

8   tects 'the right to refrain from speaking at all.'" Dkt. 73 at 7 (quoting *NetChoice*,

9   113 F.4th at 1117).

10       Laws that compel speech are "presumptively unconstitutional" and strict scrutiny

11  applies. *NIFLA*, 585 U.S. at 766. The State cites Justice Breyer's concurrence in *Reed*

12  *v. Town of Gilbert*, 576 U.S. 155 (2015), to argue for lesser scrutiny. Opp. 11. But the

13  majority in *Reed*, unlike Justice Breyer, applied strict scrutiny to strike down a content-

14  based restriction on speech. *See id.* at 172. Later, in *NIFLA*, the Court rejected Justice

15  Breyer's view that "disclosure law[s]" are subject to lesser scrutiny. 585 U.S. at 782

16  (Breyer, J., dissenting) (citing *Reed*, 576 U.S. at 177-78 (Breyer, J., concurring in judg-

17  ment)). The State's reliance on a minority view confirms that its attempt to avoid strict

18  scrutiny is flawed.

19       There are two contexts in which courts have applied a lower level of scrutiny to

20  compelled disclosures. *NIFLA*, 585 U.S. at 768. Neither is applicable.

21       **a. The laws do not regulate conduct.** The first exception to strict scrutiny ap-

22  plies to "regulatio[n] of professional conduct that incidentally burden[s] speech." *NI-*

23  *FLA*, 585 U.S. at 769. This Court has already held this exception inapplicable, as

24  "[t]here can be no dispute that the primary effect—and purpose—of SBs 253 and 261 is

25  to compel speech." Dkt. 73 at 7. The State does not contest that finding. It says only

26  that the laws are "directed at a 'broader regulatory apparatus' governing the disclosure

27  of commercial data." Opp. 10. But as in *NetChoice*, none of this changes the fact that

28  the "primary"—indeed, *only*—"effect of" the laws "is to compel speech." 113 F.4th at

1117.  This, in and of itself, "distinguish[es]" the laws "from statutes where the com-

pelled speech was 'plainly incidental'" to regulation of conduct.  *Id.*

      **b. *Zauderer* is inapplicable.**  The second exception to strict scrutiny, articulated

in *Zauderer*, also does not apply.  To invoke *Zauderer*, the State must prove the com-

pelled speech is (1) commercial; (2) purely factual; *and* (3) uncontroversial.  *NIFLA*,

585 U.S. at 768.  The State makes none of these showings—for obvious reasons.  *Zau-

derer* applies to rote factual statements (*e.g.*, "the product contains X"); no court has

applied it to justify the full-blown reports or forced speech on vague topics like "climate-

related financial risk," as required here.

      *First*, the speech is not commercial.  The "'usual definition' of commercial

speech" is "speech that does no more than propose a commercial transaction."  *X Corp.

v. Bonta*, 116 F.4th 888, 901 (9th Cir. 2024).  The State does not argue that the compelled

speech here satisfies this definition, which has been dispositive elsewhere.  *E.g.*,

*IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1122 (9th Cir. 2020) ("Because IMDb's pub-

lic profiles do not 'propose a commercial transaction,' we need not reach the *Bolger*

factors.").

      Beyond failing the "usual definition," none of the "[t]hree characteristics"

(Opp. 11) typically found in commercial speech are present.  The compelled disclosures

"are not advertisements."  *X Corp.*, 116 F.4th at 901; *cf.* Opp. 12 ("formal 'advertise-

ment' is not required").  Nor do companies have an economic motivation to provide

them.  *X Corp.*, 116 F.4th at 901.  And they do not "refer to a particular product."

*IMDb.com*, 962 F.3d at 1122; *cf.* Opp. 12 (they concern "the company, rather than a

product").  The State offers no case finding speech to be commercial when it falls outside

the usual definition *and* is missing each of these three characteristics.  Indeed, the Ninth

Circuit cases that held speech to be commercial outside proposing a commercial trans-

action "all" involved speech "communicat[ing] the terms of an actual or potential trans-

action."  *X Corp.*, 116 F.4th at 901.  The same is true of *every* case the State cites.

Opp. 12.  *E.g.*, *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1116-17 (9th Cir. 2021)

("refers to specific products," designed to "ratchet up sales"); *Am. Hosp. Ass'n v. Azar*, 983 F.3d 528, 542 (D.C. Cir. 2020) ("disclose prices before rendering services"). The compelled speech here, by contrast, is "disconnected from any economic transaction." *NetChoice*, 113 F.4th at 1119 (applying strict scrutiny and affirming preliminary injunction of California compelled-speech law).

The State also claims that some covered companies already make statements about "emissions and sustainability practices." Opp. 12. Whether they do is irrelevant to the First Amendment analysis, which concerns whether the "compelled disclosures" are commercial speech, not prior company statements. *X Corp.*, 116 F.4th at 901 (holding state-mandated reports are not commercial speech, even if the speech they are "*about*" "may be commercial speech").

*Second*, the compelled speech here is not purely factual. The State incorrectly contends that companies "need only" disclose "existing" climate policies. Opp. 15. In truth, S.B. 261 mandates that companies "shall" determine their "climate-related financial risk, in accordance with the recommended framework." *Id.* § 38533(b)(1)(A)(i). The law, by incorporating the TCFD framework (§ (b)(1)(A)(i)), then *requires* companies to "asses[s] potential impacts" of "climate-related issues," even when those impacts are "not . . . clear." Dkt. 48-23 at 8. For example, S.B. 261 compels companies to discuss the effects of "[t]echnological improvements" that "support the transition to a lower-carbon" "economic system," even though the nature and timing of those improvements is "uncertai[n]." *Id.* at 6. The law further requires companies to discuss the effects of "[p]olicy actions around climate change"—*e.g.*, hypothetical carbon taxes—even though (again) the "nature and timing of [those] policy change[s]" is uncertain. *Id.* at 5. None of this is "purely factual."

S.B. 253 similarly compels non-factual speech. The State asserts that the law is consistent with "widely accepted" protocols for emissions data. Opp. 1. But as the State's evidence reveals, virtually no company calculates emissions the way S.B. 253 demands. *See* Lyon Decl. (Dkt. 90) ¶¶ 34, 37-38 (complaining about what companies

supposedly "fail to report").  Moreover, the law requires companies to claim as "their" own the emissions of *others*—a "normative" judgment (Lyon Ex. 28 (Dkt. 90-28) at 615) about who should or should not be "excused" (Lyon Decl. (Dkt. 90) ¶ 40) for climate change.  That is not merely factual.

*Third*, the compelled disclosures of climate-related risks and emissions calculations are "anything but an 'uncontroversial' topic." *NIFLA*, 585 U.S. at 769.  The State does not deny the "policy responses to climate change are the subject of vigorous political debate." Dkt. 52 at 21.  Instead, it claims neither law requires a company to express "its policy views." Opp. 13.  But to comply with S.B. 261 and its implementing instructions, companies must opine on, *e.g.*, the "third order effects" of government "carbon-pricing mechanisms" on supply chains (Dkt. 48-23 at 5 & n.21) and "financial markets and economic health" (S.B. 261 § 38533(a)(2)).  And as noted, S.B. 253 requires companies to claim as "their" own the emissions of others—all "sensitive, constitutionally protected speech." *X Corp.*, 116 F.4th at 902.

The State attempts to distinguish *National Association of Manufacturers v. SEC*, 800 F.3d 518, 530 (D.C. Cir. 2015) by arguing its laws are not "ideological and intertwined with moral responsibility."  Opp. 14.  But S.B. 253's very title—"Climate Corporate Data Accountability Act"—demands "[a]ccountability," and the law is designed to hold companies "responsib[le]" for others' emissions.  Lyon Decl. (Dkt. 90) ¶ 40. The State's purpose is to compel companies to accept blame for "increas[ing] the state's climate risk" through "supply chain activities" (S.B. 253 § 1(g)) for which the State thinks companies bear moral responsibility, *see* Lyon Decl. (Dkt. 90) ¶ 40; and to attract protests, *see* Dkt. 48-5 at 3:7-9 (Sen. Wiener) ("[w]e need to make sure that the public actually knows who's green and who isn't").  The compelled speech here is anything but "uncontroversial."

Strict scrutiny applies.

### 2.    S.B. 253 and 261 Fail Under Any Level of Scrutiny

The State cannot show the requisite tailoring or government interest to withstand any level of scrutiny.

**Tailoring.**  Even under *Zauderer*, the State fails to show the laws are "no broader than reasonably necessary." *NIFLA*, 585 U.S. at 776.  A tailored law might require companies to disclose material information related to, and in conjunction with, statements the State has identified as misleading, or specific transactions for which "investors and consumers" need "to make informed judgments."  Opp. 16-17.  There is no such tailoring here.  Even if "96% of companies with emissions targets" were "engag[ing] in misleading speech" (Opp. 16), the State's response would still be "wholly disconnected" from its asserted interest.  *NIFLA*, 585 U.S. at 777.  The laws require *every* covered company to speak on *every* covered topic "no matter what" the company said (or did not say) about the unrelated topic of emissions targets.  *NIFLA*, 585 U.S. at 777; *see* Dkt. 48-23 at 5 (requiring companies to opine on whether future, hypothetical government regulation of "water efficiency measures" will have a detrimental effect on global supply chains).  This is not tailoring.

The State incorrectly claims (Opp. 18) the laws "are narrowly tailored" to "those firms most likely to be subject to outside investment."  But the laws are not limited to companies seeking investments, and if the State had truly been seeking to protect investors (Opp. 18), or to "infor[m]" "consumers" about specific "economic choices" (Opp. 17), it might have applied the laws only to companies seeking investors or to those engaging in transactions for which consumers need the information the laws require.  *Cf. First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 794 (1978) (statute is overinclusive because it covers all corporations).  Instead, the laws require *every* company to speak, even if it has *no* investors, and even if *no* consumer has a need for compelled speech on whether, *e.g.*, "emerging technologies" in "battery storage" will change the company's future "distribution costs."  Dkt. 48-23 at 6.

It is the State's burden to demonstrate that alternative measures "would fail to achieve the [State's] interests." *McCullen v. Coakley*, 573 U.S. 464, 495 (2014).  Yet the State does not cogently explain why it could neither provide relevant information itself nor rely on existing anti-fraud laws.  It says it could not compile its own reports due to a "lack" of information.  Opp. 18.  As Plaintiffs showed, however, 90% of a company's emissions can be estimated using readily available, public information, Dkt. 48-22 at 7; the State cites no evidence to the contrary, *cf. Am. Beverage Ass'n v. City of San Francisco*, 916 F.3d 749, 757 (9th Cir. 2019) ("on this record, Defendant has not carried its burden").  And while it tries to downplay the effectiveness of existing antifraud laws (Opp. 17), the State cannot carry its burden because it presents no evidence that it has *used* those existing laws.  *See McCullen*, 573 U.S. at 494.

***Governmental Interest.***  The State cites (Opp. 18) "interests of investors and consumers."  But it is "not enough for the Government to say simply that it has a substantial interest in giving [individuals] information."  *Am. Meat Inst. v. U.S. Dep't of Agric.*, 760 F.3d 18, 31 (D.C. Cir. 2014) (en banc) (Kavanaugh, J., concurring).  Notably, the SEC has abandoned its defense of a related rule, SEC Letter, *Iowa v. SEC*, No. 24-1522 (8th Cir. Mar. 27, 2025), partly because the compelled disclosures were not material to investors, SEC Letter (Feb. 11, 2025).

The State relies heavily on its assertion that "96% of companies with emissions targets engage in misleading speech."  Opp. 16 (citing Hsu Decl. (Dkt. 89-18) ¶ 10); *see also id.* at 2, 4.  But its own evidence fails to support that claim.  Hsu says only that 96% of companies with emissions targets "show signs of greenwashing"—not that they have made false or misleading speech.  Dkt. 89-18 ¶ 7.  Hsu does not identify a single false or misleading statement.  And her methodology lays bare the State's true, censorious motivations.  She says a company "show[s] signs" of greenwashing if it, among other things, "*engages in lobbying activity that undermines climate action*."  *Id.* ¶¶ 7, 11(f) (emphasis added).  That leads to an indefensible conclusion: The State deems "misleading or inaccurate" (Opp. 4) statements that are completely true, so long as the company

Gibson, Dunn & Crutcher LLP

PLAINTIFFS' REPLY ISO MOT. FOR PRELIMINARY INJUNCTION
CASE NO. 2:24-CV-00801-ODW-PVC

1    separately engages in "lobbying activity" (Dkt. 89-18 ¶ 11(f)) that the State deems prob-

2    lematic—presumably including lobbying against the legislation at issue here.[1]  Deterring

3    companies from engaging in First Amendment-protected petitioning that the State dis-

4    likes is hardly a valid governmental interest.

5    **B.    A Preliminary Injunction Is Warranted**

6        The remaining preliminary-injunction factors also support immediate relief.  The

7    State concedes (Opp. 22) that where the government is a party, the balance of equities

8    and public interest "merge."  Both support relief:  "'[T]hat [Plaintiffs] have raised seri-

9    ous First Amendment questions compels a finding that . . . the balance of hardships tips

10   sharply in [Plaintiffs'] favor.'"  *Am. Beverage Ass'n*, 916 F.3d at 758.  Further, the State

11   makes no argument that the public would be harmed if the laws' requirements were

12   stayed pending judgment on the merits.  The equities thus fully favor a preliminary in-

13   junction.

14       Moreover, without an injunction, Plaintiffs will be irreparably injured.  The State

15   nowhere disputes that "'[t]he loss of First Amendment freedoms, for even minimal pe-

16   riods of time, unquestionably constitutes irreparable injury.'"  *Fellowship of Christian*

17   *Athletes*, 82 F.4th at 694.  Instead, the State suggests (Opp. 20) that Plaintiffs are not

18   facing impending harm, because this "case will likely be resolved before Plaintiffs must

19   speak."  That is wrong.  Briefing on summary judgment will not be completed until June

20   2026 (Dkt. 87 at 4), but under S.B. 261, companies must begin to speak six months ear-

21   lier, "[o]n or before January 1, 2026."  And CARB has confirmed that reports under

22   S.B. 253 "will still be due in 2026" (Notice of Enforcement, Dkt. 78-6 at 5), as the law

23   requires CARB's regulations to be finalized by July 2025, *see* S.B. 219 § 1 (2024), a

24   year before summary-judgment briefing concludes.

---

26   [1]    Hsu identifies several other supposed signs of "greenwashing," including that a
     company does not disclose Scope 3 emissions or "limits its emissions inventory to only
27   carbon dioxide."  Dkt. 89-18 ¶ 11.  The State would have this Court conclude that such
     companies have made misleading or inaccurate speech, even though Hsu's indicators do
28   not address the truth or falsity of any statements.

1    "One does not have to await the consummation of threatened injury to obtain pre-

2    ventive relief.  If the injury is certainly impending, that is enough."  *NetChoice, LLC v.*

3    *Bonta*, 692 F. Supp. 3d 924, 964 (N.D. Cal. 2023), *aff'd in relevant part*, 113 F.4th 1101

4    (9th Cir. 2024).

5        Here, the injury *is* certainly impending, even if CARB "has not yet issued" the

6    regulations for S.B. 253.  Opp. 20.  It must—soon.  S.B. 219 § 1 (2024).  Companies are

7    *already* incurring compliance costs (Mot. 19-20), as the State is telling them to do "as

8    quickly as possible" (Notice of Enforcement, Dkt. 78-6 at 6).  And CARB has no dis-

9    cretion as to what the regulations "shall" say, anyway.  *E.g.*, S.B. 253 § 38352(c)(1).

10   There is "no need to wait for regulations"; "what the statutes authorize is clear"—and

11   unconstitutional.  *Gov't Suppliers Consolidating Servs., Inc. v. Bayh*, 975 F.2d 1267,

12   1276 (7th Cir. 1992); *see Union Pac. R.R. Co. v. Cal. Pub. Utils. Comm'n*, 346 F.3d 851,

13   872 n.22 (9th Cir. 2003).

14                              **III.  CONCLUSION**

15       The Court should preliminarily enjoin Defendants from implementing, applying,

16   or taking any action to enforce S.B. 253 or 261.

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

PLAINTIFFS' REPLY ISO MOT. FOR PRELIMINARY INJUNCTION
CASE NO. 2:24-CV-00801-ODW-PVC

1

2  DATED: April 21, 2025

3

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

4

5

6

By:  */s/ Bradley J. Hamburger*
Eugene Scalia, SBN 151540
Bradley J. Hamburger, SBN 266916
Samuel Eckman, SBN 308923
Brian A. Richman (*pro hac vice*)
Elizabeth Strassner, SBN 342838

7

8

9

*Attorneys for Plaintiffs Chamber of Commerce of the United States of America, California Chamber of Commerce, American Farm Bureau Federation, Los Angeles County Business Federation, Central Valley Business Federation and Western Growers Association*

10

11

12

13

CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA

14

15

Stephanie Maloney (*pro hac vice*)
Kevin Palmer (*pro hac vice*)

16

17

*Attorneys for Plaintiff Chamber of Commerce of the United States of America*

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

PLAINTIFFS' REPLY ISO MOT. FOR PRELIMINARY INJUNCTION
CASE NO. 2:24-CV-00801-ODW-PVC

1

## CERTIFICATE OF COMPLIANCE

2       The undersigned, counsel of record for Plaintiffs Chamber of Commerce of the

3 United States of America, California Chamber of Commerce, American Farm Bureau

4 Federation, Los Angeles County Business Federation, Central Valley Business Federa-

5 tion and Western Growers Association, certifies that this brief contains 3,297 words,

6 which complies with the word limit of this Court's Rule VII.A.3.

7 DATED: April 21, 2025           Respectfully submitted,

8                        GIBSON, DUNN & CRUTCHER LLP

9

10                        By: */s/ Bradley J. Hamburger*
                       Eugene Scalia, SBN 151540

11                        Bradley J. Hamburger, SBN 266916
                       Samuel Eckman, SBN 308923

12                        Brian A. Richman (*pro hac vice*)
                       Elizabeth Strassner, SBN 342838

13

14                        *Attorneys for Plaintiffs Chamber of Commerce*
                       *of the United States of America, California*

15                        *Chamber of Commerce, American Farm Bureau*
                       *Federation, Los Angeles County Business Fed-*

16                        *eration, Central Valley Business Federation,*
                       *and Western Growers Association*

17

18                        CHAMBER OF COMMERCE OF THE
                       UNITED STATES OF AMERICA

19

20                        Stephanie Maloney (*pro hac vice*)
                       Kevin Palmer (*pro hac vice*)

21

22                        *Attorneys for Plaintiff Chamber of Commerce*
                       *of the United States of America*

23

24

25

26

27

28