EUGENE SCALIA, SBN 151540
  escalia@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1700 M St. N.W.
Washington, D.C. 20036
Telephone:  202.955.8500
Facsimile:   202.467.0539

*Attorneys for Plaintiffs Chamber of Commerce of the United States of America, California Chamber of Commerce, American Farm Bureau Federation, Los Angeles County Business Federation, Central Valley Business Federation, and Western Growers Association*

(*Additional counsel listed on next page*)

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA,

WESTERN DIVISION

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, CALIFORNIA CHAMBER OF COMMERCE, AMERICAN FARM BUREAU FEDERATION, LOS ANGELES COUNTY BUSINESS FEDERATION, CENTRAL VALLEY BUSINESS FEDERATION, and WESTERN GROWERS ASSOCIATION, <br><br>  Plaintiffs, <br><br>  v. <br><br> LIANE M. RANDOLPH, in her official capacity as Chair of the California Air Resources Board, STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board, and ROBERT A. BONTA, in his official capacity as Attorney General of California. <br><br>  Defendants. | CASE NO. 2:24-cv-00801-ODW-PVC <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR INJUNCTION PENDING APPEAL** <br><br> **HEARING:** <br> Date: September 15, 2025 <br> Time: 1:30 pm <br> Location: Courtroom 5D <br> Judge: Otis D. Wright II |

BRADLEY J. HAMBURGER
   SBN 266916
   bhamburger@gibsondunn.com
SAMUEL ECKMAN
   SBN 308923
   seckman@gibsondunn.com
ELIZABETH STRASSNER
   SBN 342838
   estrassner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Ave.
Los Angeles, CA  90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

BRIAN A. RICHMAN
(*pro hac vice*)
   DC Bar No. 230071
   brichman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Ave., Suite 2100
Dallas, TX  75201-2923
Telephone:  214.698.3100
Facsimile:  214.571.2900

*Attorneys for Plaintiffs Chamber of Commerce of the United States of America, California Chamber of Commerce, American Farm Bureau Federation, Los Angeles County Business Federation, Central Valley Business Federation, and Western Growers Association*

STEPHANIE A. MALONEY
(*pro hac vice*)
   DC Bar No. 104427
    smaloney@uschamber.com
KEVIN PALMER
(*pro hac vice*)
   DC Bar No. 90014967
   kpalmer@uschamber.com
CHAMBER OF COMMERCE OF THE
UNITED STATES OF AMERICA
1615 H Street, NW
Washington, D.C.  20062-2000
Telephone:  202.659.6000
Facsimile:  202.463.5302

*Attorneys for Plaintiff Chamber of Commerce of the United States of America*

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT ...................................................................................................... 3

    A.    Plaintiffs' Appeal Raises Serious Questions on the Merits ....................... 3

        1.    The State ducks the threshold question: what test makes the speech compelled by SB 253 and SB 261 "commercial speech." ............................................................................................ 3

        2.    *Zauderer* does not apply—and the State cannot rewrite its limits. ................................................................................................. 5

        3.    The lack of tailoring independently raises serious questions. ......... 6

    B.    The Equities Strongly Favor Plaintiffs ........................................................ 8

    C.    Plaintiffs Seek Narrow Relief ..................................................................... 10

III. CONCLUSION ................................................................................................ 10

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*44 Liquormart, Inc. v. Rhode Island*,
  517 U.S. 484 (1996) .................................................................................................. 7

*All. for Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) ................................................................................. 1

*Am. Beverage Ass'n v. City & County of San Francisco*,
  2016 WL 9184999 (N.D. Cal. June 7, 2016) ...................................................... 1, 2

*Am. Beverage Ass'n v. City & County of San Francisco*,
  916 F.3d 749 (9th Cir. 2019) ................................................................................... 9

*Am. Meat Inst. v. USDA*,
  760 F.3d 18 (D.C. Cir. 2014) .................................................................................. 7

*Am. Trucking Ass'ns v. City of Los Angeles*,
  2010 WL 4313973 (C.D. Cal. Oct. 25, 2020) ......................................................... 1

*Bolger v. Youngs Drug Prods. Corp.*,
  463 U.S. 60 (1983) .................................................................................................. 4

*Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*,
  29 F.4th 468 (9th Cir. 2022) ................................................................................... 1

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
  447 U.S. 557 (1980) ................................................................................................ 7

*CTIA – The Wireless Ass'n v. City of Berkeley*,
  928 F.3d 832 (9th Cir. 2019) .................................................................................. 5

*Green v. Miss U.S. of Am., LLC*,
  52 F.4th 773 (9th Cir. 2022) ................................................................................... 7

*IMDb.com Inc. v. Becerra*,
  962 F.3d 1111 (9th Cir. 2020) ............................................................................ 4, 6

*Meinecke v. City of Seattle*,
  99 F.4th 514 (9th Cir. 2024) ................................................................................... 2

*Nat'l Inst. of Family & Life Advocates v. Becerra*,
  585 U.S. 755 (2018) ........................................................................................ 5, 6, 8

*Nat'l Insts. of Health v. Am. Pub. Health Ass'n*,
  606 U.S. —, 2025 WL 2415669 (2025) ................................................................. 9

*NetChoice, LLC v. Bonta*,
  113 F.4th 1101 (9th Cir. 2024) ........................................................................... 6, 9

*Pharm. Rsch. & Mfrs. of Am. v. Stolfi*,
  — F.4th —, 2025 WL 2448851 (9th Cir. 2025) .................................................. 4, 6

Page(s)

*X Corp. v. Bonta*,
  116 F.4th 888 (9th Cir. 2024) ........................................................................... 4, 9

*Youth 71Five Ministries v. Williams*,
  2024 WL 3749842 (9th Cir. Aug. 8, 2024) ......................................................... 3, 8

*Zauderer v. Office of Disciplinary Counsel*,
  471 U.S. 626 (1985) ............................................................................................. 5

**Statutes**

SB 253 ......................................................................................................................... 6

SB 261 ..................................................................................................................... 2, 8

**Other Authorities**

*Judicial Business of the United States Courts 2024*, tbl. B-4A (2024),
  https://tinyurl.com/mv44a32z ............................................................................... 9

Press Release, (Jan. 26, 2022), https://sd11.senate.ca.gov/news/senator-
  wieners-climate-corporate-accountability-act-passes-senate .............................. 2

# I. INTRODUCTION

The State's opposition is based on a false premise: that this motion is a second bite at the preliminary-injunction apple. It is not. Federal Rule of Civil Procedure 62(d) and Federal Rule of Appellate Procedure 8(a)(1)(C) expressly "contemplat[e] the possibility that the district court may grant an injunction pending appeal from an interlocutory order denying preliminary injunction." *Am. Beverage Ass'n v. City of San Francisco*, 2016 WL 9184999, at *2 (N.D. Cal. June 7, 2016). These rules exist to preserve the status quo and provide the opportunity for robust, considered appellate review. As other courts have recognized, an injunction pending appeal "may be appropriate, even if the Court believed its analysis in denying preliminary injunctive relief is correct." *Id.* at *2. And the governing standard for an appeal-only injunction is flexible: Plaintiffs need only show "serious questions" and that the balance of hardships tips sharply in their favor. *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011); *see Am. Trucking Ass'ns v. City of Los Angeles*, 2010 WL 4313973, at *1 & n.3 (C.D. Cal. Oct. 25, 2020) (granting injunction pending appeal following denial of injunctive relief); *Am. Beverage*, 2016 WL 9184999, at *2 (same). That standard applies with particular force in First Amendment cases, like this one, where irreparable harm is "relatively easy to establish." *Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 482 (9th Cir. 2022).[1]

Plaintiffs' members will be compelled to speak on or before January 1, 2026, and this speech cannot be undone if the Ninth Circuit later reverses on appeal. Because this injury is irreparable and a decision on the pending appeal before January 1 is improbable, this Court should grant an injunction pending appeal to avoid forcing the Ninth Circuit to expedite consideration of the serious issues the case presents.

---

[1] Plaintiffs respectfully request a ruling by September 15, 2025, so Plaintiffs may promptly seek relief from the Ninth Circuit if this Court declines to grant an injunction pending appeal. Plaintiffs intend to seek an injunction pending appeal from the Ninth Circuit by September 19, absent relief from this Court.

   The seriousness of those issues is underscored by a striking omission in the State's opposition: It never squarely tells the Court what test should govern whether the disclosures compelled by SB 253 and SB 261 are commercial speech, nor explains how the laws satisfy that test. That omission is not a minor oversight—it concerns an issue at the heart of the First Amendment analysis. The State bears the burden of justifying its speech-restrictive laws. *See Meinecke v. City of Seattle*, 99 F.4th 514, 521 (9th Cir. 2024). Yet the State hedges and equivocates, waving away established tests as too "narrow" or "formulaic" (Opp. 9), without ever committing to a specific standard and then explaining how that standard applies and justifies the two laws. The State's failure to address this crucial threshold issue is proof by itself that this Court should let the Ninth Circuit decide Plaintiffs' appeal before these mandates take effect.

   The appropriateness of an injunction is reinforced by the unprecedented nature of these laws. An injunction pending appeal is "'frequently issued where the trial court is charting a new and unexplored ground.'" *Am. Beverage*, 2016 WL 9184999, at *2. SB 253 and SB 261 are first-of-their-kind laws, by every account. The Legislature touted SB 253 as "groundbreaking legislation" to "reach far beyond California's borders." Dkt. 48-9, at 5. Senator Wiener called it "the first of its kind." Press Release (Jan. 26, 2022), https://sd11.senate.ca.gov/news/senator-wieners-climate-corporate-accountability-act-passes-senate. The parties' briefs also make clear these statutes compel speech in a way no court has previously upheld. *See* Opp. 12 (citing no case upholding speech compulsions untethered to terms of a transaction).

   The balance of equities tips heavily in Plaintiffs' favor. Absent relief, Plaintiffs' members will be compelled to speak "[o]n or before January 1, 2026" and must devote scarce resources now to prepare for compliance with both statutes. This speech is compelled *so that* companies will be exposed to public criticism and pressure on a politically-fraught topic. Meanwhile, the State cannot plausibly claim harm from a short pause, having missed its own deadlines for issuing regulatory guidance. The State dismisses the imminent injury here as "only" "constitutional." Opp. 8. Yet constitutional injury is

no technicality to be summarily brushed aside; it is the paradigmatic irreparable harm. *See, e.g.*, *Youth 71Five Ministries v. Williams*, 2024 WL 3749842, at *4 (9th Cir. Aug. 8, 2024) (granting injunction pending appeal).

This Court should preserve the status quo so the Ninth Circuit can decide these novel First Amendment issues before the harm becomes irreversible, and without the necessity of emergency proceedings.

## II. ARGUMENT

The State's opposition reinforces why interim relief is warranted. On the merits, it never articulates a coherent answer to the crucial threshold question of this case: why, as the State maintains, the speech these laws regulate is "commercial." Opp. 10–11. The State's fallback rationales—truth-in-marketing, investor interest, and emissions reduction—are either already rejected by this Court or unprecedented in compelled-speech doctrine. The laws are not tailored to those interests, in any event.

On the equities, the State fares no better. It dismisses imminent First Amendment harm as "only" "constitutional," ignores this Court's finding that compliance steps must begin now, and implausibly suggests that the Ninth Circuit will resolve the appeal on the merits before January 1. Opp. 3, 8.

### A. Plaintiffs' Appeal Raises Serious Questions on the Merits

Plaintiffs' appeal raises serious questions regarding the constitutionality of novel statutes that compel speech. Fighting that conclusion, the State either sidesteps controlling precedent or offers arguments that confirm that the issues here remain unsettled and substantial—precisely the circumstances that warrant interim relief pending appeal.

#### 1. The State ducks the threshold question: what test makes the speech compelled by SB 253 and SB 261 "commercial speech."

The most striking feature of the State's opposition is what's absent: a test for commercial speech that the State contends applies in this case and which it then illustrates is met by the laws at issue. The State acknowledges the three *Bolger* factors: (1) whether the speech is an advertisement, (2) whether it refers to a specific product, and (3) whether

the speaker has an economic motivation for engaging in the speech. *See Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66–67 (1983). Yet the State waves away all these standards as too "narrow" or "formulaic," without ever forthrightly saying what test applies and how the speech at issue meets it. Opp. 9. The State simply asserts that, "[i]n any event," the disclosures meet "the traditional definition" of commercial speech. *Id.* at 11. But it never recites that definition nor shows how publishing emissions information and lengthy narratives does "*no more* than propose a commercial transaction." *X Corp. v. Bonta*, 116 F.4th 888, 901 (9th Cir. 2024) (emphasis added). In fact, those voluminous disclosures propose no commercial transaction *at all*.

This gap in the State's argument is especially telling given this Court's preliminary-injunction order. The Court recognized that two *Bolger* factors are not met here: the laws "do not compel speech in the form of advertisements" (Dkt. 112 (Order) at 19) or "refer to a particular product" (*id.* at 17). The State does not grapple with that conclusion, nor identify a single case finding speech to be commercial when two of the three *Bolger* factors were absent. Indeed, in *IMDb.com Inc. v. Becerra*, 962 F.3d 1111 (9th Cir. 2020), the Ninth Circuit held that the absence of the first two factors (advertising and product reference) *precludes* a finding of commercial speech, regardless of economic motivation.

The State relies on a generalized "economic motive" (Opp. 11), but the laws fail that (insufficient) factor too. As the Ninth Circuit confirmed, it is the compelled disclosures themselves that must be tested under the First Amendment, and companies produce compelled reports "out of legal obligation, *not economic motivation*." *Pharm. Rsch. & Mfrs. of Am. v. Stolfi*, — F.4th —, 2025 WL 2448851, at *10 (9th Cir. 2025) (emphasis added); *see also* Order 23 (applying First Amendment test to "compelled disclosures" themselves, not other speech). Whether certain companies already voluntarily "speak publicly about their emissions and sustainability practices" (Opp. 11) is irrelevant.

The State deepens its quandary by citing *Stolfi* for the proposition that commercial-speech disclosures are those that "provid[e] parties to 'actual or potential'

commercial transactions with information about those transactions." Opp. 11. SB 253 and SB 261 do not meet that test, either. They do not provide information about any *transaction*, but rather compel disclosures of company-wide emissions and forward-looking risk narratives "disconnected from any economic transaction." *Stolfi*, 2025 WL 2448851, at *11. And the State has no support for arguing that speech mandates "pertain[ing] to the operations of the business" in general, untethered to specific products or services (Opp. 13 n.3), qualify as commercial speech.

### 2. *Zauderer* does not apply—and the State cannot rewrite its limits.

The State's opposition underscores why *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985), cannot save these laws, and why, at a minimum, whether *Zauderer* applies is a serious question.

*First*, the State denies that *Zauderer* has any threshold limitation to disclosures tied to a product or service, characterizing courts' statements in that regard as mere descriptions of the facts of the case rather than the laws' requirements. Opp. 12–13. The State is wrong. The Supreme Court and the Ninth Circuit have both stated that *Zauderer* applies only to compelled disclosures of "purely factual and uncontroversial information about the terms under which [a] . . . servic[e] will be available." *Nat'l Inst. of Family & Life Advocates v. Becerra* (*NIFLA*), 585 U.S. 755, 768 (2018). In *NIFLA,* the absence of a connection to the terms of service was a principal reason the ordinance was struck down. *Id.* at 769 (*Zauderer* "does not apply here"; the disclosure "in no way relates to the services that licensed clinics provide"). The Ninth Circuit also has been explicit on this point: *Zauderer* "require[s] that the compelled speech relate to the product or service that is provided." *CTIA – The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 845 (9th Cir. 2019). As Plaintiffs have shown, every law upheld under *Zauderer* fits that description. Dkt. 97 at 4–5.

SB 253 and SB 261 do not meet this test. The laws compel company-wide statements—aggregated emissions data and climate-risk narratives—not information about the terms, price, or characteristics of any transaction, product, or service. As in

*NetChoice, LLC v. Bonta*, these disclosures are "disconnected from any economic transaction." 113 F.4th 1101, 1119 (9th Cir. 2024).

*Second*, even if this threshold were met, the State cannot dispute a serious question exists as to whether these laws compel speech that is purely factual and uncontroversial. This Court already concluded SB 261 falls outside *Zauderer* because it forces companies to publish forward-looking risk assessments, not verifiable facts. Order 23–24. As for SB 253, the State denies it forces companies "'to take responsibility' for the emissions disclosed." Opp. 12. But the statute does exactly that, declaring companies must take "responsibility for . . . their contributions to global [greenhouse-gas] emissions." § 1(f). Its very name—the Climate Corporate Data *Accountability* Act—signals its aim to hold companies "accountable." Legislative findings and floor statements confirm that purpose, boasting the law will "create accountability for those that aren't . . . doing their part." Dkt. 48-4 at 1. Far from uncontroversial, the disclosures forced by SB 253 are intended as fuel for the debate over corporate responsibility for climate change. *See Stolfi*, 2025 WL 2448851, at *15 (distinguishing "the economic-focused reports at issue" from the law in *X Corp.*, which compelled "value-laden, state-prescribed language").

*Finally*, the State ignores the Supreme Court's repeated admonition not to "mark off new categories" of speech for diminished First Amendment protection, and specifically to look for a "long" historical tradition before expanding compelled-disclosure regimes. *NIFLA*, 585 U.S. at 767; *see IMDb*, 962 F.3d at 1124 (declining to "cordon off" new category of speech "for reduced protection"). These laws have no such anchor, and can be upheld only by expanding the types of speech subject to lessened First Amendment scrutiny. This expansion presents another serious question.

### 3. The lack of tailoring independently raises serious questions.

The State's opposition does nothing to cure the fundamental tailoring defects this Court already identified—and those unanswered gaps independently confirm that serious constitutional questions remain. The Court rejected the State's anti-deception rationale for the laws because the State had no evidence of misleading speech. Order 35–

37.   Yet the State pivots back to the same "truth-in-marketing" theory.  Opp. 11, 14. Even under the tailoring rationales the Court previously accepted, the State cannot deny the serious questions that Plaintiffs identify.  The State's reliance on investor "interest" (Opp. 14–15) has no limiting principle; if generalized interest were enough, states could compel disclosure of any fact some investor might be curious to know—such as the percentage of a workforce who are immigrants, or the charities a company supports.  *See Am. Meat Inst. v. USDA*, 760 F.3d 18, 31–32 (D.C. Cir. 2014) (Kavanaugh, J., concurring).  The State also has no credible response to Plaintiffs' showing that the laws are "more extensive than . . . necessary" to further investors' interest, which *Central Hudson* precludes.  *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 572 (1980).  Unlike the securities laws, which limit mandatory disclosures to information a reasonable investor would deem important, SB 253 compels disclosures *without any materiality threshold whatsoever*.  By definition, that compulsion is broader than reasonably necessary.

The State claims as a fallback an interest in reducing "any" emissions (Opp. 17). But that is boundless.  The First Amendment requires a "substantial government interest" stated with precision, not an abstract aspiration.  *See Green v. Miss U.S. of Am., LLC*, 52 F.4th 773, 790 (9th Cir. 2022).  If "any reduction" were enough, the State could conscript speakers for symbolic gestures that have no measurable effect on climate outcomes.  That is not tailoring.  And the Supreme Court has struck down a speech restriction where the State showed only that it would "somewhat lower" alcohol consumption; the Constitution required proof that the regulation would "*significantly* reduce marketwide consumption."  *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 505–06 (1996) (plurality op.).  So too here.  The State offers no evidence that these mandates will materially reduce emissions, let alone to the degree necessary to mitigate climate change.

Nor does the State substantiate why less speech-restrictive alternatives—such as publishing its own estimates—would not suffice.  The State offers no rebuttal to

undisputed evidence that 90% of a company's emissions are explained by readily observable criteria, such as industry, size, and sales growth. Dkt. 48-22 at 7. Its only excuse—that State-generated estimates would be "inaccurate" (Opp. 17)—collapses. The State never explains why investors need pinpoint accuracy on a company's emissions of, for example, sulphur hexafluoride (Dkt. 48-20 at 6). The First Amendment does not allow the government to conscript private speakers for "efficiency." Opp. 14; *see NIFLA*, 585 U.S. at 775 (State cannot "sacrifice speech for efficiency").

### B. The Equities Strongly Favor Plaintiffs

The equities here are not close. This Court has already held that SB 253 and SB 261 compel speech, that First Amendment scrutiny applies, and that companies face immediate obligations to prepare to make statements these statutes compel. *See* Order 7–12 & n.4. Both injuries—compelled speech and the substantial compliance costs—are imminent and unrecoverable. The State is incorrect that the "only" imminent injury here is "constitutional." Opp. 8. After Plaintiffs moved for an injunction pending appeal, CARB held a "workshop" (McLoon Decl. ¶ 3 (Dkt. 120-1)) confirming that the agency expects companies to begin compliance work immediately, investing time and resources that cannot be recouped if these laws are struck down. *See* Durbin Decl. ¶¶ 8–27; Shoen Supp. Decl. ¶¶ 4–27.

That reality underscores the urgency of these harms and the need for interim relief. Plaintiffs have not "dropped" (Opp. 19) their claim regarding compliance costs—those costs have been a core component of irreparable harm from the outset. Regardless, constitutional injury is not a technicality; it is paradigmatic irreparable harm. That is why, contrary to the State's suggestion, Plaintiffs need not "*establish* a likelihood of constitutional injury" (Opp. 18 (emphasis added)); "a colorable First Amendment claim" is enough to tilt the equities in Plaintiffs' favor. *Youth 71Five*, 2024 WL 3749842, at *4.

SB 261 underscores the immediacy. The first biennial report is due "[o]n or before January 1, 2026," SB 261 § 2(b)(1)(A), and the Court has already recognized that companies must undertake pre-publication steps now—including creating data systems,

risk assessments, scenario analyses, assurance planning, and web-publication work-flows. Order 3–4, 8–9 & n.4, 23–24. The State expects companies to begin making submissions as early as December 1, 2025, as it indicated in its recent workshop. *See* Durbin Decl. ¶ 12; Shoen Supp. Decl. ¶ 5.

The State's representation that it will not enforce compliance with SB 253 until June 2026 does not change the analysis. Opp. 18. This Court has already found that covered companies must begin preparing now in light of the agency's enforcement notice and the effective date of the statute. Order 3–4, 8–9 & n.4. Preparations for SB 253—scoping inventories, supplier/customer data requests, and internal controls—are substantial, must begin months in advance, and "cannot be recouped" if the Ninth Circuit agrees the laws are unconstitutional. *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 606 U.S. —, 2025 WL 2415669, at *1 (2025); *see* Shoen Supp. Decl. ¶¶ 19–24. The State's provision of temporary forbearance, and its lengthy delay in issuing SB 253 regulations, both confirm it will not be prejudiced by a short pause for appellate review.

The State also suggests no injunction is necessary because Plaintiffs' appeal "may be resolved" before January 1, since briefing will be complete by November 6, 2025. Opp. 3. That is contradicted by practice. The median time from notice of appeal to decision is over 13 months. *Judicial Business of the United States Courts 2024*, tbl. B-4A (2024), https://tinyurl.com/mv44a32z. In both *X Corp.* and *NetChoice*, the Ninth Circuit took five months from the close of briefing to issue a decision, and both cases were expedited. That is why Rule 62(d) and FRAP 8 exist—to avoid forcing compelled speech before full appellate review can occur. And the point cuts both ways. If the Ninth Circuit does decide by January 1, the State will have suffered no prejudice whatsoever from a short injunction in the interim.

Finally, the public interest strongly favors an injunction. The public interest "always" favors protection of constitutional rights. *Am. Beverage Ass'n v. City of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019) (en banc). A brief, tailored pause here

advances the public interest by ensuring that novel compelled-speech mandates are not enforced until the Court of Appeals can review them.

### C. Plaintiffs Seek Narrow Relief

The State's "overbreadth" objection (Opp. 7 & n.2) is immaterial. Plaintiffs do not seek to halt CARB's internal planning; if the agency wants to continue those steps, it may. What it cannot do is enforce these laws against Plaintiffs' members while the Ninth Circuit considers their constitutionality. That narrow injunction preserves the status quo, avoids any claimed administrative disruption, and ensures Plaintiffs are not forced to speak before appellate review—exactly what Rule 62(d) and FRAP 8 are designed to accomplish.

### III. CONCLUSION

The Court should enter a limited injunction that preserves the status quo by enjoining Defendants from implementing, applying, or taking any action to enforce the laws against Plaintiffs' members pending appeal.

DATED: September 2, 2025

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: /s/ *Bradley J. Hamburger*
Eugene Scalia, SBN 151540
Bradley J. Hamburger, SBN 266916
Samuel Eckman, SBN 308923
Brian A. Richman (*pro hac vice*)
Elizabeth Strassner, SBN 342838

*Attorneys for Plaintiffs Chamber of Commerce of the United States of America, California Chamber of Commerce, American Farm Bureau Federation, Los Angeles County Business Federation, Central Valley Business Federation and Western Growers Association*

CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA

Stephanie A. Maloney (*pro hac vice*)
Kevin Palmer (*pro hac vice*)

*Attorneys for Plaintiff Chamber of Commerce of the United States of America*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs Chamber of Commerce of the United States of America, California Chamber of Commerce, American Farm Bureau Federation, Los Angeles County Business Federation, Central Valley Business Federation and Western Growers Association, certifies that this brief contains 3,298 words, which complies with the word limit of this Court's Rule VII.A.3.

DATED: September 2, 2025        Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: /s/ Bradley J. Hamburger
Eugene Scalia, SBN 151540
Bradley J. Hamburger, SBN 266916
Samuel Eckman, SBN 308923
Brian A. Richman (*pro hac vice*)
Elizabeth Strassner, SBN 342838

*Attorneys for Plaintiffs Chamber of Commerce of the United States of America, California Chamber of Commerce, American Farm Bureau Federation, Los Angeles County Business Federation, Central Valley Business Federation, and Western Growers Association*

CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA

Stephanie A. Maloney (*pro hac vice*)
Kevin Palmer (*pro hac vice*)

*Attorneys for Plaintiff Chamber of Commerce of the United States of America*