EUGENE SCALIA, SBN 151540
escalia@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

*Attorneys for Plaintiffs Chamber of Commerce of the United States of America, California Chamber of Commerce, American Farm Bureau Federation, Los Angeles County Business Federation, Central Valley Business Federation, and Western Growers Association*

(*Additional counsel listed on next page*)

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA,

WESTERN DIVISION

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, CALIFORNIA CHAMBER OF COMMERCE, AMERICAN FARM BUREAU FEDERATION, LOS ANGELES COUNTY BUSINESS FEDERATION, CENTRAL VALLEY BUSINESS FEDERATION, and WESTERN GROWERS ASSOCIATION,<br><br>Plaintiffs,<br><br>v.<br><br>LIANE M. RANDOLPH, in her official capacity as Chair of the California Air Resources Board, STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board, and ROBERT A. BONTA, in his official capacity as Attorney General of California.<br><br>Defendants. | CASE NO. 2:24-cv-00801-ODW-PVC<br><br>**SUPPLEMENTAL DECLARATION OF EDWARD J. SHOEN** |

BRADLEY J. HAMBURGER,
  SBN 266916
  bhamburger@gibsondunn.com
SAMUEL ECKMAN, SBN 308923
  seckman@gibsondunn.com
ELIZABETH STRASSNER,
  SBN 342838
  estrassner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Ave.
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile:  213.229.7520

BRIAN A. RICHMAN
(*pro hac vice*)
  DC Bar No. 230071
  brichman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Ave., Suite 2100
Dallas, TX 75201-2923
Telephone: 214.698.3100
Facsimile:  214.571.2900

*Attorneys for Plaintiffs Chamber of Commerce of the United States of America, California Chamber of Commerce, American Farm Bureau Federation, Los Angeles County Business Federation, Central Valley Business Federation, and Western Growers Association*

STEPHANIE A. MALONEY
(*pro hac vice*)
  DC Bar No. 104427
  smaloney@uschamber.com
KEVIN PALMER
(*pro hac vice*)
  DC Bar No. 90014967
  kpalmer@uschamber.com
CHAMBER OF COMMERCE OF THE
UNITED STATES OF AMERICA
1615 H Street, NW
Washington, D.C. 20062-2000
Telephone: 202.659.6000
Facsimile:  202.463.5302

*Attorneys for Plaintiff Chamber of Commerce of the United States of America*

I, Edward J. Shoen, hereby declare as follows:

1. I am over the age of eighteen, of sound mind, and capable of making this declaration. The facts stated in this declaration are within my personal knowledge and are true and correct.

2. I previously filed declarations in this matter on May 24, 2024, and February 24, 2025. [*See* Dkt. 48-30; Dkt. 78-3].

3. In light of intervening developments, I now supplement the information contained in those declarations with the following.

**Compliance with S.B. 261**

4. The California Air Resources Board ("CARB") held a public workshop on implementation of S.B 253 and S.B 261, on August 21, 2025. Representatives of U-Haul attended that workshop.

5. At the meeting, CARB stated that on December 1, 2025, it will post a public docket to which Covered Entities must post a public link to the reports S.B. 261 requires. [Slideshow at 27, S.B. 253/261/219 Public Workshop: Regulation Development and Additional Guidance (hereinafter "August 21 Slides"), *available at* https://ww2.arb.ca.gov/sites/default/files/2025-08/SB%20253%20261%20workshop%20slides%208-21.pdf]. This is to effectuate the law's requirement that all Covered Entities be in compliance on or before January 1, 2026.

6. Consistent with the provisions of S.B. 261, CARB has identified several complex frameworks through which Covered Entities may satisfy the disclosure requirements of S.B. 261, including the Final Report of Recommendations of the Task Force on Climate-Related Financial Disclosures (TCFD), the IFRS Disclosure Requirements, and other reports developed in accordance with any regulated exchange, national government, or other governmental entity. [August 21 Slides at 28].

7. At the meeting, CARB highlighted key reporting requirements under S.B. 261. CARB will require Covered Entities' reports to address principles of governance,

strategy, risk management, and metrics and targets, and has outlined how Covered Entities should address each principle in turn. For example, Covered Entities' reports should describe their governance structure for identifying, assessing, and managing climate-related financial risks and specify management oversight of climate-related risks and opportunities. They should also identify climate-related risks and opportunities that the entity has identified over the short, medium, and long term; the impact of climate-related risks and opportunities on the organization's operations, strategy, and financial planning; and the resilience of this strategy taking into consideration various future climate scenarios. And Covered Entities have to provide not only a qualitative description of the process they use for identifying, managing, and assessing related risks, but metrics and targets used for such assessment where such information is material. [August 21 Slides at 29-33].

8. Compliance with S.B. 261 would require U-Haul to pay fees to support the State's implementation of it. At the August 21 workshop, CARB estimated that each Covered Entity will be required to pay a $1,403 annual implementation fee for S.B. 261. [August 21 Slides at 24.]

9. This process is already burdensome and will become only more so as the January 1, 2026 deadline approaches in the absence of injunctive relief.

10. Complying with S.B. 261 would require U-Haul to opine on climate-related risks and post its government-compelled opinion to its website. It would *not* otherwise choose to make such statements of opinion, on matters of considerable public controversy.

11. Complying with S.B. 261 would force U-Haul to state its opinion on "material risk of harm to immediate and long-term financial outcomes due to physical and transition risks, including, but not limited to, risks to corporate operations, provision of goods and services, supply chains, employee health and safety, capital and financial investments, institutional investments, financial standing of loan recipients and

borrowers, shareholder value, consumer demand, and financial markets and economic health." S.B. 261 § 2(a)(2).

12. Following the August 21 workshop, it is clear to U-Haul that these obligations extend to describing its "governance structure for identifying, assessing, and managing climate-related financial risks"; how its governing "Board [oversees] those climate-related risks"; "the actual and potential impacts of climate-related risks and opportunities on the company's operations, strategy, and financial planning"; "the resilience of the organization's strategy, taking into account the future impacts of climate change under various climate scenarios," its qualitative process for "identifying, managing and assessing climate-related risks, and how those considerations and processes are integrated into the organization's overall risk management"; and its "metrics and targets used to assess and manage relevant climate-related risks." [August 21 Slides at 30-33.]

13. CARB's guidance makes clear that complying with S.B. 261 would force U-Haul to make subjective assessments on a matter of significant public debate: the precise nature and degree of risk that global climate change poses to individual American businesses' operations. The guidance's own reference to the existence of "various climate scenarios" underscores the uncertain and speculative nature of the matter to which U-Haul will be compelled to speak. [August 21 Slides at 31.]

14. U-Haul considers the information that S.B. 261 requires to be controversial and disagrees with including this type of information on its public website. It has thus far chosen not to participate in this matter of public controversy.

15. Complying with S.B. 261 will thus soon force U-Haul to speak in great detail where it has chosen not to speak and to convey to the public a philosophy of environmental sustainability that it does not believe and is incompatible with the philosophy U-Haul currently expresses in the public square.

16. If U-Haul is required to comply with S.B. 261 on January 1, 2026, the statements that the law compels it to make will be public, and U-Haul will not be able to retract them if the law is later struck down.

17. Injunctive relief would prevent U-Haul from being forced to speak on these controversial topics while Plaintiffs' appeal from the denial of a preliminary injunction is considered.

18. In the absence of an injunction pending appeal, U-Haul will suffer an irreparable intrusion upon its First Amendment rights when it is forced to comply with S.B. 261 on or before January 1, 2026.

**Compliance with S.B. 253**

19. U-Haul is preparing to comply with S.B. 253, and in the absence of an injunction pending appeal, will suffer an irreparable intrusion upon its First Amendment rights when it is forced to comply with S.B. 253 in 2026.

20. At the August 21 workshop, CARB staff proposed that all Reporting Entities should be in compliance with the Scope 1 and Scope 2 emissions reporting requirements of S.B. 253 by June 30, 2026. [August 21 Slides at 34.] S.B. 253 provides that Scope 3 emissions reporting requirements will take effect in 2027.

21. Complying with S.B. 253 would require U-Haul to calculate Scope 1, 2, and 3 emissions. Doing so involves several burdensome steps, which only increase as the proposed June 30, 2026 enforcement deadline approaches. These disclosures would go far beyond U-Haul's disclosure requirements under existing state and federal law and regulations.

22. U-Haul has chosen not to speak on the controversial topic of emissions and not to claim the emissions of other companies as its own. If now forced to do so, U-Haul will not be able to unring that bell. And U-Haul can only speculate on how such speech would affect its relationship with its Dealers and its customers. Such effects could not be undone if S.B. 253 is later declared unlawful.

23. Moreover, complying with S.B. 253 would require U-Haul to pay fees to support the State's implementation of its requirements. At the August 21 workshop, CARB calculated these fees at $3,106 per year. [August 21 Slides at 24.]

24. Injunctive relief would prevent U-Haul from being forced to speak on these controversial topics while Plaintiffs' appeal from the denial of a preliminary injunction is considered.

**Conclusion**

25. CARB's recent workshop confirms that S.B. 253 and S.B. 261 threaten U-Haul with serious and imminent harm in the coming weeks and months. Those laws will compel U-Haul to speak about highly controversial matters of public policy when it would not otherwise speak.

26. If Plaintiffs do not obtain injunctive relief on behalf of their members, U-Haul will be irreparably injured through the compulsion of its speech no later than January 1, 2026.

27. The Court should enjoin S.B. 253 and S.B. 261 during the pendency of this appeal to prevent these imminent and irreversible harms.

Pursuant to 28 U.S.C. §1746, I, Edward J. Shoen, declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on this 2nd day of September, 2025.

_Edward J. Shoen_
Edward J. Shoen